1   **MAYALL HURLEY, P.C.**
**ROBERT J. WASSERMAN (SBN: 258538)**
2   rwasserman@mayallaw.com
**JENNY D. BAYSINGER (SBN: 251014)**
3   jbaysinger@mayallaw.com
**2453 Grand Canal Boulevard**
4   **Stockton, California 95207-8253**
**Telephone (209) 477-3833**
5   **Facsimile: (209)473-4818**

6

7   **Attorneys for Plaintiff LEILANI KRYZHANOVSKIY, individually, on behalf of all others similarly situated, and as a proxy for the LWDA**

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  **LEILANI KRYZHANOVSKIY,**            | **Case No.:**
    **individually, on behalf of all others similarly**   |
12  **situated, and as a proxy for the LWDA;**   | **CLASS AND REPRESENTATIVE ACTION**
                                                 | **COMPLAINT FOR DAMAGES AND CIVIL**
13          **Plaintiff,**                       | **PENALTIES FOR**

14  **v.**                                       | **CLASS AND REPRESENTATIVE CLAIMS**

15
    **AMAZON.COM SERICES, INC., a**              | 1.   **FAILURE TO PAY OVERTIME**
16  **Delaware corporation; AMAZON.COM**         | 2.   **FAILURE TO FURNISH ACCURATE**
    **SERVICES, LLC, a Delaware limited**        |      **WAGE STATEMENTS**
17  **liability company; and DOES 1-100,**       | 3.   **VIOLATION OF THE EQUAL PAY ACT**
    **inclusive,**                               | 4.   **UNLAWFUL BUSINESS PRACTICES**
18
                                                 | **INDIVIDUAL CLAIMS**
19          **Defendants.**
                                                 | 5.   **GENDER DISCRIMINATION**
20                                               | 6.   **RETALIATION**
                                                 | 7.   **RETALIATION**
21                                               | 8.   **FAILURE TO TIMELY PROVIDE**
                                                 |      **PAYROLL RECORDS**
22                                               | 9.   **FAILURE TO TIMELY PROVIDE**
                                                 |      **PERSONNEL RECORDS**
23
                                                 | **JURY TRIAL DEMANDED**
24

25

26

27

28

Plaintiff Leilani Kryzhanovskiy ("Plaintiff" or "Kryzhanovskiy") brings this action against Amazon.com Services, Inc., Amazon.com Services, LLC, and Does 1 through 100 (collectively, "Defendants"), for general, compensatory, punitive, and statutory damages, injunctive relief, declaratory relief, statutory penalties, costs, and attorneys' fees, as well as the imposition of civil penalties pursuant to the Labor Code Private Attorney General's Act, Cal. Lab. Code §§ 2698, et seq. (the "PAGA"), resulting from Defendants' unlawful and tortious conduct, and as grounds therefore alleges:

## PARTIES

1. Kryzhanovskiy, at all times relevant herein, was a resident of Lodi, San Joaquin County, California, employed by Defendants and each of them within San Joaquin County and was an "employee" of Defendants and each of them as defined by Government Code section 12926(c) and California Labor Code section 3351 and applicable California Industrial Wage Commission ("IWC") Order(s) and is an "aggrieved employee" as defined in Labor Code section 2699(c) that is authorized to bring this action as a proxy for the LWDA.

2. Amazon.com Services, Inc is a corporation, organized and existing under the laws of the state of Delaware, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington. At all relevant times, Amazon.com Services, Inc. was authorized to do business withing California and employed Plaintiff withing San Joaquin County. At all times relevant herein, Amazon.com Services, Inc. has been an "employer" as defined by the California Labor Code ("Labor Code"), the applicable California Industrial Wage Commission ("IWC") Order(s), and the California Government Code.

3. Amazon.com Services, LLC is a limited liability company, organized and existing under the laws of the state of Delaware, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington. At all relevant times, Amazon.com Services, LLC was authorized to do business withing California and employed Plaintiff withing San Joaquin County. At all times relevant herein, Amazon.com Services, LLC has been an "employer" as defined by the

/ / /

California Labor Code ("Labor Code"), the applicable California Industrial Wage Commission ("IWC") Order(s), and the California Government Code.

4.      Plaintiff is not aware of the true names and capacities of the Defendants sued herein as Does 1 through 100, whether individual, corporate, associate, or otherwise and therefore sues such Defendants by these fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's injuries and damages herein alleged were legally caused by such Defendants.  Unless otherwise indicated, each Defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-Defendant.

5.      Plaintiff is informed and believes and thereupon alleges that at all times mentioned herein, each of the Defendants, including each Doe Defendant, was acting as the agent, servant, employee, partner and/or joint venturer of and was acting in concert with each of the remaining Defendants, including each Doe Defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action.  Each Defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining Defendants.

**VENUE AND JURY TRIAL DEMAND**

6.      Jurisdiction over the collective action claim for violation of the Fair Labor Standards Act ("FLSA') is proper pursuant to 28 U.S.C. section 1331 as the FLSA is a federal statute.  Jurisdiction over the class claims is proper pursuant to 28 U.S.C. section 1332, subdivision (d) as the Defendants are residents of Delaware and/or Washington and reside in different states than at least one member of the Class, which is believed to consist of more than 2,500 individuals, and the amount in controversy exceeds $5,000,000.  This Court also has supplemental jurisdiction

/ / /

1    pursuant to 28 U.S.C. §1367 because the pendent state law claims arise out of the same controversy

2    between the parties.

3        7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391.  Defendants employ

4    multiple persons at multiple locations within San Joaquin County, within the Eastern District of

5    California, including Plaintiff, who have been subjected to the unlawful acts alleged herein.

6    Kryzhanovskiy, on behalf of herself and the Class, and in her capacity as a proxy for the Labor and

7    Workforce Development Agency, demands a jury trial.

8                                    **GENERAL ALLEGATIONS**

9        8.      Plaintiff was hired by Defendants in January 2020 to work as an Onsite Medical

10   Representative primarily assigned to Defendants' Stockton, California warehouse locations.

11       9.      Plaintiff's initial offer letter was purportedly on behalf of Defendant Amazon.com

12   Services, Inc.  Her wage statements identified "Amazon.com Services, Inc." as her employer until

13   approximately November 2020 when they began identifying Defendant "Amazon.com Services,

14   LLC."  Nothing about Plaintiff's job duties/responsibilities changed during that time and she is

15   informed and believes Defendants simply changed the entity name/type that was her employer.

16       10.     At all relevant times, Plaintiff was properly classified as a non-exempt hourly

17   employee and was, thereby, entitled to be paid at least minimum wage for all hours worked and

18   overtime/doubletime as appropriate.

19       11.     At the time Plaintiff was hired, she was advised her base hourly wage would be

20   $21.88.  Plaintiff was also offered an initial sign-on payment of $8,000, along with a second sign-

21   on payment of $6,000 after the completion of one year of employment.  See **Exhibit 1**.

22       12.     In and around April 2020, shortly after Plaintiff was hired, a male with comparable

23   qualifications and experiences (Plaintiff's husband) was hired as an Onsite Medical Representative

24   at Defendants' Stockton locations.  Although the male was hired for the identical position as

25   Plaintiff, and did not have better qualifications or experience, he was inexplicably offered

26   substantially more in wages.  More specifically, the male employee was paid an initial

27   / / /

28

hourly base rate of $23.80 and was offered an initial sign-on payment of $10,000, along with a second sign-on payment of $7,000 after completion of one year of employment.  See **Exhibit 2**.

13.     Plaintiff is informed and believes that there is no bona fide factor, other than gender, that would explain the disparate wages paid to her and her male counterpart.  Plaintiff is further informed and believes Defendants have a pattern and practice of underpaying female employees when compared to their male counterparts with similar experience, education, and job duties.

14.     Both of the sign-on payments Plaintiff was offered and, ultimately, paid were "earned" on a pro-rata daily basis over periods of time (the first year and the second year of employment, respectively) and Defendants advised payments/advances would be clawed back in the event Plaintiff was not employed for the requisite period of time to earn the additional payments.  As such, these bonuses were not excludable pursuant to 29 U.S.C. section 207 and were required to be included in the regular rate of pay for the purposes of calculating overtime and doubletime earnings.

15.     In addition to the sign-on payments Plaintiff was offered at the time of her hire, Defendants also paid Plaintiff shift differentials as well as other remuneration such as "Guarantee Pay" and "additionalpay" that was required to be included in her regular rate of pay for purposes of calculating overtime and doubletime earnings.  Defendants did not include these other items of remuneration when calculating Plaintiff's regular rate of pay and thus deprived her of wages to which she was entitled.

16.     By way of specific example, during the pay period January 10-16, 2021, Defendants paid Plaintiff $375.09 in "Guarantee Pay."  That amount, however, was not included in Plaintiff's overtime rate of pay—she was paid only 1 ½ times her base hourly rate of $21.88 ($32.82) for overtime.  See **Exhibit 3**.

17.     During that same pay period, Plaintiff also earned shift differentials at the rate of $0.60, ostensibly for 36.60 hours.  Defendants did not pay Plaintiff at 1 ½ times her shift differential rate for overtime hours worked, however.  Instead, Defendants paid Plaintiff "shift pay @ O/T" at the rate of $0.8889; 1 ½ times her shift pay rate of $0.60 would have been $0.90/hr.

18.     Like Plaintiff, Defendants failed to include commissions, non-discretionary bonuses, and other items of compensation including, but not limited to, sign-on payments, shift differentials, "Guarantee Pay", and "additionalpay" when calculating the regular rate of pay of its other non-exempt employees and thus deprived them of wages to which they were entitled.

19.     As evidenced in the sample of Plaintiff's wage statements attached hereto as **Exhibit 3**, the wage statements furnished by Defendants to Plaintiff and their other non-exempt California employees violated California Labor Code section 226(a) insofar as they failed to accurately show:

    a.   The total hours worked by the employee in violation of section 226(a)(2);

    And/or

    b.   All applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate in violation of section 226(a)(9).

20.     More specifically, the wage statements Defendants provided are confusing and necessarily inaccurate in that they identify a number of "Tot Work Hours" that is inexplicably different than the number of hours for which Plaintiff purportedly earned "Shift Pay."  See Exh. 3.

21.     During the January 10-16, 2021 pay period, the wage statement she was furnished identifies 33.40 total work hours but, also, advises she was paid for 36.60 hours of "Shift Pay."  One of those numbers is necessarily inaccurate; either Plaintiff worked more than 33.40 total hours during the pay period *or* she worked 34.40 total hours and thus could not have worked 36.60 hours at her shift pay rate.

22.     Routinely, the wage statements Defendants provided to Plaintiff did not accurately identify total hours worked and/or number of hours worked at each rate and were confusing to Plaintiff.  Among other things, she could not tell whether she was being properly paid for all hours worked or for the correct number of hours at shift premiums.

23.     Defendants were, at all times relevant herein, aware of the requirements of California Labor Code section 226.

24.     Defendants have, at all times relevant herein, furnished wage statements to each of their non-exempt California employees pursuant to an established set of policies, procedures and practices.

/ / /

25. Plaintiff and Defendants' other non-exempt California employees, both current and former, have suffered injury as a result of Defendants' knowing and intentional failure to comply with California Labor Code section 226(a).

26. Plaintiff and Defendants' other non-exempt California employees, both current and former, who earned shift differentials, were unable to promptly and easily determine their total hours worked from the wage statements furnished by Defendants.

27. Plaintiff and Defendants' other non-exempt California employees, both current and former, who worked overtime, were unable to promptly and easily determine their total hours worked from the wage statements furnished by Defendants.

28. Plaintiff and Defendants' other non-exempt California employees, both current and former, who worked overtime, have suffered injury as a result of Defendants' knowing and intentional failure to furnish wage statements accurately showing their total hours worked in violation of California Labor Code section 226(a)(2).

29. Plaintiff and Defendants' other non-exempt California employees, both current and former, were unable to promptly and easily determine all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate from the wage statements furnished by Defendants.

30. Plaintiff and Defendants' other non-exempt California employees, both current and former, have suffered injury as a result of Defendants' knowing and intentional failure to furnish wage statements accurately showing all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate in violation of section 226(a)(9).

31. On May 26, 2021, Plaintiff sent a written request by certified mail to each of the Defendants, requesting copies of payroll and personnel records as authorized by Labor Code sections 226(b) and 1198.5(b). As of the filing of this Complaint, no responsive records have been forthcoming by any Defendant.

/ / /

/ / /

**INDIVIDUAL ALLEGATIONS**

32.     On May 27, 2021, Plaintiff sent a notification letter to the California Labor & Workforce Development Agency ("LWDA") as well as Defendants outlining alleged violations of the California Labor Code, including the Equal Pay Act and disparate treatment on the basis of gender.  Plaintiff is informed and believes Defendants' corporate offices received her notification letter on June 1, 2021 and that, thereafter, her supervisors in the Stockton office (including Brent Butterfield) were informed of her complaints.

33.     Once her supervisors became aware of Plaintiff's complaints regarding violations of the Labor Code and gender discrimination, they began retaliating against her.

34.     In approximately May 2021, Plaintiff applied for a promotion to the position of Workplace Health & Safety Specialist for Defendants' Stockton warehouse.  On June 8, 2021, Plaintiff was contacted by an internal recruiter and advised the hiring team was "very impressed" with her background—an interview was scheduled for June 18, 2021.

35.     On June 16, 2021, Plaintiff approached Butterfield to get some insight into the interview.  At that time, Plaintiff was told the position had already been filled and her interview would thus be cancelled.  Plaintiff is informed and believes Butterfield filled the position and/or did not afford Plaintiff the opportunity to interview because he was upset she lodged complaints about Labor Code violations and gender discrimination.

36.     Since Plaintiff submitted her LWDA letter and records requests, Butterfield has been dismissive of Plaintiff.  In June 2021, Plaintiff reached out to Butterfield to request information about potentially modifying her schedule to a day shift that became available.  When Butterfield did not respond, Plaintiff went to speak to him personally and was advised schedule assignments are based on seniority.

37.     Although Plaintiff is the most senior Onsite Medical Representative at the Stockton location, the schedule change was given to someone who had only recently transferred to Stockton.  Plaintiff is informed and believes she was denied the schedule change in retaliation for her complaints.  The mistreatment is ongoing.

38.     On July 1, 2021 Plaintiff submitted a complaint to the Department of Fair Employment and Housing regarding gender discrimination and retaliation and received a right-to-sue.  On July 2, 2021, Plaintiff sent a copy of her DFEH complaint and right-to-sue to Defendants via certified mail.

39.     The list of misconduct by Defendants set forth above is a partial list only, and by way of example.

## COLLECTIVE ACTION ALLEGATIONS

40.     Plaintiff seeks to maintain her first cause of action as an "opt-in" collective action pursuant to 29 U.S. 216(b) as to claims for overtime, liquidated damages (or, alternatively, interest) and attorneys' fees under the FLSA.  In addition to Plaintiff, numerous other current and former hourly, non-exempt employees of Defendants who worked hours beyond his/her normal workday and beyond forty (40) in a workweek are similarly situated in that Defendants failed to pay them overtime premium compensation based on the regular rate of pay.  Plaintiff is representative of those other current and former employees and is acting on behalf of their interests as well as his own in bringing this action.  These similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records.  These similarly situated employees may be readily notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees under the FLSA.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff seeks to maintain this action as a class action as to the First through Fourth Causes of Action.  Plaintiff bring this action, on behalf of herself and all other similarly situated employees, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The putative classes which Plaintiff seeks to represent consist of the following:

    a.  All current and former hourly, non-exempt employees of Defendants who earned commissions, non-discretionary bonuses, and/or other items of compensation including, but not limited to, shift differentials, sign-on bonuses,

"guarantee pay", "additionalpay" or other remuneration during at least one workweek when he/she also worked overtime hours from three (3) years prior to the date of filing through the date of certification (the "FLSA Class");

b. All current and former hourly, non-exempt employees of Defendants within California who earned commissions, non-discretionary bonuses, and/or other items of compensation including, but not limited to, shift differentials, sign-on bonuses, "guarantee pay", "additionalpay" or other remuneration during at least one workweek when he/she also worked overtime hours from four years prior to date of filing through the date of final judgment (the "CA Overtime Class");

c. All current and former female employees of Defendants within California who holds/held a position that at least one male employee with comparable experience and qualifications and working under comparable circumstances also holds/held (the "Equal Pay Act Class"); and

d. All current and former hourly, non-exempt employees within California who either 1) earned shift pay, and/or 2) earned shift pay, sign-on bonuses or other remuneration and worked overtime during at least one pay period from one (1) year prior to the date of filing through the date of final judgment (the "CA Wage Statement Class")

The FLSA Class, CA Overtime Class, Equal Pay Act Class, and CA Wage Statement Class are collectively referred to as the Class.

42. The class of persons is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action is a benefit to the parties and to the Court. Plaintiff is informed and believes, and based thereon alleges, that Defendants employ more than 5,000 employees who satisfy the class definition. Although the exact number and identity of class members is not presently known, they can be identified in Defendants' records through coordinated discovery pursuant to this class action.

/ / /

43.     This action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure because the questions of law and fact which are common to class members clearly predominate over any questions affecting only individual members and because a class action is superior to other available methods for adjudicating the controversy.

44.     There are numerous common questions of law and fact arising out of Caltrans' conduct.  This class action focuses on Defendants': (a) uniform written policies and practices failing to include all remuneration in calculating the regular rate of pay, (b) uniform pattern and practice of underpaying female employees as compared to their male counterparts, and (c) uniform provision of wage statements to their California employees.

45.     Furthermore, common questions of fact and law predominate over any questions affecting only individual members of the class.  The predominating common or class-wide questions of law and fact include the following:

      a.  Whether Defendants fail to include commissions, non-discretionary bonuses, and other items of compensation when calculating their non-exempt employees' regular rate of pay for purposes of overtime and double time calculations;

      b.  Whether Defendants' sign-on payments are includable in regular rate of pay;

      c.  Whether "guarantee pay" is includable in regular rate of pay;

      d.  Whether Defendants properly included all remuneration when calculating the regular rate of pay;

      e.  Whether Defendants' pay practices have a disparate impact on female employees with similar assignments, experience, education, and qualifications as their male counterparts;

      f.  Whether Defendants' conduct that allegedly violates the FLSA was willful;

      g.  Whether Defendants' wage statements fail to accurately identify total hours worked and/or the wage rates and number of hours worked at each wage rate;

      h.  Whether the wage statements Defendants' furnished resulted in injury, presumed or otherwise;

i.  Whether Defendants' alleged violations of Labor Code section 226(a)(2) were knowing and intentional;

j.  Whether the alleged violations constitute unfair business practices;

k.  Whether the Class is entitled to injunctive relief; and

l.  Whether the Class is entitled to unpaid wages, liquidated damages, statutory penalties and/or restitutionary relief, and the amount of the same.

46.  Plaintiff's claims are typical of the claims of the members of the Class as a whole, all of whom have sustained and/or will sustain damage and injury as a proximate and/or legal result of the alleged violations of Defendants.  Plaintiff's claims are typical of those of the Class because Defendants subjected Plaintiff and each member of the Class to the same violations alleged herein.

47.  The defenses of Defendants, to the extent that such defenses apply, are applicable generally to the whole Class and are not distinguishable as to any individual proposed class members.

48.  Plaintiff will fairly and adequately protect the interests of all members of the Class, and has retained attorneys with extensive experience in litigation, including class and representative actions.  Plaintiff has no interests that conflict with those of the Class.  Plaintiff is able to fairly and adequately protect the interests of all members of the class because it is in his best interest to prosecute the claims alleged herein in order to obtain the full compensation due himself and the other class members.

49.  A class action is superior to any other method available for fairly and efficiently adjudicating the controversy because 1) joinder of individual class members is not practicable, 2) litigating the claims of individual class members would be unnecessarily costly and burdensome and would deter individual claims, 3) litigating the claims of individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, 4) class members still working for Defendants may be fearful of retaliation if they were to bring individual claims, 5) class members would be discouraged from pursuing individual claims because the damages available to them are relatively small, and 6) public policy

encourages the use of the class actions to enforce employment laws and protect individuals who, by virtue of their subordinate position, are particularly vulnerable.

50.     Judicial economy will be served by maintenance of this lawsuit as a class action.  To process numerous virtually identical individual cases will significantly increase the expense on the Court, the class members, and Defendants, all while unnecessarily delaying the resolution of this matter.  There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court and doing so will provide multiple benefits to the litigating parties including, but not limited to, efficiency, economy, and uniform adjudication with consistent results.

51.     Notice of a certified class action and any result or resolution of the litigation can be provided to class members by mail, email, publication, or such other methods of notice as deemed appropriate by the Court.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA WAGE LAWS AND FLSA**
**(Failure to Pay Overtime)**
**Against All Defendants on behalf of the FLSA Class and the CA Overtime Class**

52.     Plaintiff hereby realleges and incorporate by reference each and every allegation as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

53.     Pursuant to California Labor Code section 510, any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

54.     Pursuant to California Labor Code section 1198, the maximum hours of work and standard conditions of labor fixed by the commission shall be the maximum hours of work and the

/ / /

standard conditions of labor for employees and the employment of any employee for longer hours than those fixed by the commission or under conditions of labor prohibited by the order is unlawful.

55.     Pursuant to Labor Code sections 510, 558, and 1194 and the applicable IWC Wage Order(s), it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay for all time worked beyond 8 hours in a day or 40 hours in a workweek, depending upon the number of hours worked by the person on a daily or weekly basis.

56.     The Fair Labor Standards Act, 29 USC §§ 201 et seq. and 29 CFR §§ 778 et seq. requires time and a half pay for the time an employee works over forty hours a week.  29 USC §§ 207 and 215(a) make the failure to pay overtime unlawful.

57.     The "regular rate of pay" includes all remuneration for employment paid to the employee and includes, but is not limited to, hourly earnings, salary, piece work earnings, commissions, non-discretionary bonuses, and the value of meals and lodging.  See 29 U.S.C. § 207(e); DLSE Enforcement Policies and Interpretations Manual Section 49.

58.     During the relevant time period, Plaintiff and Defendants' other non-exempt employees regularly worked overtime.

59.     During the relevant time period, Defendants failed to include commissions, non-discretionary bonuses and/or other items of compensation, when determining the "regular rate of pay" for Plaintiff and their hourly, non-exempt employees.

60.     During the relevant time period, Defendants failed to properly calculate the "regular rate of pay" of Plaintiffs and their other hourly, non-exempt employees.

61.     During the relevant time period, Defendants intentionally and willfully failed to pay the proper overtime wages due to Plaintiff and their other non-exempt employees because Defendants failed to include all remuneration when determining the "regular rate of pay".

62.     Wherefore, Plaintiff and the other members of the FLSA Class and the CA Overtime Class have been injured as set forth above and request relief as hereafter provided.

/ / /

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA WAGE LAWS**
**(Failure to Furnish Accurate Wage Statements)**
**Against All Defendants on behalf of the CA Wage Statement Class**

63.     Plaintiff hereby realleges and incorporates by reference each and every allegation as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

64.     Pursuant to Labor Code § 226(a) "every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when the wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . ., (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number, (8) the name and address of the legal entity that is the employer . . ., (9) all applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate by the employee and, if the employer is a temporary services employer . . ., the rate of pay and the total hours worked for each temporary services assignment."

65.     An employee suffering injury as a result of the knowing and intentional failure by an employer to comply with Labor Code § 226(a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed the aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.  Labor Code § 226(e)(1).

66.     An employee is deemed to suffer injury if the employer fails to provide a wage statement or if the employer fails to provide accurate and complete information as required by any one or more of the items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly

and easily determine from the wage statement alone, i) the amount of gross/net wages paid to the employee during the pay period or any of the other information required to be provided pursuant to Labor Code § 226(a) items (2) to (4), inclusive, (6) and (9), ii) deductions made by the employer, iii) the name and address of the employer and iv) the name of the employee and the last four digits of his or her social security number or employee identification number.  Labor Code § 226(e)(2)(A) and (B)(i)-(iv).  "Promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information. Labor Code § 226(e)(2)(C).

67.     During the relevant time period, Defendants intentionally and willfully failed to provide accurate itemized wage statements to Plaintiff and the other current and former non-exempt California employees in violation of Labor Code § 226(a).

68.     The wage statements furnished by Defendants fail to accurately identify the number of hours Plaintiff worked, and all applicable rates of pay and the corresponding number of hours worked at each rate.

69.     Wherefore, Plaintiff and the other members of the CA Wage Statement Class have been injured in that they could not promptly and easily determine 1) total hours worked and/or 2) each hourly rate paid and the number of hours worked at each rate.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA WAGE LAWS**
**(Violation of Equal Pay Act - Labor Code § 1197.5)**
**Against All Defendants on behalf of the Equal Pay Act Class**

70.     Plaintiff hereby realleges and incorporates by reference each and every allegation as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

71.     Labor Code § 1197.5, subdivision (b) expressly prohibits employers from paying employees wage rates that are less than those paid to employees of another gender substantially similar work.

/ / /

72.     Plaintiff was at all times relevant herein Defendants' employee.  At all relevant times herein Defendants were Plaintiff's employers.

73.     Despite the proscriptions of section 1197.5, and as outlined above, Defendants paid and continue to pay male employees wages (and offer benefits) that are substantially greater than those paid to Plaintiff and other female employees for substantially similar work.

74.     Section 1197.5, subdivision (b) provides that any employer who violates the Equal Pay Act shall be liable to affected employees in the amount of deprived wages and interest, and an equal amount for liquidated damages.

75.     As a direct and proximate result of Defendants' misconduct, Plaintiff and the other members of the Equal Pay Act Class have lost wages and benefits and request relief as hereafter provided.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 *et seq*.**
**(Unfair Business Practices)**
**By Plaintiff, the FLSA Class, the Equal Pay Act Class, and the CA Overtime Class against**
**Defendants**

76.     Plaintiff hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

77.     The statutory violations, as alleged above, are unfair business practices within the meaning of the Unfair Competition Law (Business and Professions Code sections 17200 *et seq*), and include, but are not limited to failing to properly pay overtime based on the regular rate of pay, and failing to pay female employees wages at rates equal to those afforded to male employees with similar experience, education, seniority, and job duties.

78.     Plaintiff and the other members of the FLSA Class, the CA Overtime Class, and the Equal Pay Act Class are being subjected to ongoing injury/harm for which there is no adequate remedy at law.  Damages will not fully redress such harms and, thus, injunctive relief is necessary.

/ / /

79.     Wherefore, Plaintiff and the other members of the FLSA Class, CA Overtime Class and the Equal Pay Act Class have been damaged as set forth above and request relief as hereafter provided.

## FIFTH CAUSE OF ACTION
### VIOLATION OF GOVERNMENT CODE SECTION 12940(a)
### (Sex/Gender Discrimination)
### Against Defendants on behalf of Plaintiff, Individually

80.     Plaintiff hereby realleges and incorporates by reference each and every allegation set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

81.     The Fair Employment and Housing Act ("FEHA") explicitly prohibits an employer from refusing to hire or employ a person, discharging a person from employment, or discriminating against such person in compensation or in terms, conditions or privileges of employment on the basis of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation or military and veteran status.  Gov. Code § 12940(a).

82.     At all times herein mentioned, Plaintiff was qualified for her position with Defendants based upon her work experience and performance history.

83.     Defendants were at all times material herein Plaintiff's employer pursuant to Gov. Code § 12926(d) and were therefore barred from discriminating against their employees based on sex.

84.     Nevertheless, as set forth above, Defendants discriminated against Plaintiff based on sex/gender, in violation of Gov. Code § 12940(a).

85.     The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants, acting in an oppressive, fraudulent and malicious manner in order to injure or damage Plaintiff, thereby justifying an award to her of punitive damages.

86.     As a direct and proximate result of Defendants' conduct, Plaintiff has been harmed and requests relief as hereafter provided.

## SIXTH CAUSE OF ACTION
### VIOLATION OF GOVERNMENT CODE SECTION 12940(h)
### (Retaliation)
### Against All Defendants on behalf of Plaintiff, Individually

87. Plaintiff hereby realleges and incorporates by reference each and every paragraph as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

88. The FEHA explicitly prohibits any employer or any other person from discharging, expelling or discriminating against any person because the person has opposed any practices forbidden by FEHA or because the person has filed a complaint, testified or assisted in any proceeding under the FEHA. Gov. Code § 12940(h). Retaliation is unlawful regardless of whether the underlying complaint formally demonstrates a violation of the FEHA or not. *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1043.

89. Nevertheless, as set forth above, Defendants retaliated against Plaintiff for making a good faith complaint about gender discrimination—for opposing an illegal practice proscribed by the FEHA—in violation of Gov. Code § 12940(h).

90. As a result of Defendants' conduct, Plaintiff has suffered damages.

91. Defendants' actions towards Plaintiff were committed or ratified by Defendants, and/or their managing agents and/or employees, in an oppressive, fraudulent, and malicious manner in order to injure or damage Plaintiff thereby justifying an award of punitive damages.

92. Wherefore, Plaintiff has been damaged as set forth below and requests relief as hereafter provided.

## SEVENTH CAUSE OF ACTION
### VIOLATION OF LABOR CODE SECTION 1102.5(b)
### (Retaliation)
### Against All Defendants on behalf of Plaintiff, Individually

93. Plaintiff hereby realleges and incorporates by reference each and every paragraph as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

94.     Labor Code section 1102.5, subdivision (b) expressly prohibits and employer, or anyone acting on behalf of an employer, from retaliating against an employee for disclosing/reporting information about alleged violation/non-compliance with a state or federal statute, rule, or regulation to any government or law enforcement agency.

95.     On May 27, 2021, Plaintiff reported alleged violations of the California Labor Code, FLSA, and FEHA (gender discrimination) to the California LWDA, a government or law enforcement agency.

96.     Thereafter, Defendants by and through Butterfield and others retaliated against Plaintiff for making a good faith complaint about statutory violations.

97.     As a result of Defendants' conduct, Plaintiff has suffered damages.

98.     Defendants' actions towards Plaintiff were committed or ratified by Defendants, and/or their managing agents and/or employees, in an oppressive, fraudulent, and malicious manner in order to injure or damage Plaintiff thereby justifying an award of punitive damages.

99.     Wherefore, Plaintiff has been damaged as set forth below and requests relief as hereafter provided.

### EIGHTH CAUSE OF ACTION
### FAILURE TO TIMELY FURNISH PAYROLL RECORDS
#### (Cal. Lab. Code § 226)
#### Against all Defendants

100.    Plaintiff hereby realleges and incorporates by reference each and every allegation as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

101.    California Labor Code section 226 mandates than an employer who receives a written or oral request from an employee or former employee to inspect records "shall" comply with the request within 21 days.  Lab. Code § 226(b).

102.    Whenever an employer fails to comply with section 226, the employee is entitled to recover a penalty of $750 from the employer.  Lab. Code § 226(f).  In the event an employee must

/ / /

bring an action to ensure compliance with the code, he/she is entitled to recover attorney's fees. Lab. Code § 226(h).

103.    Plaintiff made a written request to Defendants for records under section 226 on May 26, 2021.  As of the date of this Complaint, no records have been furnished.  Defendants have failed to comply with section 226.

104.    Wherefore, Plaintiff prays for relief as set forth below.

**NINTH CAUSE OF ACTION**
**FAILURE TO TIMELY FURNISH PERSONNEL RECORDS**
**(Cal. Lab. Code § 1198.5)**
**Against All Defendants**

105.    Plaintiff hereby realleges and incorporates by reference each and every allegation as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

106.    California Labor Code section 1198.5, subdivision (b) mandates than an employer who receives a written or oral request from an employee or former employee to inspect records pursuant to that section "shall" comply with the request within 30 days.  Lab. Code § 1198.5(b).

107.    Whenever an employer fails to comply with section 1198.5, the employee is entitled to recover a penalty of $750 from the employer.  Lab. Code § 1198.5(k).  In the event an employee must bring an action to ensure compliance with the code, he/she is entitled to recover attorney's fees.  Lab. Code § 1198.5(l).

108.    Plaintiff made written request to Defendants for records under section 1198.5 on May 26, 2021.  As of the date of this Complaint, no records have been furnished.  Defendants have failed to comply with section 1198.5.

109.    Wherefore, Plaintiff prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment against Defendants and each of them as follows:

**As to the First through Fourth Causes of Action:**

1.    That this Court certify the Classes;

2.    That this Court certify Plaintiff as the representative of the Classes;

3.      For compensatory, special, and general damages, including unpaid wages and overtime premiums based on the hours worked, and lost wages and related benefits in an amount according to proof, but in excess of the minimum jurisdictional limit of this Court;

4.      For restitutionary relief to Plaintiff and the members of the Class;

5.      For injunctive relief, including that available under Business and Professions Code Section 17203;

6.      For liquidated damages in an amount equal to the unpaid overtime compensation pursuant to 29 U.S.C. § 216(b);

7.      For statutory attorneys' fees and costs, including those available under 29 USC § 216(b); Labor Code sections 218.5 and 1194, and Code of Civil Procedure section 1021.5;

8.      For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, according to proof; and

9.      For such other and further relief as the court deems proper.

**As to the Fifth & Sixth Causes of Action:**

1.      For economic (special) and non-economic (general) damages in an amount yet unknown, but in excess of the minimum jurisdictional limit of this Court;

2.      For injunctive relief pursuant to Government Code section 19265(c);

3.      For punitive and/or exemplary damages;

4.      For statutory attorneys' fees and costs, including those available under Government Code section 12965(b);

5.      For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including that available under Civil Code sections 3287(a) and 3289(b);

6.      For such other and further relief as the Court deems just and proper.

/ / /

**As to the Seventh Cause of Action:**

1. For damages resulting from the retaliatory conduct, including lost benefits, wages, and emotional distress;

2. For imposition of a civil penalty pursuant to California Labor Code § 1102.5(f);

3. For injunctive relief;

4. For statutory attorneys' fees and costs, including those available under Labor Code §§ 218.6 and 1102.5(j)

5. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, according to proof; and

6. For such other and further relief as the Court deems just and proper.

**As to the Eighth & Ninth Causes of Action**

1. For injunctive relief requiring Defendants to comply with Labor Code sections 226(c) and 1198.5(b)(1).  Cal. Labor Code §§ 226(h); 1198.5(l);

2. For imposition of the requisite statutory penalty against Defendants in the amount of $750 per failure to timely provide records for a total penalty of $1,500.00;

3. For statutory attorneys' fees and costs, including those available under Labor Code §§ 226(h) and 1198.5(l);

4. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, according to proof; and

5. For such other and further relief as the Court deems just and proper.

**DATED:**  July 22, 2021                                    **MAYALL HURLEY P.C.**

By_____
ROBERT J. WASSERMAN
JENNY D. BAYSINGER
Attorneys for Plaintiff,
LEILANI KRYZHANOVSKIY, individually,
on behalf of all others similarly situated, and
as a proxy for the LWDA

EXHIBIT 1

Leilani Kryzhanovskiy



P.O. BOX 81226, SEATTLE, WA, 98108-1226

1/10/2020

Leilani Kryzhanovskiy

Dear Leilani:

On behalf of Amazon.com Services, Inc. (the "Company"), I am very pleased to offer you the position of Onsite Medical Representative. This letter clarifies and confirms the terms of your employment with the Company.

**Start Date and Compensation**

Unless we mutually agree otherwise in writing, you will commence employment on January 20, 2020 ("Start Date"). Your salary will be $21.88 per hour, ($45,510.40 annualized based on 2,080 hours per year) payable in accordance with the Company's standard payroll practice and subject to applicable withholding taxes. You will be eligible for a performance assessment and compensation adjustment in calendar year 2021. Ordinarily this process occurs each April.

**Signing Payment**

In appreciation of your decision to join us, the Company will pay you a sign-on payment of $8,000.00. This payment will ordinarily be advanced to you in a single installment on the date of your first regular paycheck after your Start Date, and will be earned on a prorated daily basis as you complete one full year of employment with the Company. If your employment with the Company is terminated for any reason prior to the first anniversary of your Start Date, you will be required to repay any unearned portion of the payment.

If you are employed with the Company after the one-year anniversary of your Start Date, you will be eligible for a second sign-on payment of $6,000.00. This sign-on payment will be issued in prorated pay period installments as you complete your second year of employment with the Company. Each installment will be earned at the time of payment. If your employment with the Company is terminated for any reason prior to the second anniversary of your Start Date, you will receive one final prorated installment based on the days worked in your final pay period. No additional installments will be paid.

Sign-on payments are payable in accordance with the Company's standard payroll practice and subject to applicable withholding taxes. Leaves of absence may affect how and when a payment

is earned and paid, as detailed in the Company's policies and Benefits Guide During Leave at the time leave is taken.

**Restricted Stock Unit Award**

Subject to approval by the Board of Directors of Amazon.com, Inc., you will be granted a restricted stock unit award with respect to 12 shares of Amazon.com, Inc. common stock. This award will vest and convert into shares of common stock over four years, as follows, subject to your continued employment with the Company:

- 5% on the 15th day of the month in which you reach your first anniversary of employment,

- An additional 15% on the 15th day of the month in which you reach your second anniversary of employment, and

- An additional 20% every six months thereafter, until fully vested.

Your award will be documented by delivery to you of a Restricted Stock Unit Award Agreement specifying the terms and conditions of the award. You will be eligible for a restricted stock unit grant, based on your performance, in calendar year 2021. Ordinarily this process occurs each April.

**Department, Manager and Shift**

Department: 1299 - Fulfillment Center - VAR
Manager: Steven McCoy
Shift Pattern:

Your shift or schedule may change in the future. Based on business need, Amazon.com Services, Inc. reserves the right to modify shift times or rotate employees between existing shifts at any time in the company's sole discretion. Peak schedule information will be posted when it becomes available.

**Shift Information**

Employees who work in Fulfillment Centers are expected to be open to working a variety of shifts. Most buildings, for instance, have night and weekend shifts, and many of our day shifts include one weekend day as part of the regular schedule. We do our best to match shifts with personal preference, but we reserve the right to assign employees to shifts and schedules based on business needs. All employees may be required to work overtime or on holidays, especially during our busy seasons.

**Benefits**

During the term of your employment, you will be entitled to 401(k), health and welfare, vacation, and other benefits as may be offered by the Company from time to time, subject to eligibility and other terms and conditions stated in the governing documents. Generally you are eligible to enroll in our 401(k) and major medical plans as of the date you start employment, with access to our enrollment system about three business days after your Start Date. Please refer to the enclosed documents for more information.

**Preemployment Screening**

This offer is contingent on the successful completion of a background check.

**Employment at Will**

If you accept our offer of employment, you will be an employee-at-will, meaning that either you or the Company may terminate our relationship at any time for any reason, with or without cause. Any statements to the contrary that may have been made to you, or that may be made to you, by the Company, its agents, or representatives are superseded by this offer letter.

**Confidentiality and Invention Assignment Agreement**

As a condition of and before you begin employment, you must sign the Confidentiality and Invention Assignment Agreement (the "Agreement"). The Company's willingness to grant you the restricted stock unit award referred to above is based in significant part on your commitment to fulfill the obligations specified in the Agreement. Please review the Agreement carefully and, if appropriate, have your attorney review it as well.

**Employment Eligibility**

To comply with immigration laws, you must provide the Company with evidence of your identity and eligibility for employment in the United States no later than three (3) business days after your date of hire. If you are in visa status, you also must provide new or renewed evidence of your eligibility for employment immediately prior to or upon expiration of your visa authorization.

**Additional Provisions**

If you accept this offer, the terms described in this letter will be the initial terms of your employment, and this letter supersedes any previous discussions or offers. Any additions to or modifications to this offer must be in writing and signed by you and an officer of the Company.

**This offer and all terms of employment stated in this letter will expire December 29, 2019.**

Leilani, we are very excited about the possibility of you joining us. I hope that you will accept this offer and look forward to a productive and mutually beneficial working relationship. Please let me know if I can answer any questions for you about any of the matters outlined in this letter.

Sincerely,

Steven McCoy
WHS Manager II

**ACCEPTANCE**

I accept employment with Amazon.com Services, Inc. under the terms set forth in this letter.

_____                    Jan 14, 2020
Signature                                          Date


Leilani Kryzhanovskiy


2020-01-10-08-01-79d43945-392c-4393-86cd-c2995cb0a68a

EXHIBIT 2

Sergey Kryzhanovskiy



P.O. BOX 81226, SEATTLE, WA, 98108-1226

4/24/2020

Sergey Kryzhanovskiy

Dear Sergey:

On behalf of Amazon.com Services LLC (the "Company"), I am very pleased to offer you the position of Onsite Medical Representative. This letter clarifies and confirms the terms of your employment with the Company.

**Start Date and Compensation**

Unless we mutually agree otherwise in writing, you will commence employment on May 4, 2020 ("Start Date"). Your salary will be $23.80 per hour, ($49,504.00 annualized based on 2,080 hours per year) payable in accordance with the Company's standard payroll practice and subject to applicable withholding taxes. You will be eligible for a performance assessment and compensation adjustment in calendar year 2021. Ordinarily this process occurs each April.

**Signing Payment**

In appreciation of your decision to join us, the Company will pay you a sign-on payment of $10,000.00. This payment will ordinarily be advanced to you in a single installment on the date of your first regular paycheck after your Start Date, and will be earned on a prorated daily basis as you complete one full year of employment with the Company. If your employment with the Company is terminated for any reason prior to the first anniversary of your Start Date, you will be required to repay any unearned portion of the payment.

If you are employed with the Company after the one-year anniversary of your Start Date, you will be eligible for a second sign-on payment of $7,000.00. This sign-on payment will be issued in prorated pay period installments as you complete your second year of employment with the Company. Each installment will be earned at the time of payment. If your employment with the Company is terminated for any reason prior to the second anniversary of your Start Date, you will receive one final prorated installment based on the days worked in your final pay period. No additional installments will be paid.

Sign-on payments are payable in accordance with the Company's standard payroll practice and subject to applicable withholding taxes. Leaves of absence may affect how and when a payment

is earned and paid, as detailed in the Company's policies and Benefits Guide During Leave at the time leave is taken.

**Restricted Stock Unit Award**

Subject to approval by the Board of Directors of Amazon.com, Inc., you will be granted a restricted stock unit award with respect to 12 shares of Amazon.com, Inc. common stock. This award will vest and convert into shares of common stock over four years, as follows, subject to your continued employment with the Company:

- 5% on the 15th day of the month in which you reach your first anniversary of employment,

- An additional 15% on the 15th day of the month in which you reach your second anniversary of employment, and

- An additional 20% every six months thereafter, until fully vested.

Your award will be documented by delivery to you of a Restricted Stock Unit Award Agreement specifying the terms and conditions of the award. You will be eligible for a restricted stock unit grant, based on your performance, in calendar year 2022. Ordinarily this process occurs each April. Please note that the number of shares scheduled to vest on a particular vesting date will be rounded down to the nearest whole share, and if the number is less than one whole share, you will not receive any shares until the next scheduled vesting date.

**Department, Manager and Shift**

Department: 1299 - Fulfillment Center - VAR
Manager: Rick Borszcz
Shift Pattern: AAAA

Your shift or schedule may change in the future. Based on business need, Amazon.com Services LLC reserves the right to modify shift times or rotate employees between existing shifts at any time in the company's sole discretion. Peak schedule information will be posted when it becomes available.

**Shift Information**

Employees who work in Fulfillment Centers are expected to be open to working a variety of shifts. Most buildings, for instance, have night and weekend shifts, and many of our day shifts include one weekend day as part of the regular schedule. We do our best to match shifts with personal preference, but we reserve the right to assign employees to shifts and schedules based on business needs. All employees may be required to work overtime or on holidays, especially during our busy seasons.

**Benefits**

During the term of your employment, you will be entitled to 401(k), health and welfare, vacation, and other benefits as may be offered by the Company from time to time, subject to eligibility and other terms and conditions stated in the governing documents. Generally you are eligible to enroll in our 401(k) and major medical plans as of the date you start employment, with access

to our enrollment system about three business days after your Start Date. Please refer to the enclosed documents for more information.

**Preemployment Screening**

This offer is contingent on the successful completion of a background check.

**Employment at Will**

If you accept our offer of employment, you will be an employee-at-will, meaning that either you or the Company may terminate our relationship at any time for any reason, with or without cause. Any statements to the contrary that may have been made to you, or that may be made to you, by the Company, its agents, or representatives are superseded by this offer letter.

**Confidentiality and Invention Assignment Agreement**

As a condition of and before you begin employment, you must sign the Confidentiality and Invention Assignment Agreement (the "Agreement"). The Company's willingness to grant you the restricted stock unit award referred to above is based in significant part on your commitment to fulfill the obligations specified in the Agreement. Please review the Agreement carefully and, if appropriate, have your attorney review it as well.

**Employment Eligibility**

To comply with immigration laws, you must provide the Company with evidence of your identity and eligibility for employment in the United States no later than three (3) business days after your date of hire. If you are in visa status, you also must provide new or renewed evidence of your eligibility for employment immediately prior to or upon expiration of your visa authorization.

**Additional Provisions**

If you accept this offer, the terms described in this letter will be the initial terms of your employment, and this letter supersedes any previous discussions or offers. Any additions to or modifications to this offer must be in writing and signed by you and an officer of the Company.

**This offer and all terms of employment stated in this letter will expire April 5, 2020.**

Sergey, we are very excited about the possibility of you joining us. I hope that you will accept this offer and look forward to a productive and mutually beneficial working relationship. Please let me know if I can answer any questions for you about any of the matters outlined in this letter.

Sincerely,


Rick Borszcz
Regional WHS Manager

**ACCEPTANCE**

I accept employment with Amazon.com Services LLC under the terms set forth in this letter.

*Sergey Kryzhanovskiy*
_____                    ~~Apr 28, 2020~~_____
Signature                                                        Date

Sergey Kryzhanovskiy

2020-04-24-13-01-c3d763fc-909e-4193-a39f-f49651a96993

EXHIBIT 3



SEATTLE. WA 98109

Filing Status: Married filing jointly
Exemptions/Allowances:
Federal: Standard Withholding Table

LEILANI KRYZHANOVSKIY

Social Security Number:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 21.8800 | 33.13 | 724.88 | 724.88 |
| Overtime | 32.8200 | .27 | 8.86 | 8.86 |
| Guarantee Pay | | | 375.09 | 1,750.40 |
| Imputed Income | | | 0.20 | 0.60 |
| Personal Time | 21.8800 | 3.47 | 75.92 | 75.92 |
| Shft Pay @O/T | 0.8889 | .27 | 0.24 | 0.24 |
| Shift Pay | 0.6000 | 36.60 | 21.96 | 26.76 |
| Holiday Pay | | | | 175.04 |
| **Gross Pay** | | | **$1,207.15** | 2,762.70 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -58.56 | 136.52 |
| | Social Security Tax | -67.18 | 148.29 |
| | Medicare Tax | -15.71 | 34.68 |
| | CA State Income Tax | -38.64 | 91.49 |
| | CA SUI/SDI Tax | -12.99 | 28.67 |

| | Other | | |
|---|---|---|---|
| | Imputed | -0.20 | 0.60 |
| | Pre-Tax Dental | -15.69* | 47.07 |
| | Pre-Tax Medical | -106.62* | 319.86 |
| | Pre-Tax Vision | -2.08* | 6.24 |
| | Slfcd | -0.35 | 1.05 |
| | Slfsp | -0.22 | 0.66 |
| | 401K | -48.28* | 110.48 |

| **Net Pay** | | **$840.63** | |
|---|---|---|---|
| Checking Dep. | | -840.63 | |

| Net Check | $0.00 |
|---|---|

\* Excluded from federal taxable wages

Your federal taxable wages this period are
$1,034.48

**Other Benefits and**
| Information | this period | total to date |
|---|---|---|
| Groupterm Life | 0.76 | 2.28 |
| Personal Balnce | 12.12 | |
| Tot Work Hours | 33.40 | |
| Vacation Balnce | 23.78 | |

**Important Notes**
YOUR COMPANY PHONE NUMBER IS 888-892-7180

BASIS OF PAY: HOURLY

LEGAL ADDR 410 TERRY AVE NORTH SEATTLE WA 98109

@ THE SHIFT PAY RATE MAY NOT DISPLAY CONSISTENTLY
DUE TO CALCULATION METHOD AND ROUNDING.

**Additional Tax Withholding Information**
Taxable Marital Status:
CA:           Single

AMAZON.COM SERVICES LLC
ATTN: AMAZON PAYROLL
202 WESTLAKE AVE N
SEATTLE . WA 98109

Advice number:      00000070505
Pay date:           01/22/2021

Deposited to the account of
LEILANI KRYZHANOVSKIY

| | account number | transit ABA | amount |
|---|---|---|---|
| | xxx8957 | xxxx xxxx | $840.63 |

THIS IS NOT A CHECK

**NON-NEGOTIABLE**

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | |
|---|---|---|---|---|---|
| Y1K | 667496 | 129900 | 2136 | 0000070505 | 1 |

Page   2                                012-0208
AMAZON.COM SERVICES LLC
ATTN: AMAZON PAYROLL
202 WESTLAKE AVE N
SEATTLE, WA 98109

**Earnings Statement**          ADP

Period Beginning:   01/10/2021
Period Ending:      01/16/2021
Pay Date:           01/22/2021

Filing Status: Married filing jointly
Exemptions/Allowances:
Federal: Standard Withholding Table