1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LEILANI KRYZHANOVSKIY,                    No.  2:21-cv-01292-DAD-BAM

12              Plaintiff,

13         v.                                  ORDER DENYING DEFENDANTS'
                                               MOTION TO DISMISS
14   AMAZON.COM SERVICES, INC. et al.,
                                               (Doc. No. 11)
15              Defendants.

16

17         This matter is before the court on the motion to dismiss filed by Amazon.com Services,

18   Inc. and Amazon.com Services, LLC (collectively "Amazon" or "defendants") on September 10,

19   2021.[1]  (Doc. No. 11.)  In light of the ongoing public health emergency posed by the COVID-19

20   pandemic, defendants' motion was taken under consideration based on the papers.  (Doc. No. 20.)

21   For the following reasons, the court will deny the motion to dismiss filed on behalf of defendants.

22   ─────────────────────
     [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
23   overwhelming caseload has been well publicized and the long-standing lack of judicial resources
     in this district long-ago reached crisis proportion.  While that situation was partially addressed by
24   the U.S. Senate's confirmation of a district judge for one of this court's vacancies on December
     17, 2021, another vacancy on this court with only six authorized district judge positions was
25   created on April 17, 2022.  For over twenty-two months the undersigned was left presiding over
     approximately 1,300 civil cases and criminal matters involving 735 defendants.  That situation
26   resulted in the court not being able to issue orders in submitted civil matters within an acceptable
     period of time and continues even now as the undersigned works through the predictable backlog.
27   This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the
28   parties and their counsel.

                                               1

1

**BACKGROUND**

2     On July 22, 2021, plaintiff Leilani Kryzhanovskiy filed this putative class action against

3  her employer Amazon.  (Doc. No. 1.)  On August 20, 2021, plaintiff filed her operative first

4  amended complaint ("FAC") in this action against defendants.  (Doc. No. 9.)  Plaintiff alleges as

5  follows in her FAC.

6     Plaintiff was hired by defendants in January 2020 to work as an "Onsite Medical

7  Representative" primarily assigned to defendants' Stockton, California warehouse location.  (*Id.*

8  at ¶ 8.)  In or around April 2020, plaintiff's husband—who has comparable qualifications and

9  experience to plaintiff—was hired for the same position.  (*Id.* at ¶ 12.)  However, plaintiff's

10  husband was offered substantially more in wages.  (*Id.*)  In the position of Onsite Medical

11  Representative, plaintiff and her husband have identical primary responsibilities.  (*Id.* at ¶ 18.)

12     On May 27, 2021, plaintiff sent a notification letter to the California Labor & Workforce

13  Development Agency (the "LWDA letter"), as well as to defendants, in which she outlined

14  defendants' alleged violations of the California Labor Code, including the Equal Pay Act based

15  on their disparate treatment on the basis of gender.  (*Id.* at ¶ 39.)  Plaintiff is informed and

16  believes that defendants' corporate offices received her notification letter on June 1, 2021, and

17  that, thereafter, her supervisors in the Stockton office were informed of her complaint.  (*Id.*)

18     Once her supervisors became aware of plaintiff's complaint, they began retaliating against

19  her.  (*Id.* at ¶ 40.)  In May 2021, plaintiff had applied for a promotion to the position of

20  "Workplace Health & Safety Specialist" at the Stockton warehouse.  (*Id.* at ¶ 41.)  On June 8,

21  2021, plaintiff was contacted by an internal recruiter and advised that the hiring team had been

22  "very impressed" with her background.  (*Id.*)  An interview was scheduled to take place on June

23  18, 2021.  (*Id.*)  On June 16, 2021, plaintiff approached her direct supervisor Brent Butterfield to

24  ask him about her upcoming interview.  (*Id.* at ¶ 42.)  Butterfield responded that the position had

25  already been filled and that plaintiff's interview would consequently be canceled.  (*Id.*)  Upon

26  information and belief, plaintiff alleges that Butterfield filled the position and/or did not afford

27  plaintiff the opportunity to interview in retaliation for plaintiff having lodged complaints about

28  defendants' Labor Code violations and gender discrimination.  (*Id.*)  In the time since plaintiff

1   submitted her LWDA letter, Butterfield has been dismissive of plaintiff.  (*Id.* at ¶ 43.)  For

2   example, in June 2021, plaintiff reached out to Butterfield to request information about

3   potentially modifying her work schedule.  (*Id.*)  Butterfield did not initially respond, and when

4   plaintiff sought to speak to him in person, Butterfield informed her that schedule assignments are

5   based on seniority.  (*Id.*)  However, even though plaintiff is the most senior Onsite Medical

6   Representative at the Stockton warehouse, "the schedule change was given to someone who had

7   only recently transferred to Stockton."  (*Id.*)

8          Plaintiff's FAC also includes class allegations regarding defendants' alleged violations of

9   the California Labor Code, including that defendants had:  (1) uniform written policies and

10   practices that failed to include all remuneration in calculating the regular rate of pay; (2) a

11   uniform pattern and practice of underpaying female employees as compared to their male

12   counterparts; and (3) a uniform provision of wage statements to their California employees.  (*Id.*

13   at ¶¶ 48, 51.)  Plaintiff alleges that the wage statements furnished by defendants to plaintiff and

14   the putative class of other non-exempt California employees failed to accurately show the total

15   hours worked and/or all applicable hourly rates in effect during the pay period in violation of

16   California Labor Codes §§ 226(a)(2) and (9).  (*Id.* at ¶ 26.)  Specifically, plaintiff alleges that she

17   and defendants' other non-exempt California employees, both current and former, "were unable

18   to promptly and easily determine all applicable hourly rates in effect during the pay period and

19   the corresponding number of hours worked at each hourly rate from the wage statements

20   furnished by [defendants]."  (*Id.* at ¶ 36.)

21          Based on the allegations in plaintiff's FAC, plaintiff asserts both class representative

22   claims as well as individual claims.  Plaintiff asserts class and representative claims for:  (1)

23   failure to provide overtime pay in violation of California Labor Code §§ 510, 558, and 1194 and

24   in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; (2) failure to

25   furnish accurate wage statements in violation of California Labor Code § 226; (3) violation of the

26   California's Equal Pay Act; (4) unlawful business practices under California's Unfair

27   Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*; and (5) a

28   Private Attorneys General Act ("PAGA") claim.  (*Id.* at ¶¶ 73-105).  Plaintiff also asserts

1    individual claims for:  (6) gender discrimination in violation of the Fair Employment and Housing

2    Act ("FEHA"); (7) retaliation in violation of the FEHA; (8) retaliation under California Labor

3    Code § 1102.5(b); (9) failure to timely furnish payroll records in violation of California Labor

4    Code § 226; and (10) failure to timely furnish personnel records in violation of California Labor

5    Code § 1198.5.  (*Id.* at ¶¶ 106–135).

6         On September 10, 2021, defendants filed their pending motion, seeking dismissal of

7    plaintiff's fourth, seventh, and eighth causes of action.  (Doc. No. 11.)  On September 30, 2021,

8    plaintiff filed her opposition to defendants' motion to dismiss, and on October 7, 2021,

9    defendants filed their reply thereto.  (Doc. Nos. 13, 15.)

10                                **LEGAL STANDARD**

11        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

12   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

13   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

14   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

15   F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the

16   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a)

17   does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state

18   a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

19   (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the

20   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

21   defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In determining whether a

22   complaint states a claim on which relief may be granted, the court accepts as true the allegations

23   in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon*

24   *v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.

25   1989).  It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or

26   that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated*

27   *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

28   /////

4

1    "Dismissal without leave to amend is proper if it is clear that the complaint could not be

2    saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  To the

3    extent that the pleadings can be cured by the allegation of additional facts, courts will generally

4    grant leave to amend.  *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d

5    242, 247 (9th Cir. 1990) (citations omitted).

6                                              **ANALYSIS**

7           In their pending motion, defendants seek to dismiss plaintiff's fourth cause of action for

8    unlawful business practices under the UCL and plaintiff's seventh and eighth causes of action for

9    unlawful retaliation pursuant to FEHA and California Labor Code § 1102.5, respectively.  (Doc.

10   No. 11 at 2.)  The court will address each claim in turn.

11   **A.      Whether Plaintiff Has Adequately Alleged a UCL Claim**

12          California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice."

13   Cal. Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and distinct theory of

14   liability."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).  Here, plaintiff's UCL

15   claim is based on her allegations that defendant engaged in "unfair" business practices.  (*See* FAC

16   at ¶ 98.)

17          "A UCL action is equitable in nature, damages cannot be recovered, and prevailing

18   plaintiffs are generally limited to injunctive relief and restitution."  *Korea Supply Co. v. Lockheed*

19   *Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (cleaned up).  Moreover, as the Ninth Circuit

20   recently reiterated in *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), a plaintiff

21   cannot obtain equitable relief in federal court unless legal remedies are inadequate.  *Id.* at 844.

22   With regard to her UCL claim, plaintiff seeks only injunctive relief.  (*Id.* at ¶ 99) ("Plaintiff and

23   the other members of the FLSA Class, the CA Overtime Class, and the Equal Pay Act class are

24   being subjected to ongoing injury/harm for which there is no adequate remedy at law.  Damages

25   will not fully redress such harms and, thus, injunctive relief is necessary.").

26          In their motion to dismiss, defendants argue that plaintiff cannot pursue her UCL claim

27   because "she does not allege that she lacks an adequate remedy at law, which the Ninth Circuit

28   has held is a prerequisite for bringing such a claim in federal court."  (Doc. No. 11 at 7) (citing

                                                        5

1    *Sonner*, 971 F.3d at 844).  Defendants contend that district courts are required to dismiss claims

2    seeking equitable relief brought under the UCL absent a showing that plaintiff lacks an adequate

3    remedy at law.  (*Id.* at 10.)  Defendants advance that while plaintiff's UCL claim seeks injunctive

4    relief, plaintiff has adequate legal remedies because she is seeking unpaid wages, overtime

5    premiums, and related benefits based on the same allegedly "unlawful" conduct upon which her

6    UCL claim is premised.  (*Id.* at 11.)  According to defendants, plaintiff's "allegations that she is

7    owed damages under the Labor Code . . . show that the relief she seeks is 'a quintessential legal

8    remedy.'"  (*Id.*) (citation omitted).

9         In her opposition to defendants' pending motion, plaintiff argues that there is no adequate

10   remedy at law for her or the other members of the putative class because they are subjected to

11   *ongoing* injury and harm, which monetary damages cannot fully redress.  (Doc. No. 13 at 9.)

12   Plaintiff contends that she "does not have adequate remedies at law to redress the prospective

13   harm of ongoing violations of her rights" because "[i]t is readily recognized that damages are

14   generally inadequate to redress prospective harm."  (*Id.* at 10) (citing *Nacarino v. Chobani, LLC*,

15   No. 20-cv-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021)).  Thus, plaintiff

16   concludes, "there is necessarily no legal remedy to redress/prevent the future harm Plaintiff seeks

17   to avoid through the injunctive relief sought by her fourth cause of action."  (*Id.*)

18        In their reply, defendants protest that plaintiff's assertions are wholly conclusory as to

19   why her legal remedies are inadequate.  (Doc. No. 15 at 6.)  Defendants note that although

20   plaintiff represents that she is being subjected to ongoing harm, she "nowhere alleges *why* the

21   nature of such unspecified 'ongoing injury/harm' could not be remedied by the monetary relief

22   she seeks in this lawsuit."  (*Id.* at 7) (citing *Adams v. I–Flow Corp.*, No. 09-cv-09550-R-SS, 2010

23   WL 1339948, at *7 (C.D. Cal. Mar. 30, 2010)).  In fact, defendants argue, plaintiff "offers no

24   detail at all as to the nature of the alleged future harm or why monetary damages would be

25   insufficient to address it."  (*Id.* at 8.)

26        At this early stage of the litigation, the court is unable to definitively conclude that

27   plaintiff has an adequate remedy at law with respect to her UCL claim.  Defendants' motion to

28   dismiss plaintiff's fourth cause of action will therefore be denied.  In her fourth cause of action,

1    plaintiff appears to be seeking equitable relief in the form of an injunction under the UCL.  (FAC

2    at ¶ 99.)  Equitable relief can come in different forms—for example, injunctive relief or

3    restitution.  *See Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC, 2020 WL 6743912, at *4 (N.D.

4    Cal. Nov. 17, 2020).  While the Ninth Circuit's decision in *Sonner* bars equitable restitution for

5    past harms that are otherwise subject to an adequate legal remedy, it does not bar the issuance of

6    an injunction to prevent *future* harms.  *See Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-

7    EMC, 2021 WL 3621837, at *10 (N.D. Cal. Aug. 16, 2021).  Accordingly, plaintiff may seek

8    equitable relief in the form of an injunction under the UCL, even if she also seeks monetary

9    damages for past conduct.  *See id.*

10          To be sure, some district courts in California have applied the Ninth Circuit's decision in

11   *Sonner* to injunctive relief claims brought under the UCL, primarily in cases where monetary

12   damages could compensate for the harm suffered, such as overpayment for defective or falsely

13   advertised products.  *See, e.g.*, *Zaback v. Kellogg Sales Co.*, No. 3:20-cv-00268-BEN-MSB, 2020

14   WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (dismissing a UCL claim for injunctive relief

15   because the plaintiff had failed to allege that there was no adequate remedy at law); *In re*

16   *MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *2–3 (N.D. Cal. Oct.

17   13, 2020) ("Courts generally hold that monetary damages are an adequate remedy for claims

18   based on an alleged product defect, and reject the argument that injunctive relief requiring repair

19   or replacement is appropriate."); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-cv-00769-

20   CJC-GJS, 2020 WL 5492990, at *3–4 (C.D. Cal. Sept. 9, 2020) (dismissing UCL claims seeking

21   injunction and restitution); *Teresa Adams v. Cole Haan, LLC,* No. 20-cv-913-JVS-DFM, 2020

22   WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) (finding that there is no "exception for injunctions

23   as opposed to other forms of equitable relief" under *Sonner*).

24          "More recently, however, other courts have declined to apply *Sonner* to bar UCL claims

25   for injunctive relief, recognizing that the prospect of paying damages is sometimes insufficient to

26   deter a defendant from engaging in an alleged unlawful, unfair, or fraudulent business practice."

27   *Brooks*, 2021 WL 3621837, at * 11 (citing *Zeiger v. Wellpet LLC*, No. 3:17-cv-04056-WHO,

28   2021 756109, at *21 (N.D. Cal. Feb. 26, 2021) ("Assuming that *Sonner* applies to injunctive

                                         7

1  relief, Zeiger has shown that monetary damages for past harm are an inadequate remedy for . . .

2  future harm . . . .  Damages would compensate Zeiger for his past purchases.  An injunction

3  would ensure that he (and other consumers) can rely on Wellpet's representations in the future.");

4  *Andino v. Apple, Inc.*, No. 2:20-cv-01628-JAM-AC, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20,

5  2021) ("*Sonner* does not warrant dismissal of [the plaintiff's] request for injunctive relief.  Money

6  damages are an inadequate remedy for future harm, as they will not prevent Defendant from

7  continuing the allegedly deceptive practice.")).  As at least one other district court has noted,

8  "[m]anifest differences thus exist between, for example, the retrospective equitable remedy of

9  restitution and the prospective equitable remedy of an injunction."  *Dekker v. Vivint Solar, Inc.*,

10  No. 19-cv-07918-WHA, 2022 WL 827246, at *3 (N.D. Cal. Mar. 18, 2022).

11       Indeed, the undersigned has determined in the context of a case in which a false

12  advertising claim was asserted that "[a]lthough monetary damages may ultimately fully address

13  plaintiff's harm, at this stage of the litigation there is 'an ongoing, prospective nature to

14  [plaintiff's allegations]' given her contention that she and other future purchasers will continue to

15  be misled."  *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 918 (E.D. Cal. 2020)

16  (quoting *Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*, No. 2:17-cv-01515-KJM-AC, 2020

17  WL 3893395, at *5 (E.D. Cal. July 10, 2020)).  In *Roper*, "the allegations of the complaint [were]

18  'sufficient to suggest a likelihood of future harm amenable to injunctive relief.'"  *Id.*; *see also*

19  *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, at *7

20  (N.D. Cal. Nov. 6, 2020) (holding that plaintiff's inability to rely on Facebook's future

21  representations justified a claim for injunctive relief because future money damages could not be

22  proven with certainty).  Ultimately, as a general matter, "legal damages are typically inadequate

23  to remedy the future harms from ongoing violations."  *Sanchez v. Sams West, Inc.*, No. 2:21-cv-

24  05122-SVW-JC, 2022 WL 2035961, at *3 (C.D. Cal. Mar. 8, 2022).

25       In her FAC, plaintiff has alleged that defendants' unfair business practices include "failing

26  to properly pay overtime based on the regular rate of pay, and failing to pay female employees

27  wages at rates equal to those afforded to male employees with similar experience, education,

28  seniority, and job duties."  (FAC at ¶ 98.)  In seeking injunctive relief, plaintiff requests that the

1    court enjoin defendants from continuing to engage in this conduct which is violative of the

2    California Labor Code.  Based on plaintiff's allegations, there are several potential irreparable

3    harms that could result from defendants' ongoing failure to pay overtime and failure to pay men

4    and women equally, including the possibility of employee confusion over whether workers

5    received all wages owed to them, difficulty and expense in reconstructing pay records, and

6    forcing employees to make mathematical computations to analyze whether the wages paid in fact

7    compensated them for all hours worked.  *See Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d

8    1169, 1181 (C.D. Cal. 2008).  Because "lost wages or delays in compensation threaten or impair

9    [plaintiff's] ability to meet basic needs, such harms are irreparable."  *Carrillo v. Schneider*

10   *Logistics, Inc.*, 823 F. Supp. 2d 1040, 1045 (C.D. Cal. 2011).  Furthermore, in the absence of

11   compliance with the California Labor Code, defendants could conceal critical information that

12   plaintiff or the court would need to determine more efficiently the full extent to which defendants

13   allegedly failed to pay all wages owed to plaintiff and others similarly situated.  *See id.*  Put

14   simply, damages stemming from lost future wages remain uncertain and difficult to quantify.  *See*

15   *Roper*, 510 F. Supp. 3d at 918.  To conclude otherwise would force plaintiff to routinely bring

16   federal lawsuits seeking newly lost wages every time she is aggrieved by ongoing Labor Code

17   violations.

18           Lastly, California Labor Code § 226, under which plaintiff brings several of her claims,

19   expressly provides that "[a]n employee may . . . bring an action for injunctive relief to ensure

20   compliance" with that section.  Cal. Lab. Code § 226(h).  Other judges of this district court have

21   explicitly determined that "[a]n injunction to 'ensure compliance' with [§ 226] is a form of

22   *prospective* relief that necessarily affects only current and future employees."  *Holak v. Kmart*

23   *Corp.*, No. 1:12-cv-00304-AWI, 2012 WL 6202298, at *8 (E.D. Cal. Dec. 12, 2012) (emphasis

24   added).  Therefore, the injunctive relief plaintiff seeks here appears to be purely prospective,

25   which is exactly the type of injunctive relief not barred by the decision in *Sonner*.  *See Brooks*,

26   2021 WL 3621837, at *11 (declining to dismiss a prospective injunctive relief claim because

27   "[d]amages for past sales are not likely to dissuade [defendant] from continuing this behavior in

28   the future.").

9

1   Based on the allegations of plaintiff's FAC and the relevant caselaw, the court concludes

2   that plaintiff's allegations are sufficient to support her claim that she and the putative class lack

3   an adequate remedy at law because monetary damages alone would be insufficient to remedy the

4   alleged ongoing harm.  *See, e.g.*, *Ford v. Hyundai Motor America*, No. 8:20-cv-00890-FLA-ADS,

5   2021 WL 7448507, at *28 (C.D. Cal. Oct. 5, 2021) (recognizing the distinction between

6   retrospective and prospective injunctive relief within the confines of whether monetary damages

7   can serve as an adequate remedy at law).

8   Accordingly, the court will deny defendants' motion to dismiss plaintiff's UCL claim for

9   injunctive relief to the extent that claim is premised on alleged future harm.

10  **B.      Whether Plaintiff Has Adequately Alleged Retaliation Claims**

11  Defendants also move to dismiss plaintiff's seventh and eighth claims for retaliation under

12  FEHA and California Labor Code § 1102.5, respectively.  (Doc. No. 11 at 12.)  Defendants argue

13  that plaintiff's individual retaliation claims are deficient because she has not alleged "any facts

14  from which this Court could reasonably infer that she was retaliated against *because* of her

15  alleged protected activity."  (*Id.*)

16  Under FEHA, it is unlawful for an employer "to discharge, expel, or otherwise

17  discriminate against any person because the person has opposed any practices forbidden under

18  this part or because the person has filed a complaint, testified, or assisted in any proceeding under

19  this part."  Cal. Gov't Code § 12940(h).  Similarly, California Labor Code § 1102.5 makes it

20  unlawful for an employer to retaliate against an employee for disclosing information "to a person

21  with authority over the employee . . . if the employee has reasonable cause to believe that the

22  information discloses a violation of state or federal statute, or a violation of or noncompliance

23  with a local, state, or federal rule or regulation[.]"  Cal. Lab. Code § 1102.5(b).

24  To establish a *prima facie* case of retaliation under FEHA and § 1102.5, a plaintiff must

25  allege and ultimately show:  (i) that she engaged in a protected activity; (ii) the employer

26  subjected her to an adverse employment action; and (iii) a causal link existed between her

27  protected activity and the employer's action.  *See Dawson v. Entek Int'l.*, 630 F.3d 928, 936 (9th

28  Cir. 2011); *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007); *Yanowitz v. L'Oreal USA,*

10

1     *Inc.*, 36 Cal.4th 1028, 1042 (2005) (citing *Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th

2     803, 814–15 (1999)); *see also Guz v. Bechtel Nat., Inc.*, 24 Cal.4th 317, 354 (2000) ("Because of

3     the similarity between state and federal employment discrimination laws, California courts look

4     to pertinent federal precedent when applying our own statutes."). California Labor Code § 1102.5

5     mirrors the FEHA provision on retaliation and therefore "[t]he same standard applies to establish

6     a *prima facie* case of retaliation under § 1102.5" as under FEHA. *Airy v. City of Hesperia*, No.

7     19-cv-1212-JGB-KK, 2019 WL 8017811, at *4 (C.D. Cal. Sept. 13, 2019) (citing *Mokley v.*

8     *County of Orange*, 157 Cal. App. 4th 121, 138 (2007)); *see also Siazon v. Hertz Corp.*, 847 Fed.

9     App'x 448, 451 (9th Cir. 2021). [2]

10         A plaintiff engages in protected activity if she opposes unlawful employment practices

11     when that opposition is based on a "reasonable belief" that the employer's actions are unlawful.

12     *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) (quoting *EEOC v. Crown Zellerbach Corp.*,

13     720 F.2d 1008, 1012 (9th Cir. 1983)); *see also Lavery-Petrash v. Sierra Nev. Mem'l Hosp.*, No.

14     2:11-cv-1520-GEB-DAD, 2014 WL 334218, at *5 (E.D. Cal. 2014). A plaintiff may establish a

15     causal link between the alleged protected activity and any alleged adverse action by way of

16     circumstantial evidence, including the employer's knowledge of the protected activity and the

17     proximity in time between the protected action and the adverse employment act. *See Dawson*,

18     630 F.3d at 936; *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988); *see also Passantino v.*

19     *Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("[W]hen adverse

20     decisions are taken within a reasonable period of time after complaints of discrimination have

21     been made, retaliatory intent may be inferred."). Indeed, where retaliation claims are brought

22     under FEHA, courts often consider the temporal proximity between the alleged protected activity

23     and the alleged adverse action. *See, e.g.*, *Flores v. City of Westminster*, 873 F.3d 739, 749–50

24     (9th Cir. 2017). In addition, "[t]he knowledge requirement for a causal link can be met by

25     showing: (1) the relevant decision maker actually knew about the employee's protected activity;

26     or (2) the relevant decision maker acted as the 'cat's paw' of an individual who knew about the

27

28     [2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   protected activity, i.e. the decision maker was influenced into taking the adverse action by an

2   individual who knew about the protected activity." *Rubadeau v. M.A. Mortenson Co.*, No. 1:13-

3   cv-339-AWI-JLT, 2013 WL 3356883, at *10 (E.D. Cal. July 3, 2013) (citing *Gunther v. County*

4   *of Washington*, 623 F.2d 1303, 1316 (9th Cir. 1979)).

5       Here, defendants challenge the sufficiency of plaintiff's allegations as to the third element

6   of her retaliation claims—the causal link.  Defendants do not appear to dispute that plaintiff

7   engaged in a protected activity or that plaintiff's allegations are otherwise sufficient with respect

8   to the asserted adverse employment actions taken against her.  Rather, defendants rest their entire

9   argument on whether plaintiff has adequately alleged that her supervisors knew about her

10  protected activity—in this case, her filing of the LWDA letter.  Defendants contend that plaintiff

11  has not alleged how "any relevant decision maker had knowledge she engaged in a protected

12  activity." (Doc. No. 11 at 13.)  Defendants note that although plaintiff alleges that she is

13  informed and believes that Amazon's corporate offices received her LWDA letter on June 1,

14  2021, and that her supervisors in the Stockton office thereafter received the same, "such

15  speculative, conclusory allegations are 'insufficient under *Iqbal/Twombly*.'" (*Id.* at 14) (quoting

16  *Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19,

17  2018)).  Defendants urge the court to conclude that plaintiff "has failed to plead facts supporting

18  this essential element of her retaliation claims" and "her claims must be dismissed." (*Id.*)  In

19  summary, defendants argue that plaintiff has not adequately alleged that her supervisor knew of

20  her engagement in protected activity, and thus she has not adequately alleged the causation

21  element of her retaliation claims.

22      In her opposition to defendants' pending motion, plaintiff argues that the allegations of

23  her FAC are sufficient in this regard because she has put defendants on fair notice of her

24  retaliation claims.  Plaintiff notes that her FAC alleges that "she submitted a notification letter to

25  the LWDA on May 27, 2021," "that [d]efendants received it on June 1, 2021," that her

26  supervisors "in the Stockton office (including Brent Butterfield) were thereafter informed of her

27  complaints," and that her supervisors "then began retaliating against her." (Doc. No. 13 at 10.)

28  Plaintiff further maintains that she has provided in detail "specific alleged adverse employment

1    action," including her canceled interview, her denied request for a schedule change, and

2    Butterfield's increasingly dismissive attitude toward her after she submitted her complaint to

3    corporate headquarters.  (*Id.* at 10–11.)  Moreover, plaintiff avers that she has sufficiently alleged

4    a causal connection between her engagement in protected activity and the adverse employment

5    action allegedly taken against her by means of her asserted circumstantial evidence.  (*Id.* at 11.)

6    Specifically, plaintiff advances that her claim is based on the fact that she "applied for the

7    promotion prior to her complaint, that her invitation to interview was inexplicably revoked within

8    two (2) weeks of Defendants' receipt of her complaint, and that Butterfield's attitude toward her

9    markedly changed in the wake of her lodging her complaint."  (*Id.*)  According to plaintiff, these

10    factual allegations in her FAC support the plausible inference that her supervisors had knowledge

11    of her complaint and that such knowledge motivated the adverse employment actions taken

12    against her.  (*Id.*)

13        In their reply, defendants argue that plaintiff "cannot satisfy her burden of alleging

14    causation by relying exclusively on temporal proximity between the alleged protected activity and

15    adverse action."  (Doc. No. 15 at 8.)  Defendants assert that even if plaintiff has alleged a close

16    temporal proximity between the two events, she must still allege that her supervisors had some

17    knowledge of the protected activity in order to support the causation element of her retaliation

18    claims.  (*Id.* at 9) ("[Plaintiff] does not allege that she complained to *any* of her supervisors, or

19    allege any facts that her Stockton supervisors were aware of her [LWDA letter].") (emphasis in

20    original).  Finally, although defendants acknowledge that allegations asserted on information and

21    belief are sufficient to survive a motion to dismiss so long as there is a plausible foundation as to

22    such claims, they nonetheless argue that pleading on information and belief, *without more*, is

23    insufficient to survive their motion to dismiss.  (*Id.* at 10) (citing *Solis v. City of Fresno*, No.

24    1:11-cv-00053-AWI-GSA, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012)).  Defendants

25    conclude that "even viewing [plaintiff's] allegations in the light most favorable to [p]laintiff . . .

26    no facts link the receipt of a notice at a corporate office to the notion that [p]laintiff's supervisors

27    in Stockton, California had any knowledge of Amazon's receipt of [p]laintiff's [LWDA letter]."

28    (*Id.*)

13

1      The court is not persuaded by defendants' arguments and concludes instead that plaintiff

2   has sufficiently alleged that her supervisors in the Stockton office knew of her complaints.  (FAC

3   at ¶ 39.)  Notably, the Ninth Circuit has held that because many relevant facts are often known

4   only to the defendant, a plaintiff can plead sufficient facts on information and belief to state a

5   plausible claim so long as there are additional facts alleged by plaintiff that support her belief.

6   *See Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017) (relaxing the pleading

7   requirement where the facts were known only to the defendant "in light of the additional facts

8   alleged by [plaintiff.]").  In *Soo Park*, the Ninth Circuit explained that "[t]he *Twombly* plausibility

9   standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief

10  where the facts are peculiarly within the possession and control of the defendant or where the

11  belief is based on factual information that makes the inference of culpability plausible."  *Id.* at

12  928 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).  Accordingly, the

13  fact that plaintiff's FAC contains allegations that are based upon information and belief does not,

14  in and of itself, mean that plaintiff has failed to state a claim against defendants for retaliation—

15  especially because plaintiff's information and belief allegations are supported by other facts she

16  has alleged.  That is, in addition to her allegations on information and belief that defendants had

17  notice of her protected activity, plaintiff has also alleged in her FAC that:  (i) she mailed her

18  LWDA letter to Amazon headquarters on May 27, 2021 (FAC at ¶ 39); (ii) less than a month

19  later, plaintiff's previously scheduled interview for a promotion with defendants was

20  unexpectedly and inexplicably canceled only two days before her interview date (*id.* at ¶ 42); (iii)

21  in the month after she mailed her letter, plaintiff's supervisor Brent Butterfield became dismissive

22  of plaintiff (*id.* at ¶ 43); and (iv) in the month after her letter was mailed, employees who were

23  junior to plaintiff were granted schedule changes that she had been denied, even though schedule

24  assignments are based on seniority (*id.* at ¶¶ 43–44).  Taken together, the court concludes that

25  these allegations are sufficient to plead a causal link between plaintiff's engagement in protected

26  activity and the adverse employment action allegedly taken against her.  *See Ayala v. Frito Lay,*

27  *Inc.*, 263 F. Supp. 3d 891, 911 (E.D. Cal. 2017) (denying defendant's motion to dismiss

28  retaliation claim because plaintiff adequately alleged proximity in time between participation in

14

protected activities and adverse employment action, even where defendants had argued that they were not aware of plaintiff's complaints concerning allegedly unlawful employment conditions); *Hernandez v. MidPen Housing Corp.*, No. 13-cv-05983-NC, 2014 WL 2040144, at *3 (N.D. Cal. May 16, 2014) ("[T]emporal proximity between her protected activity and adverse employment action is sufficient to allege a causal link between the two."); *see also Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986) (finding sufficient evidence of causation in a Title VII case where adverse employment action occurred less than two months after the protected activity); *Kifle v. YouTube LLC*, No. 21-cv-01752-CRB, 2022 WL 1501014, at *3 (N.D. Cal. May 12, 2022) (finding in the context of a trademark infringement case that particularized knowledge could be imputed on a defendant at the pleading stage based on a specific notice letter being allegedly sent to that defendant) (citing *Louis Vuitton Malletier, S.A. v. Akanoc Sols, Inc.*, 658 F.3d 936, 942–43 (9th Cir. 2011)).  Although plaintiff must ultimately come forward with evidence that her supervisors possessed knowledge of her protected activity in order to prevail on her retaliation claims, no such evidence is necessary at the pleading stage, where the court is to construe the allegations of the complaint in the light most favorable to plaintiff.  *See Hishon*, 467 U.S. at 73.  Accordingly, defendants' motion to dismiss plaintiff's retaliation claims will be denied.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (Doc. No. 11) is denied in its entirety.

IT IS SO ORDERED.

Dated:   **June 28, 2022**

UNITED STATES DISTRICT JUDGE