1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  LEILANI KRYZHANOVSKIY,                      Case No.  2:21-cv-01292-BAM
    PATRICIA SALAZAR, individually, on
12  behalf of all others similarly situated, and   **ORDER GRANTING IN PART**
    as a proxy for the LWDA,                    **PLAINTIFFS' UNOPPOSED MOTION**
13                                              **FOR PRELIMINARY APPROVAL OF**
                        Plaintiffs,             **CLASS ACTION SETTLEMENT**
14
        v.                                      (Doc. 49)
15
    AMAZON.COM SERVICES, INC., et al.,
16
                        Defendants.
17

18          Currently pending before the Court is the unopposed motion for preliminary approval of

19  class action settlement filed by Plaintiffs Leilani Kryzhanovskiy and Patricia Salazar

20  ("Plaintiffs") on December 19, 2023.  (Doc. 49.)  Defendants Amazon.com Services, Inc. (now

21  known as Amazon.com Services LLC) and Amazon.com Services LLC (collectively

22  "Defendants") did not file an opposition.  The parties consented to have a United States

23  Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant

24  to 28 U.S.C. § 636(c).  (Docs. 30, 32, 33, 51, 52, 53.)

25          A hearing on the motion was held via Zoom video conference on February 23, 2024,

26  before the Honorable Barbara A. McAuliffe.  Counsel Robert Wassermann appeared by Zoom

27  video on behalf of Plaintiffs.  Counsel Lauren Blas and Nasim Khansari appeared by Zoom video

28  on behalf of Defendants.

At the hearing, the Court and parties discussed the proposed settlement terms and identified revisions to the proposed notice of settlement.  The Court requested that Plaintiffs submit an amended proposed notice of settlement and supplemental briefing on the following issues:  (1) appointment of Mark S. Adams as class counsel; (2) a lodestar related to requested attorneys' fees; and (3) documentation of costs.  (Doc. 56.)  Plaintiffs filed supplemental briefing on March 8, 2024.  (Doc. 57.)

For the following reasons, the Court GRANTS IN PART the motion for preliminary approval of class action settlement and sets a Final Approval Hearing for **September 10, 2024, at 9:00 a.m.** in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe.

**BACKGROUND**

**A.    Relevant Procedural History**

On July 22, 2021, Plaintiff Kryzhanovskiy initiated this putative class and representative action for damages and civil penalties, asserting class claims for failure to pay overtime, furnish accurate wage statements, violation of the Equal Pay Act, unfair business practices and various individual claims.  (Doc. 1.)  Plaintiff Kryzhanovskiy filed a First Amended Complaint on August 20, 2021, adding a representative claim under the Private Attorneys General Act of 2004 ("PAGA").  (Doc. 9.)

On September 10, 2021, Defendants filed a motion to dismiss the First Amended Complaint, which Plaintiff Kryzhanovskiy opposed.  (Docs. 11, 13.)  The district court denied the motion to dismiss on June 29, 2022.  (Doc. 21.)

On March 16, 2022, the Court related this case to the following action:  *Trevino v. Golden State FC LLC, et al.*, 1:18-cv-00120-DAD-BAM.  (Doc. 19.)

On August 9, 2022, the Court issued a Scheduling Conference Order.  (Doc. 29.)  The parties engaged in extensive written discovery both before and after the Scheduling Conference Order was issued.  The parties subsequently agreed to mediate this case with mediator Lisa Klerman on August 31, 2023.  The Court therefore extended the class certification briefing scheduled.  (Doc. 41.)

On September 21, 2023, the parties filed a notice of settlement in principle.  (Doc. 42.)

1  Consistent with the parties' agreement, Plaintiff Kryzhanovskiy filed a Second Amended

2  Complaint ("SAC") on November 29, 2023, in order to (1) add Plaintiff Salazar as a named party,

3  (2) add a class-wide claim for waiting time penalties, and (3) remove the class-wide allegations

4  for violation of the Equal Pay Act. (Doc. 46.)   The class and representative claims asserted in the

5  SAC are as follows: (1) failure to pay overtime, (2) failure to furnish accurate wage statements,

6  (3) failure to timely pay all wages due upon separation, (4) unfair business practices, and (5) a

7  claim to assess and collect civil penalties pursuant to the PAGA. (*Id.*)  The SAC also continues to

8  allege Plaintiff Kryzhanovskiy's individual claims for (1) gender discrimination, (2) violation of

9  the Equal Pay Act, (3) FEHA retaliation, (4) Labor Code retaliation, (5) failure to timely provide

10  payroll records, and (6) failure to timely provide personnel records.  (*Id.*)

11  **B.      Events Leading to Settlement**

12          Following two years of active litigation, including motion practice and formal discovery,

13  the parties participated in full-day mediation with Lisa Klerman on August 31, 2023.  (Doc. 49-1

14  at 11; Doc. 49-2, Declaration of Jenny D. Baysinger ("Baysinger Decl.") ¶ 27.)  After the parties

15  reached an impasse on the class claims, Ms. Klerman made a mediator's proposal that expired on

16  September 8, 2023.  (Baysinger Decl. ¶ 30.)  The parties ultimately accepted the mediator's

17  proposal to resolve the class claims for payment of $3,000,000.00 on September 8, 2023.

18  (Baysinger Decl. ¶¶ 30-31.) On December 13, 2023, after months of further negotiations as to an

19  appropriate long form settlement agreement, the parties executed the Class Action Settlement

20  Agreement and Release ("Settlement Agreement" or "SA"). (Baysinger Decl. ¶ 33, Ex. 1.)

21          **1.   Settlement of Class Claims**

22          Plaintiffs negotiated the settlement on behalf of, and seek to represent, a specific and

23  narrow group of individuals—all current and former non-exempt California employees who

24  received a Signing Bonus and/or an On Sign Bonus (bonuses earned during the second year of

25  employment) during a workweek when he/she also worked overtime hours during the Class

26  Period. (Doc. 49-1 at p. 8; SA ¶ 36.)

27          **2.   Plaintiff Kryzhanovskiy's Individual Claims**

28          During the mediation, Plaintiff Kryzhanovskiy's individual claims were separately

negotiated and resolved in exchange for a payment of $25,000.00 and an increase of $1.12 to her current hourly wage.[1]  (SA ¶ 44.)  ,The negotiated resolution of the Plaintiff Kryzhanovskiy's individual claims is not contingent on approval of the settlement and does not have an impact on the class claims or the class action settlement amount.  (Baysinger Decl. ¶¶ 28, 31.) The Class Notice will inform Settlement Class Members about the existence of Plaintiff Kryzhanovskiy's individual settlement. (SA, Ex. A. ¶ 3.F.)

### 3.  Other Related Cases

According to Plaintiffs' moving papers, there are three other pending cases with class claims that potentially overlap, to some extent, with the claims implicated by the settlement in this case:  *Juan Trevino v. Golden State FC, LLC*, Case No. 1:18-cv-00120-DAD-BAM (the "Trevino Consolidated Class Action"); *Christian Porter v. Amazon.com Services, LLC*, Central District of California Case No. 2:20-cv-09496- JVS-SHK (the "Porter Class Action"); and *Terrance Clayborn v. Amazon.com Services, LLC*, Central District of California Case No. 5:20-cv-02368-JVS-SHK (the "Clayborn Class Action").

Per Plaintiffs, both the Porter Class Action and the Clayborn Class Action are presently stayed in favor of the Trevino Consolidated Class Action. The Class Notice will specifically inform Settlement Class Members about the existence of the other pending matters, the fact that some of the claims in those matters may overlap with claims being resolved by the SA, and thus that some claims in the Trevino Consolidated Class Action, the Porter Class Action, and the Clayborn Class Action may be eliminated or otherwise affected by this Settlement. (SA Ex. A, ¶ 2.)

### C.    Summary of Proposed Settlement

#### 1.  Settlement Class

Plaintiffs seek to certify the following settlement class, which Defendants do not challenge:

---

[1] According to supplemental briefing, the $25,000 amount was effectively equivalent to the amount in differential wages Plaintiff Kryzhanovskiy alleges and believes she lost as a result of being compensated an at hourly rate (and being given bonus amounts) less than her husband from January 2020 through the Settlement.  (Doc. 57, Baysinger Suppl. Decl. ¶ 11.)

1

2

3

> All current and former non-exempt employees of Defendants in California between July 22, 2017 and November 7, 2023 who received a Signing Bonus and/or On Sign Bonus in the same workweek as he/she worked overtime, including double-time (the "Settlement Class").

4

5

(Doc. 49-1 at p. 7; SA ¶¶ 6, 36).  There are believed to be 3,232 Settlement Class Members who collectively worked 146,483 workweeks during the Class Period. (SA ¶ 60.)

6

### 2.  Monetary Relief Under the Settlement

7

8

9

Defendants have agreed to pay $3,000,000.00 ("Gross Settlement Fund") to resolve the claims of participating Settlement Class Members. (SA ¶¶ 14, 40.) The Gross Settlement Fund will be deposited into a Qualified Settlement Fund[2] to be established by the Settlement Administrator within 30 calendar days of the Effective Date and does not include the employer's share of applicable payroll tax payments, which will be separately paid by Defendants. (SA ¶¶ 13, 14, 40.)  Plaintiffs and Class Counsel negotiated an escalator clause to protect Settlement Class Members such that if the number of Class Members or workweeks increases by more than 10%, the Gross Settlement Fund will increase by a proportional amount. (SA ¶ 60.)

10

11

12

13

14

15

The following amounts will be deducted from the Gross Settlement Fund:

16

(1)  Class Representative Enhancement Payments of $17,500.00 (SA ¶ 43),

17

(2)  Class Counsel Award of attorneys' fees of $1,000,000.00 and costs and expenses of $30,000.00 (SA ¶ 42),

18

19

(3)  Settlement Administration Costs up to $25,000.00 (SA ¶¶ 34, 45), and

20

(4)  PAGA Settlement Amount of $100,000.00 (SA ¶ 46).

21

(SA ¶ 18 ("'Net Settlement Amount' means the portion of the Gross Settlement Fund remaining after deducting the Class Representative Enhancement Payment, the Class Counsel Award, Settlement Administration Costs, and the PAGA Settlement Amount.").)

22

23

24

### 3.  Net Settlement Amount

25

26

The Net Settlement Amount of  $1,827,500.00 is expected to be available for distribution

27

28

---

[2] "Qualified Settlement Fund" means "a fund, account, or trust satisfying the requirements of 26 C.F.R. § 1.468B-1, established by the Settlement Administrator for the purpose of distributing the Gross Settlement Fund according to the terms of [the] Settlement Agreement." (SA ¶ 27.)

to participating Settlement Class Members. (SA ¶ 18; Baysinger Decl. ¶¶ 58, 80, 87.)  Each Participating Class Member is entitled to a share of the Net Settlement Amount without the need to complete a claim form. The entire Net Settlement Amount will be distributed to Participating Settlement Class Members.  (SA ¶¶ 48.)  Settlement Class Members will receive a Class Notice informing them of the terms of the Settlement, the right to opt-out or object, and an estimate of his/her share. (SA ¶ 56.)  All Settlement Class Members will be entitled to an Individual Settlement Payment unless he/she opts out.  (SA ¶ ¶ 48, 58.)

Individual Settlement Payments shall be based upon the number of workweeks worked by Settlement Class Members during the Class Period. (SA ¶ 48.)  Settlement Class Members whose employment has ended will be credited with four (4) additional workweeks.  (SA ¶ 48.) Defendants represented that there were approximately 146,483 workweeks for all Class members during the Class Period and the number of Class members through the date of mediation was 3,232.  (SA ¶ 60.)

For purposes of taxes and required withholdings, (1) 50% of each Individual Settlement Payment shall constitute penalties (for which an IRS Form 1099 shall be issued) and (2) 50% of each Individual Settlement Payment shall constitute wages.  (SA ¶ 70.)   The employer's share of applicable payroll tax payment ("Employer Payroll Tax Payments") will be paid separately by Defendants (in addition to the Gross Settlement Fund).  (SA ¶¶ 14, 40.)

**4.  Scope of Release**

"Released Class Claims" means all claims all claims, actions, demands, causes of action, suits, debts, obligations, demands, rights, liabilities, or legal theories of relief, that are based on the facts and legal theories asserted in the operative complaint of the Action, or which relate to the primary rights asserted in the operative complaint, including without limitation claims for (1) failure to pay overtime under California Labor Code §§ 510, 558, 1194, and 1198, (2) failure to furnish accurate wage statements under California Labor Code § 226(a), (3) failure to pay sick leave in violation of Labor Code § 248.5, (4) waiting time penalties in violation of Labor Code §§ 201203, and (5) unlawful business practices under Unfair Competition Law including Business and Professions Code sections 7200 et seq. The period of the Released Class Claims shall extend

1    to the limits of the Class Period.  (SA ¶ 28.)

2              **5.  Notice**

3           The parties have designated Atticus Class Action Administration ("Atticus") as the

4    settlement administrator.  (SA ¶ 35.)

5           Based upon the declaration of Christopher Longley, Chief Executive Officer, Atticus

6    provides services in class action settlements involving, inter alia, antitrust, consumer fraud,

7    financial services, data breach cases, insurance, ADA, civil rights, class certification notifications,

8    Belaire-West notifications, CAFA notices, and employment matters, including wage and hour,

9    PAGA and FLSA collective actions.  (Doc. 57-1.)  Atticus maintains insurance with AAA rate

10   insurance carriers for professional liability and cybersecurity.  It is Atticus' policy to warrant the

11   work performed on all error and omissions, on all projects, including distribution of funds to class

12   members.  (*Id.*)  Atticus has agreed to a capped fee to administer the case for approximately

13   $24,850.00.  (*Id.*)

14          Atticus will notify class members as follows:  Within thirty (30) calendar days of the entry

15   of the Court's order granting Preliminary Approval, Defendants will provide a Class List to the

16   Settlement Administrator.  The Class List will include, to the extent available, each Class

17   Member's full name; most recent mailing address, and telephone number contained in

18   Defendants' personnel records; Social Security number; dates of employment; the number of

19   weeks worked or workweeks that each Class Member worked during the Class Period

20   according to Defendants' records; and any other information needed to calculate Individual

21   Settlement Payments.  (SA ¶¶ 5, 53.)  Within fifteen (15) calendar days after receiving the Class

22   List from Defendants, Atticus will send a Notice Packet to all settlement class members via

23   regular First-Class U.S. Mail, using the most current, known mailing addresses identified in the

24   list.  (SA ¶ 54.)  With respect to any returned Notice Packets, Atticus will promptly remail the

25   packets to any forwarding address or, if no forwarding address is provided, will use a skip-trace

26   or other search to determine the correct address.  (SA ¶ 55.) Atticus will provide all counsel with

27   a weekly report that identifies the number of settlement class members who have submitted valid

28   requests for exclusion, or objected to the settlement, and whether any settlement class member

has submitted a challenge to any information contained in the Notice Packet.  (SA ¶ 66.)

### 6.  Opt-outs (Exclusions) and Objections

There is no claim form for the Rule 23 class.  According to the revised class notice, class members are given forty-five (45) days after the mailing of the Class Notice to opt out in writing. (Doc. 57 at Ex. 9.)  Settlement Class members wishing to opt out of the settlement must sign and fax or mail a written Request for Exclusion to the Settlement Administrator.  (SA ¶¶ 32, 33, 58.) The Request for Exclusion must: (i) set forth the name and address of the Settlement Class Member requesting exclusions; (ii) include the case name and case number; (iii) be signed by the Settlement Class Member; (iv) be returned to the Settlement Administrator; (v) clearly state the Settlement Class member does not wish toe be included in the Settlement; and (vi) be faxed or postmarked on or before the response deadline.  (SA ¶ 32.)

Class members who wish to object to the class action settlement must mail or fax a valid notice of objections to the Settlement Administrator within forty-five (45) days after the mailing of the Notice Packet.  (Doc. 57 at Ex. 9; SA ¶¶ 33, 65.)  The Settlement Administrator will provide Defendants' counsel and Class Counsel a weekly report that identifies the number of Settlement Class Members who have objected to the Settlement.  (SA ¶ 66.)  Per the revised class notice, the Settlement Administrator will lodge any objections with the Court in advance of the Final Approval Hearing.  (Doc. 57 at Ex. 9.)

Settlement Class members who fail to comply with the objection instructions will be deemed to have waive all objections to the settlement agreement, unless they appear at the Final Approval Hearing and state their objection at that time.  (SA ¶ 65.)  Additionally, Settlement Class members who submit timely Notice of Objection may appear at the Final Approval Hearing in order to have their objections heard by the court.  If the court permits, Settlement Class Members who have not submitted a written Notice of Objection in compliance with the Settlement Agreement may still appear at the Final Approval Hearing and present their objections.  (*Id.*)  According to the revised class notice, appearances at the Final Approval Hearing may be made by Zoom.  If a class member wishes to attend the Final Approval Hearing and comment on the Settlement, class members must notify the Settlement Administrator to

obtain instructions on remote appearances.  (Doc. 57 at Ex. 9.)

### 7.  PAGA Settlement

The settlement contemplates a PAGA Payment of $100,000.00, of which 75% ($75,000.00) will be paid to the Labor Workforce and Development Agency ("LWDA") and the remining 25% ($25,000.00) to PAGA settlement members.  (SA ¶ 22.)

### 8.  Enhancement Awards

Plaintiffs request that the Court approve an enhancement payment in the total amount of $17,500.00, broken down as follows:  Plaintiff Kryzhanovskiy ($10,000.00) and Plaintiff Salazar ($7,500.00). (SA ¶ 43.)

Plaintiffs' counsel represents that Plaintiffs "have each worked diligently with Class Counsel throughout this entire litigation, including taking numerous calls with Class Counsel, participating in responding to the parties' formal and informal information exchange, and participating in the mediation and settlements negotiations."  (Baysinger Decl. ¶ 92.)  Plaintiffs' counsel explains that because Plaintiff Kryzhanovskiy has been involved in the matter since its inception, and participated more substantially, she is requesting an award in the amount of $10,000.00.  Plaintiff Kryzhanovskiy also seeks a larger award as she remains employed by Amazon and thus faces increased danger of retaliation and reputational harm by maintaining this litigation against her current employer.  (Baysinger Decl. ¶ 93.)  Plaintiffs' counsel indicates that Plaintiff Salazar participated in the mediation session, its preparations and all negotiations that took place in its wake.  (Baysinger Decl. ¶ 94.)

According to Plaintiff Kryzhanovskiy's declaration, she has spent a considerable amount of time working with her attorneys over the past three years.  She has helped with preparation of the complaint and amendments, gathered documents, and responded to formal written discovery requests.  (Doc. 57-2, Declaration of Leilani Kryzhanovskiy ("Kryzhanovskiy Decl.") ¶ 12.)  She also helped her attorneys prepare for mediation and made herself available "on call" during the entire day.  (*Id.*)  Plaintiff Kryzhanovskiy estimates that, in total, she has spent around 80 hours working her attorneys on this case since 2021.  (Kryzhanovskiy Decl. ¶ 13.)  Further, she reports that she has "been worried and afraid" for her job and scared of retaliation, as she still works for

Amazon.  (Kryzhanovskiy Decl. ¶ 11.)  As a named plaintiff, Plaintiff Kryzhanovskiy declares that she has exposed herself "to the negative reputational consequences" of her name being tied to a class action lawsuit against her former employer.  (Kryzhanovskiy Decl. ¶ 17.)  She continues to work for Amazon and declares that she is "uniquely exposed to the risk of retaliation by Amazon moving forward because of [her] participation in this lawsuit and securing monetary recovery on behalf of other employees."  (*Id.*)

According to Plaintiff Salazar's declaration, she has spent a significant amount of time working her attorneys on the case over the past year.  She collected documents, answered questions, and helped her attorneys get ready for the mediation session and made herself available "on-call" during that entire day.  After the mediation, she worked with her attorneys to evaluate the mediator's proposal and actively participated in decision whether or not to accept it.  (Doc. 57-4, Declaration of Patricia Salazar ("Salazar Decl.") ¶ 9.)  Plaintiff Salazar estimates that, in total, she has spent at least 25 hours working with her attorneys on this case.  (Salazar Decl. ¶ 10.)

In addition to working with counsel, Plaintiffs have agreed to a full general release of their claims against Defendants, which is broader than the release that applies to the Class Members. (SA ¶ 62.c. and d.)

**9.  Attorney's Fees and Costs**

Class Counsel (identified below) seek preliminary approval of their request for attorneys' fees in the amount of $1,000,000.00 (1/3 of the Gross Settlement Fund), and litigation costs of no more than $30,000.00.  (SA ¶¶ 2, 4, 42.)

**10. Other Notable Terms of Settlement**

Defendants have the option to terminate the settlement agreement if three percent (3%) or more of the Settlement Class Members request exclusion from the Settlement Class.  (SA ¶ 61.) There is no reversion of any portion of the Gross Settlement Fund to Defendants.  Participating Class Members are entitled to one hundred percent of the Net Settlement Amount.  (SA ¶¶ 14, 18, 41.)

**LEGAL STANDARDS**

Court approval of a class action settlement requires a two-step process—a preliminary

10

approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089 SBA, 2013 WL 60464, at *6 (N.D. Cal. Jan. 2, 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Fed. R. Civ. P. 23(e). However, the "settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original); *Gruber v. Grifols Shared Services North America, Inc.*, No. 2:22-CV-02621-SPG-AS, 2023 WL 8610504, at *3 (C.D. Cal. Nov. 2, 2023).

**A.     Certification of the Class**

To certify a class, a party must demonstrate that all of the prerequisites of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b) has been met. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Under Rule 23(a), the four requirements that must be met for class certification are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(1)–(4).  These factors are known as "numerosity," "commonality," "typicality," and "adequacy," respectively.  Assessing these requirements involves "rigorous analysis" of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, (2011).

Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(1)– (3). Rule 23(b)(3) "requires only that the district court determine after rigorous analysis

11

1    whether the common question predominates over any individual questions, including

2    individualized questions about injury or entitlement to damages." *Olean Wholesale Grocery*

3    *Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc). Rule 23(c)(1)

4    permits a court to make a conditional determination of whether an action should be maintained as

5    a class action, subject to final approval at a later date.  *Dukes v. Wal-Mart Stores, Inc.*, No. C 01-

6    02252 CRB, 2012 WL 4329009, at *4 (N.D. Cal. Sept. 21, 2012).

7    **B.      Court Approval of Class Settlement Agreements**

8          Rule 23(e)(2) mandates that any settlement in a class action may only be approved by the

9    court after finding that the settlement is "fair, reasonable, and adequate" upon consideration of

10   whether:

11          (A) the class representatives and class counsel have adequately represented the class;

12          (B) the proposal was negotiated at arm's length;

13          (C) the relief provided for the class is adequate, taking into account:

14                (i)     the costs, risks, and delay of trial and appeal;

15                (ii)    the effectiveness of any proposed method of distributing relief to the class
                          including the method of processing class-member claims;
16

17                (iii)   the terms of any proposed award of attorney's fees, including timing of
                          payment; and

18                (iv) any agreement required to be identified under Rule 23(e)(3); and

19          (D) the proposal treats class members equitably relative to each other.

20   Fed. R. Civ. P. 23(e)(2)(A)–(D). The role of the district court in evaluating the fairness of the

21   settlement is not to assess the individual components, but to consider the settlement as a whole.

22   *Lane v. Facebook, Inc.,* 696 F.3d 811, 818–19 (9th Cir. 2012), reh'g denied, 709 F.3d 791 (9th

23   Cir. 2013). In reviewing a proposed settlement, the court represents those class members who

24   were not parties to the settlement negotiations and agreement. *In re Toys R Us-Delaware, Inc.—*

25   *Fair & Accurate Credit Transactions Act Litig*., 295 F.R.D. 438, 448 (C.D. Cal. 2014).   The

26   Ninth Circuit has recognized a strong judicial policy favoring settlement, particularly of complex

27   class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

28          Nevertheless, even where a proposed settlement is unopposed, the court must fully

1    examine whether the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity,

2    commonality, typicality, and adequacy of representation. *Hanlon v. Chrysler Corp.*, 150 F.3d

3    1011, 1019 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564

4    U.S. 338 (2011). Particularly when, as here in some of the Leprino Cases, the settlement occurs

5    prior to class certification, courts must scrutinize the proposed settlement to ensure the propriety

6    of class certification and the fairness of the proposed settlement. *Staton v Boeing*, 327 F.3d 938,

7    952 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1026). This more exacting review of class settlements

8    reached before formal class certification is required to ensure that the class representatives and

9    their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs

10   who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (quotation and citation

11   omitted).

12                        **DISCUSSION – RULE 23 REQUIREMENTS**

13   **A.      Numerosity**

14           Numerosity is met if "the class is so numerous that joinder of all members is

15   impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute number or cut-off for determining

16   numerosity, and the specific facts of each case may be examined. *Schwarm v. Craighead*, 233

17   F.R.D. 655, 660 (E.D. Cal. 2006); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal.

18   2008) ("Courts have not required evidence of specific class size or identity of class members to

19   satisfy the requirements of Rule 23(a)(1)."). "A reasonable estimate of the number of purported

20   class members satisfies the numerosity requirement of Rule 23(a)(1)." *In re Badger Mountain Irr.*

21   *Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992).

22           Here, the proposed class consists of approximately 3,232 members.  (SA ¶ 60.)  The Court

23   finds that the proposed class therefore satisfies the numerosity requirement as joinder of such

24   members is impracticable.  *See also Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal.

25   2007) (noting "courts generally find that the numerosity factor is satisfied if the class comprises

26   40 or more members and will find that it has not been satisfied when the class comprises 21 or

27   fewer."); *Cervantez*, 253 F.R.D. at 569 ("Courts have held that numerosity is satisfied when there

28   are as few as 39 potential class members.")

**B.     Commonality**

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Parties seeking class certification must prove their claims depend on a common contention of such a nature it is capable of class-wide resolution, meaning the determination of its truth or falsity will resolve an issue central to the validity of each claim at once. *Wal-Mart*, 564 U.S. at 350. Class-wide proceedings must generate common answers to common questions of law or fact apt to drive resolution of the litigation. *Id.* The parties must demonstrate class members have suffered the same injury. *Id.* at 349-350.

Plaintiffs indicate that the claims of Plaintiffs and the Class members all flow from the same factual and legal issues, i.e., Defendants' alleged uniform failure to include other remuneration—specifically Signing Bonuses and/or On Sign Bonuses—when calculating overtime and redeemed sick pay, resultant failure to timely pay all wages due and owing at separation, and provision of uniform itemized wage statements.  (Doc. 49-1 at p. 15.)  Plaintiffs' underpaid overtime and sick pay claims are founded on a regular rate theory.  Plaintiffs contend that Defendants failed to include/consider remuneration they received in addition to hourly pay, most notably contractual Signing Bonuses and On Sign Bonuses (bonuses earned during the second year of employment), when calculating the "regular rate of pay" at which they were compensated for overtime and double-time work and redeemed sick leave.  (Baysinger Decl. ¶ 42.) Plaintiffs indicate that the claims implicate common questions, including whether the Signing Bonuses, On Sign Bonuses, or other remuneration were required to be included in the regular rate, whether those items were properly calculated when/if they were included, and whether Amazon is entitled to credits or setoffs for overpayments of wages.  (*Id.*)  The Court finds that the commonality requirement is met because Defendants engaged in uniform practices with respect to all class members.

**C.     Typicality**

Rule 23 also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under Rule 23's permissive standard, claims "need not be substantially identical," but are typical if the representative's claims

1    are "reasonably co-extensive with those of the absent class members." *Parsons v. Ryan*, 754 F.3d

2    657, 685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020). Typicality is based on the "nature of

3    the claim or defense of the class representative, and not to the specific facts from which it arose or

4    the relief sought." *Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d

5    497, 508 (9th Cir. 1992)). Typicality tests "whether other members have the same or similar

6    injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

7    whether other class members have been injured by the same course of conduct." *Id.* (quoting

8    *Hanon*, 976 F.2d at 508).  The requirements of commonality and typicality occasionally merge,

9    and "[b]oth serve as guideposts for determining whether under the particular circumstances

10   maintenance of a class action is economical and whether the named plaintiff's claim and the class

11   claims are so interrelated that the interests of the class members will be fairly and adequately

12   protected in their absence." *Id.* (quoting *Wal-Mart*, 564 U.S. at 349 n.5).

13        As with the commonality requirement, the Court finds the typicality requirement is

14   satisfied because Plaintiffs' claims arise from the same factual bases and are premised upon the

15   same legal theories as those applicable to the purported class members. Plaintiffs, like every other

16   class member, were employed by Defendants and were allegedly subject to the same employment

17   policies and practices with respect to Signing Bonuses and/or On Sign Bonuses that were not

18   included in the regular rate for overtime and/or sick pay.  Further, because Plaintiff Salazar's

19   employment has ended, she also possesses the potential derivative waiting time penalty.   (SAC

20   ¶¶ 94-99.)

21   **D.     Adequacy of Representation**

22        The Court must ensure "the representative parties will fairly and adequately protect the

23   interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will

24   adequately represent the class, courts must resolve two questions: "(1) do the named plaintiffs and

25   their counsel have any conflicts of interest with other class members and (2) will the named

26   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco

27   Wholesale Corp*., 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

28   "Adequate representation depends on, among other factors, an absence of antagonism between

representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985 (citing *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003)). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (internal quotations and citations omitted). This factor also tends to merge with the commonality and typicality criteria of Rule 23. *Id.* at 626 n.20.

Here, Plaintiffs and the class share common injuries and generally possess the same interests.  Plaintiff Salazar does not appear to have a conflict of interest with the purported class.  However, the Court notes that Plaintiff Kryzhanovskiy possessed individual claims, which reportedly have been resolved separately from the class claims.  This may suggest a potential conflict of interest between Plaintiff Kryzhanovskiy and the class members due to her individual claims. *See Madrigal v. SMG Extol, LLC*, No. 22-cv-07351-RS, 2024 WL 40204, at *5 (N.D. Cal. Jan. 3, 2024) (finding Madrigal's incentive, during settlement negotiations, would have been to allocate as much of the $600,000 Defendants appear to have been willing to pay to settle this case to himself as compensation for his individual claims); *Wilson v. Conair Corp.,* No. CV 11400894WBSSAB, 2016 WL 7742772, at *4 (E.D. Cal. June 3, 2016) (finding potential conflict of interest between plaintiff and the class members due to plaintiff's individual personal injury claims); *accord Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 442 (E.D. Cal. 2013) (finding adequacy of representation requirement met because plaintiff had the same interests as the absent class members and there was no apparent conflict of interest between the named plaintiffs' claims and those of the other class members' claims "particularly because the named Plaintiffs have no separate and individual claims apart from the Class.")

Plaintiffs' counsel cites *Roberts v. Electrolux Home Products, Inc.*, 2014 WL 4568632, at *9 (C.D. Cal. 2014) for the proposition that the fact that Plaintiff Kryzhanovskiy possessed individual claims does not render her an inadequate representative.  (Doc. 49-1 at p. 16.)  In *Roberts*, the court found that the settlement of individual claims did not render plaintiffs inadequate representatives or otherwise create a conflict of interest where class representatives provided releases above and beyond the settlement.  *Roberts*, 2014 WL 4568632, at *9.  Courts

1  have found no conflict of interest where plaintiff's non-class claims were distinct from those of

2  absent class members, and there was no indication that the plaintiff had benefited at the expense

3  of the class.  *See*, *e.g.*, *Chen v. W. Digital Corp.*, No. 8:19-cv-00909-JLS-DFM, 2020 WL

4  13587954, at *5 (C.D. Cal. Apr. 3, 2020); *Flores v. Dart Container Corp*., No. 2:19-cv-00083

5  WBS JDP, 2021 WL 107239, at *5 (E.D. Cal. Jan. 12, 2021) (explaining that settlement of

6  separate, individual claims that arose out of circumstances unique to plaintiff, through

7  negotiations which the parties represent occurred separately from negotiations regarding the class

8  claims, did not render plaintiff fundamentally unfit to act as a class representative).

9       Further, counsel asserts that Plaintiff Kryzhanovskiy negotiated her individual claims

10  separately from the settlement, although both were discussed at mediation. (Baysinger Decl. at ¶¶

11  7, 28, 31.)  Counsel also declares that Plaintiff  Kryzhanovskiy did not attempt to leverage the

12  Class Claims to improve her individual settlement and the individual settlement is not contingent

13  on approval of the Settlement of Class Claims. (Baysinger Decl. ¶ 31; SA ¶ 44.)  Additionally,

14  Class Members will be fully informed of the existence of the settlement of Plaintiff

15  Kryzhanovskiy's individual claims and will have the opportunity to opt-out and/or object to the

16  Settlement, including to Plaintiff Kryzhanovskiy's adequacy.  (SA, Ex. A ¶ 3.F.)

17       Plaintiff Kryzhanovskiy acknowledges that she has separate individual claims arising out

18  of the failure to pay her the same as her husband and also how she believes she was treated after

19  she started complaining about wage disparities.  She also understands that all employees who

20  received signing and second year bonuses had similar overtime/sick pay, and meal period issues

21  to her, but that the alleged pay disparity and allegations regarding how she was treated after she

22  started complaining uniquely affected only her. (Kryzhanovskiy Decl. ¶ 15.)  She declares that

23  she did not allow her "individual claims to get in the way or influence how [she] handled the

24  claims brought on behalf of other people.  Instead, [she] negotiated [her] individual claim

25  completely separately" and agreed "to resolve it for an amount separate from the Maximum

26  Settlement Amount that the Class Members will be sharing."  (Kryzhanovskiy Decl. ¶ 16.)

27  Further, Plaintiff Kryzhanovskiy declares that her individual settlement "is not tied to approval of

28  the class action settlement (it has already been separately paid)." (*Id.*)  The Court finds that

Plaintiff Kryzhanovskiy's settlement of separate individual claims that arose out of circumstances unique to her and were negotiated separately from negotiations regarding the class claims does not render her fundamentally unfit to act as a class representative.

The Court must also consider the adequacy of representation by Class Counsel: Robert J. Wassermann and Jenny D. Baysinger of Mayall Hurley, P.C. and Mark S. Adams of the Law Offices of Mark S. Adams.  Class Counsel from Mayall Hurley have experience pursuing other similar class, collective, and representative actions. (Baysinger Decl. ¶¶ 98-99.)  Mark S. Adams declares that he has served as a litigation consultant for Mayall Hurley in this matter since March 2021.  He previously practiced at Mayall Hurley from October 1979 until April 2015.  (Doc 57-3, Declaration of Mark S. Adams ("Adams Decl.") ¶¶ 2, 5.)  His current practice focuses almost exclusively on plaintiff's employment litigation, and during his nearly 45 years of practice, he has acquired substantial experience in complex civil jury trials in the areas of employment discrimination, wrongful termination, wage and hour cases, civil rights, insurance bad faith, and serious injuries.  (Adams Decl. ¶¶ 6, 13.)

Based on the above, Plaintiffs and their counsel appear to be adequate representatives of the proposed class.  Accordingly, the Court finds Plaintiffs Kryzhanovskiy and Salazar have demonstrated they will adequately and fairly protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  For purposes of settlement only, the Court hereby appoints Plaintiffs Kryzhanovskiy and Salazar as Class Representatives.  Similarly, based on the experience of counsel, the Court appoints Robert J. Wassermann and Jenny D. Baysinger of Mayall Hurley, P.C., and Mark S. Adams of the Law Offices of Mark S. Adams as Class Counsel in this matter.

**E.     Rule 23(b)(3) Requirements**

Both the predominance and superiority requirements are satisfied under Rule 23(b)(3).

*1.   Predominance*

"The first requirement of Rule 23(b)(3) is predominance of common questions over individual ones." *Valentino*, 97 F.3d at 1234.  The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement," and "tests whether proposed classes are sufficiently cohesive to warrant

18

adjudication by representation." *Amchem Prod.,* 521 U.S. at 594. If a common question will drive

the resolution of the litigation, the class is sufficiently cohesive. *Jabbari v. Farmer*, 965 F.3d

1001, 1005 (9th Cir. 2020) (court must determine which questions are likely "to drive the

resolution of the litigation.)

Plaintiffs contend that common questions of law or fact predominate over individual

questions pursuant to Rule 23(b)(3).  In particular, Plaintiffs asserts that the challenged policies

and practices apply class wide, and Defendants' liability can be determined by facts and law

common to all settlement class members.  The issues common to the class include:  whether the

Signing Bonuses, On Sign Bonuses, or other remuneration were required to be included in the

regular rate, whether those items were properly calculated when/if they were included, and

whether Amazon is entitled to credits or setoffs for overpayments of wages.

### 2. Superiority

The class action mechanism is the superior method for adjudicating this lawsuit. Fed. R.

Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and

promote greater efficiency, a class action may be superior to other methods of litigation. A class

action is the superior method for managing litigation if no realistic alternative exists." *Valentino*,

97 F.3d at 1234–35. Factors relevant to the superiority requirement include:

(A) the class members' interests in individually controlling the prosecution or defense of

separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or

against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the

particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Zinser v. Accufix Rsch. Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir.),

opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) ("In determining superiority,

courts must consider the four factors of Rule 23(b)(3).") "A consideration of these factors

requires the court to focus on the efficiency and economy elements of the class action so that

1  cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a

2  representative basis." *Zinser*, 253 F.3d at 1190. However, where "confronted with a request for

3  settlement-only class certification, a district court need not inquire whether the case, if tried,

4  would present intractable management problems, for the proposal is that there be no trial."

5  *Amchem Prod., Inc.,* 521 U.S. at 620.

6       Resolution of the claims of approximately 3,232 total class members in one class action

7  settlement is far superior to individual lawsuits because it promotes consistency and efficiency of

8  adjudication. Further, the Court finds a class action avoids the inefficiency of each class member

9  litigating similar claims individually. Therefore, the Court finds that a class action is the superior

10  method for adjudicating the claims in this action.

11       For the foregoing reasons, the Court finds Plaintiffs have sufficiently met the requirements

12  of Rule 23(a) and (b).  The Settlement Class is preliminarily certified for purposes of settlement,

13  subject to a final fairness hearing and certification of the settlement class under the Federal Rules

14  of Civil Procedure and related case law.

15          **DISCUSSION-PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**

16       Having concluded that class treatment appears to be warranted, the Court now considers

17  whether the proposed settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2); *In re*

18  *Bluetooth Headset Products Liab. Litigation.*, 654 F.3d 935, 946 (9th Cir. 2011). The role of the

19  district court in evaluating the fairness of the settlement is not to assess the individual

20  components, but to consider the settlement as a whole. *Lane*, 696 F.3d at 818–19. Preliminary

21  approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed

22  settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the

23  settlement falls within the range of possible approval, has no obvious deficiencies, and does not

24  improperly grant preferential treatment to class representatives or segments of the class. *In re*

25  *Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing *Schwartz v.*

26  *Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).

27       In making this inquiry, the Court should weigh: (1) the strength of the plaintiff's case; (2)

28  the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946. Some of these eight factors cannot be fully assessed until the court conducts its final fairness hearing. *Zwicky v. Diamond Resorts Mgmt. Inc.,* 343 F.R.D. 101, 119 (D. Ariz. 2022). Thus, at the preliminary approval stage, courts need only evaluate "whether the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious-deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval." *Zwicky*, 343 F.R.D. at 119; *accord Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 301-303 (E.D. Cal. 2011) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079). Because collusion may not be evident on a settlement's face, courts must be vigilant for subtle signs "class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947.

At this juncture, the Court will review the parties' Proposed Settlement Agreement according to the four *Zwicky* considerations listed above and conduct a cursory review of its terms in deciding whether to order the parties to send the proposed notice to Class Members and conduct the final approval hearing.

**A.      The Proposed Settlement Appears to be the Product of Serious, Informed, Non-Collusive Negotiations**

The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.' " *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625, 628. The Court must

1    look at the means and negotiations by which the parties settled the action in addition to reviewing

2    the Proposed Settlement Agreement for obvious deficiencies.  *Zwicky*, 343 F.R.D. at 120.

3          As Plaintiffs indicate in their motion, the parties reached a settlement after participating in

4    mediation, consideration of the mediator's proposal, and months of subsequent negotiations.

5    (Doc. 49-1 at p. 20.)  Plaintiffs further indicate that they conducted formal, substantive discovery,

6    informally received relevant numerical data, formally received complete time and payroll records

7    for 315 Settlement Class Members, and engaged an expert to assist in analyzing the date prior to

8    engaging in settlement negotiations with Defendants.  (*Id.* at p. 19.)

9    **B.    Obvious Deficiencies**

10         Obvious deficiencies in a settlement agreement include "any subtle signs that class

11   counsel have allowed pursuit of their own self-interests to infect the negotiations." *McKinney-*

12   *Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944

13   F.3d 1035, 1043 (9th Cir. 2019)). The Ninth Circuit has identified three such "subtle signs,"

14   which it refers to as the *Bluetooth* factors: "(1) when counsel receives a disproportionate

15   distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under

16   which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3)

17   when the agreement contains a kicker or reverter clause that returns unawarded fees to the

18   defendant, rather than the class." *McKinney-Drobnis*, 16 F.4th at 607–08 (citation omitted); *In re*

19   *Bluetooth*, 654 F.3d at 947 (internal quotation and citation omitted).

20                *1.  Disproportionate Distribution of the Settlement to Counsel*

21         Here, Class Counsel seek 1/3 of the Gross Settlement Fund for attorneys' fees.  As

22   explained more fully below, the Court considers this request as a deficiency.

23                *2.  Clear-sailing Arrangement for Attorneys' Fees*

24         There does not appear to be a clear-sailing arrangement for attorneys' fees.  However, the

25   proposed Notice Packet indicates that Defendants do not object to Class Counsel's request.  (Doc.

26   49-2, Ex. A to Settlement Agreement, ¶ E.)

27                *3.  Reversion of Unawarded Fees to the Defendant*

28         Here, the Settlement Agreement states that there will be no reversion of unpaid settlement

1   funds to Defendants.

2   **C.     Does Not Grant Preferential Treatment**

3          The proposed settlement appears to treat class members equally.  Individual settlement

4   payments will be calculated and apportioned on a pro rata basis based on the number of

5   workweeks in which the settlement class member performed at least one day of work for

6   Defendants.  (SA ¶ 48.)  For participating class members whose employment has ended, they will

7   be credited with an additional four (4) weeks worked for purposes of calculating their pro rata

8   share.  (*Id.*)  Aside from the Enhancement Payments, discussed below, all of the class members

9   are subject to the same payment calculations based on the number of workweeks.

10  **D.     The Settlement Falls Within the Range of Possible Approval**

11         "To determine whether a settlement 'falls within the range of possible approval' a court

12  must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery

13  balanced against the value of the settlement offer.'" *Collins*, 274 F.R.D. at 302 (quoting *In re*

14  *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080). The Court should examine "the complete

15  package taken as a whole," and the amount is "not to be judged against a hypothetical or

16  speculative measure of what might have been achieved by the negotiators." *Officers for Justice*,

17  688 F.2d at 625, 628.

18         Plaintiffs, utilizing the help of an expert, developed a damages model.  Under that

19  damages model, Defendants faced a maximum of $6,046,937.00 in underpaid overtime and sick

20  pay wages, $7,885,152 in statutory waiting time penalties, and $1,932,500 in Labor Code section

21  226(e) penalties. (Baysinger Decl. ¶¶ 42-49.)  In total, Defendants faced a maximum of

22  $15,864,589 in potential damages and statutory penalties.  (Baysinger Decl. ¶¶ 51-52.)

23         Additionally, Class Counsel determined a reasonable, realistic estimate for potential

24  recovery.  Under this measured approach, Class Counsel (1) applied a one-third discount to the

25  underpaid overtime/double time claim to account for the possibility that substantial offsets would

26  be applied based on overpayments of wages to Class Members in other contexts (including

27  overpayments in connection with On Sign Bonuses because those bonuses were factored into

28  overtime/double time whenever they were actually paid [every other period] and since the value

of each payment was twice the workweek value of the proportional bonus share, it often resulted in substantial overpayments), leaving $3,403,048; (2) applied no discount to the sick pay claim, leaving $942,365; (3) applied a 50% discount to the waiting time penalty claim to account for the potential that some of the Class Members who are also former employees would be unable to demonstrate any compensable wages that were actually unpaid during employment, leaving $3,942,576, (4) applied a 25% discount to the wage statement claim to account for the potential that injury could not be demonstrated for derivative violations and due to the technical nature of the alleged deficiencies in the wage statements, leaving $1,449,375.  (Baysinger Decl. ¶ 55.)  This approach would result a realistic damages/statutory award of $9,737,364.00.  (Baysinger Decl. ¶ 56.)

The Settlement provides for the payment of $3,000,000 ($2,900,000 allocated to resolve Class Claims) in resolution of the Released Claims. The portion of the Gross Settlement Fund allocated to resolve class claims represents 18% of the maximum recovery available to the Class and nearly 30% of their realistic recovery.  (Baysinger Decl. at ¶¶ 51-52, 57. )  The proposed settlement amount is within the general range of percentage recoveries that California courts—including this one—have found to be reasonable.  *See Cavazos v. Salas Concrete Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 WL 506005, at *15 (E.D. Cal. Feb. 18, 2022) (examining cases approving settlements ranging from 12% to 35% of estimated maximum damages).

According to Plaintiffs' counsel, Defendants asserted numerous legal and factual grounds to defend against the Class Claims and/or certification of such claims, including but not limited to, 1) that the Signing and On Sign Bonuses were discretionary, 2) that the bonuses were properly included in the regular rate of pay for overtime and sick leave, 3) that Defendants voluntarily overpaid certain wages and were entitled to an offset of those overpayments against any underpayments to the Class, 4) that any net failures to pay wages were not sufficiently willful to justify imposition of waiting time penalties, 5) that the wage statements actually comply with the Labor Code, and 6) that no one was injured by any technical omission on the wage statements. (Baysinger Decl. ¶¶ 59-69.)  Although Plaintiffs' counsel was confident that certification and success on the merits could be attained, continued litigation was guaranteed to be costly, time

consuming, and uncertain in outcome.  (Baysinger Decl. ¶ 71.)

Plaintiffs' motion represents that there are 3,232 class members.  (SA ¶ 60.)  This case equates to a pre-tax recovery of approximately $928.22 per class member based on the Gross Settlement Fund ($3,000,000.00 / 3,232 = $928.22).  The net recovery, from the Court's review, equates to a pre-tax recovery of approximately $565.44 based on the Net Settlement Amount ($1,827,500.00 / 3,232 = $565.44).

"[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution [, especially] in complex class action litigation...." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (quoting *Officers for Justice*, 688 F.2d at 625). Thus, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Munoz v. Giumarra Vineyards Corp.,* No. 1:09-cv-00703-AWI-JLT, 2017 WL 2665075, at *9 (E.D. Cal. June 21, 2017).

**C.     PAGA Penalty**

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees. Cal. Lab. Code § 2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Ct*., 95 Cal. Rptr. 3d 588, 600 (Cal. 2009). A PAGA plaintiff thus has "the same legal right and interest as state labor law enforcement agencies" and the action "functions as a substitute for an action brought by the government itself"; therefore, "a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id*. A plaintiff bringing a representative PAGA action not only owes a duty to their "fellow aggrieved workers," but "also owes responsibility to the public at large; they act, as the statute's name suggests, as a private attorney general." *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal. 2016).

Under PAGA, civil penalties collected are distributed between the aggrieved employees (25%) and the Labor and Workforce Development Agency ("LWDA") (75%). Cal. Lab. Code § 2699(i). Any settlement of PAGA claims must be approved by the court. Cal. Lab. Code §

1    2699(l)(2). The proposed settlement must also be sent to the agency at the same time that it is

2    submitted to the court. Cal. Lab. Code § 2699(l)(2).

3         While PAGA requires a trial court to approve a PAGA settlement, district courts have

4    noted there is no governing standard to review PAGA settlements. *Scott v. Blackstone Consulting,*

5    *Inc.*, No. 21-CV-1470-MMA-KSC, 2024 WL 271439, at *8 (S.D. Cal. Jan. 24, 2024) (collecting

6    cases).  District courts have applied "a Rule 23-like standard" asking whether the settlement of

7    the PAGA claims is "fundamentally fair, reasonable, and adequate."  *Id.*

8         First, in accordance with the statutory requirements, Plaintiffs submitted the Settlement

9    Agreement to the LWDA.  (Baysinger Decl. ¶ 89.)  LWDA will have an opportunity to file a

10   response to the proposed settlement.  The Settlement Agreement provides for a $100,000 PAGA

11   payment.  This amount represents more than 3% percent of the Gross Settlement Fund.

12        District courts have approved a broad range of PAGA penalties.  *See Magadia v. Wal-*

13   *Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1101 (N.D. Cal. 2019) (collecting cases in which

14   settlements providing for $10,000 in PAGA penalties were preliminarily or finally approved

15   despite total settlement amounts of $900,000 and $6.9 million), *rev'd in part, vacated in part on*

16   *other grounds*, 999 F.3d 668 (9th Cir. 2021); *see also Alcala v. Meyer Logistics, Inc*., No. CV 17-

17   7211 PSG (AGRx), 2019 WL 4452961, at *9 (C.D. Cal. June 17, 2019) (collecting cases in which

18   PAGA penalties within the zero to two percent range were approved by courts); *Scott*, 2024 WL

19   271439, at *8 (approving 5 percent PAGA settlement).  The PAGA payment of approximately

20   3% of the Gross Settlement Fund falls within the range of penalties approved by courts.  Further,

21   the Settlement Agreement provides that 75% of the PAGA Penalty will be paid to the LWDA and

22   25% will be paid to the PAGA Settlement Members.  (SA ¶ 22.)

23   **D.      Enhancement Awards to Plaintiffs**

24        Incentive payments are to be evaluated individually, and the court should look to factors

25   such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which

26   the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended

27   in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at

28   977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Plaintiffs request that the Court approve Enhancement Payments to Plaintiffs in the total amount of 17,500.00, allocated as follows:  $10,000 to Plaintiff Kryzhanovskiy and $7,500.00 to Plaintiff Salazar.  (SA ¶ 43.)

A service award of $5,000 is presumptively reasonable.  *See Harris v. Vector Marketing Corp.*, No. C-08-5198 MEC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases). But courts have preliminarily approved higher amounts subject to additional documentation from class representatives detailing the time and effort expended and actions taken to benefit the settlement class prior to final approval.  *See, e.g., Howell v. Advantage RN, LLC,* No. 17-CV-883 JLS (BLM), 2020 WL 3078522, at *5 (S.D. Cal. June 9, 2020)  (preliminarily approving service award of $10,000 subject to submission of additional information from plaintiff before final approval); *Jamil v. Workforce Res*., LLC, No. 18-CV-27 JLS (NLS), 2020 WL 3079221, at *8 (S.D. Cal. June 9, 2020) (preliminarily approving the proposed $10,000 service award to each named plaintiff, but requesting plaintiffs provide documentation detailing the time and effort they expended in pursuit of the litigation and the actions they took to benefit the settlement class before final approval of the service award); *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *17 (E.D. Cal. Apr. 27, 2020) (preliminarily approving proposed $15,000.00 incentive award on the condition that plaintiff demonstrate at the final approval stage that the requested award is commensurate with and does not dwarf the average or median award received by the class and FLSA members). In assessing the appropriateness of class representative enhancements or incentive payments, the Court must consider factors such as: (1) the actions the plaintiff took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursuing litigation; and (4) any notoriety or personal difficulties encountered by the representative plaintiff. *See Khanna v. Intercon Sec. Systems, Inc*., No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr. 8, 2014).

To substantiate Plaintiffs' activities in this case, Class Counsel submitted a declaration which states:

92.    Plaintiffs,  who  have  each  worked  diligently  with  Class  Counsel

throughout this entire litigation, including taking numerous calls with Class Counsel, participating in responding to the Parties' formal and informal information exchange, and participating in the mediation and settlement negotiations, should be rewarded for taking the initiative to pursue these claims on behalf of their former coworkers, and for their role in reaching a settlement providing for valuable monetary relief to the Class.

93.     Plaintiffs will each apply for an Enhancement Payment. Because Kryzhanovskiy has been involved in the matter since its inception, and thereby participated more substantially including responding to formal discovery (and supplementing that discovery) and gathering relevant documents for production, will request an award in the amount of $10,000 (0.33% of the GSA). Kryzhanovskiy further seeks a larger award as she remains employed by Amazon and thus faces increased danger of retaliation and reputational harm by maintaining this litigation against her current employer.

94.     Salazar also actively participated in the action, albeit starting at a later point in time. Salazar actively participated in the mediation session, its preparations, and all negotiations that took place in its wake. Salazar will request an Enhancement Payment in the amount $7,500, or 0.25% of the $3,000,000 GSA.

(Baysinger Decl. ¶¶ 92-94.)

In supplemental briefing, Plaintiffs submitted declarations for each named plaintiff in support of preliminary approval.  (Docs. 57-2 and 57-4)  Each of the declarations describe the actions the individual Plaintiffs engaged in to support counsel.  (*See*, *e.g.*, Kryzhanovskiy Decl. ¶¶12, 13 (detailing tasks); Salazar Decl. ¶ 9, 10 (listing the tasks she performed).)

At this stage, there is no indication the service awards constitute an improper award to defeat preliminary approval.  Based on the foregoing and for purposes of this preliminary approval of the settlement, the Court finds the settlement terms are "within the range of possible approval."

**E.     Attorneys' Fees**

Class Counsel seeks approval of an attorneys' fee award equal to one-third (1/3) of the Gross Settlement Fund, which equates to $1,000,000 of the $3,000,000 Gross Settlement Fund. Plaintiffs indicate that will seek distribution of attorneys' fees of 90% to Mayall Hurley, P.C. and 10% to the Law Offices of Mark S. Adams.[3]  (Doc. 49-1 at p. 26.)

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable

---

[3] According to the declaration of Mark S. Adams, Mayall Hurley and Plaintiff Kryzhanovskiy agreed that he would receive 10% of the attorney fees awarded by the Court to Mayall Hurley.  (Adams Decl. ¶ 15.)

costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" when determining the reasonableness of a request for attorneys' fees. *Bluetooth Headset Prod. Liab. Litig*., 654 F.3d at 942; *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002) (concluding district court has discretion in a common fund case to choose either the lodestar method or the percentage-of-the-fund method when calculating reasonable attorneys' fees). Under the percentage-of-recovery method, 25% of a common fund is the benchmark for fee awards. *See*, *e.g*., *In re Bluetooth,* 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id*. at 941 (citing *Staton,* 327 F.3d at 965). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 978 (9th Cir. 2008). The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See Bluetooth*, 654 F.3d at 944.

The 25% benchmark may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1048–50.

   *Results Achieved*

Courts have recognized that the result achieved for the class is a major factor to be considered in making a fee award. *Hensley v. Eckerhart* 461 U.S. 424, 436 (1983); *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994). The Ninth Circuit has observed that "[e]xceptional results are a relevant circumstance" to an adjustment from the benchmark award. *Vizcaino*, 290 F.3d at 1048.

Plaintiffs contend that the settlement will convey significant monetary and nonmonetary benefits upon the Class.  Plaintiffs assert that the results of the Settlement are cognizably positive for Class Members, particularly as compared to other settlements reached (and approved) in wage and hour class action matters against Amazon entities.  (Doc. 57, Baysinger Suppl. Decl. ¶¶ 39-48 (identifying other Amazon approved wage and hour class action settlements and fees awarded in other cases).)  As calculated by the Court, the class will receive a pre-tax recovery of approximately $565.44 based on the Net Settlement Amount ($1,827,500.00 / 3,232 = $565.44).

*Risks of Litigation*

Risk is a relevant circumstance. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir.1995) (holding fees justified "because of the complexity of the issues and the risks").

Plaintiffs acknowledge that the issue of arbitration could have had a substantial impact on the claims of the Class because it is believed that many Class Members executed Arbitration Agreements with express class waiver provisions.  (Baysinger Suppl. Decl. ¶ 26.)  In addition, Plaintiffs indicate that wage and hour matters against Amazon have cognizably more risk than class actions against smaller employers who face fewer lawsuits. Because of the sheer volume of cases, there is an ever-present and substantial risk that resolution of another (less focused and more broad) pending action could have an adverse impact at any point during the process. (Baysinger Suppl. Decl. ¶ 28.)  Further, Plaintiffs declare that in the class action contingency context, plaintiffs' lawyers "undertake the obligation to finance the litigation and bear significant risk in the event of an unsuccessful outcome, at trial or otherwise."  (Baysinger Suppl. Decl. ¶ 27.)

*Skill and Quality of the Work*

The Court does not doubt Class Counsel are experienced and skilled litigators.  Further, Mayall Hurley have identified extensive class, collective, and representative action litigation experience.  (Baysinger Suppl. Decl. ¶¶ 17-19.)

*Contingent Nature of the Fee and Burdens Carried*

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning

contingency cases." In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299

(9th Cir. 1994). Thus, whether counsel have taken the case on a contingency fee basis must be

considered when deciding to vary from the 25% benchmark.   Here, Class Counsel took this case

on a contingency fee basis.  (Baysinger Suppl. Decl. ¶ 27)

*Burdens Carried by Class Counsel*

Class Counsel have provided information as to the costs in prosecuting this action,

indicating that they have incurred $24,462.43 actual costs in prosecution of this action.  In

supplemental briefing, Class Counsel submitted documentation in support of their litigation costs

and expenses, identifying an amount less than the costs of up to $30,000 provided for in the

Settlement Agreement.  (Baysinger Suppl. Decl. ¶ 51 and Ex. 8.)  Plaintiffs expect that the costs

ultimately requested in conjunction with final approval will be less than $30,000; it is expected

that an additional amount of around $5,000.00 will be in the Net Class Settlement and distributed

to class members.  (*Id.*)  Plaintiffs' Counsel have demonstrated their burden as to incurred costs

over the course of this litigation.

*Awards Made in Similar Cases*

As noted above, 25% is the Ninth Circuit's "benchmark award for attorney[s'] fees."

*Hanlon*, 150 F.3d at 1029.  To support their claim for 1/3 of the Gross Settlement Fund, Plaintiffs

argue that courts routinely approve attorney's fees of one-third to forty percent of the common

fund in comparable wage and hour class actions.  Plaintiffs cite cases in which many courts

approved common fund fee awards equivalent to or greater than the percentage requested here,

and even when the award resulted in a substantial multiplier. *See*, *e.g.*, *Barbosa*, 297 F.R.D. at

450 (collecting cases where court approved one-third fee in class action context); *Wren v. RGIS

Inventory Specialists*, 2011 WL 1230826, at *29 (N.D. Cal. 2011) (approving 42% fee); *Singer v.

Becton Dickinson and Co.*, 2010 WL 2196104, at *8 (S.D. Cal. 2010) (approving fee award of

one-third; award was similar to awards in other cited wage and hour class action cases where fees

ranged from 30% to 40%); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 491-92 (E.D. Cal.

2010) (citing recent wage and hour class actions where district courts approved attorney fee

awards ranging from 30% to 33%); *Cicero v. Directv, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal.

1   2010) (noting that fees of one-third are common in wage and hour settlements below $10

2   million).  (Doc. 49-1 at p. 26, n.9.)

3          Given that the percentage of the fund is above the Ninth Circuit's benchmark, the Court

4   will conduct a cursory lodestar cross check. If a court applies the percentage method, it then

5   typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage

6   award." *See, e.g., Weeks v. Kellogg Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25

7   (C.D. Cal. Nov. 23, 2013); *Suarez v. Bank of Am., Nat'l Ass'n*, No. 18-CV-01202-LB, 2024 WL

8   150721, at *3 (N.D. Cal. Jan. 11, 2024). To guard against an unreasonable result, the Ninth

9   Circuit has encouraged district courts to cross-check any calculations done in one method against

10  those of another method. *See Vizcaino*, 290 F.3d at 1050–51.  The "lodestar" approach calculates

11  attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly

12  rate. *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978.  Where, as here, the lodestar is

13  employed to cross-check a percentage-of-fund determination, courts may do a rough calculation.

14  *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295

15  F.R.D. 438, 460 (C.D. Cal. 2014).

16         In their supplemental briefing, Plaintiffs submitted information about the number of hours

17  worked and the attorney hourly rates.  Mayall Hurley has devoted at total of 588.50 hours with a

18  lodestar of $508,518.15 based on varying hourly rates.  (Baysinger Suppl. Decl. ¶ 34.)  The

19  following chart provides a summary of the current lodestar calculated by counsel:

| Timekeeper | Experience | Rate/Hour | Hours | Total |
|---|---|---|---|---|
| Jenny D. Baysinger (Shareholder) | 2007 | $878 | 306.65 | $269,238.70 |
| Robert Wasserman (Shareholder) | 2008 | $878 | 244 | $214,232.00 |
| Vladimir J. Kozina (Shareholder) | 2012 | $878 | 13.20 | $11,589.60 |
| William J. Gorham (Shareholder/Managing Partner) | 1990 | $1,057 | 9.25 | $9,777.25 |
| Anita Gorham (Paralegal) | | $239.00 | 15.40 | $3,680.60 |
| | | **Total:** | 588.50 | $508, 518.15 |

1    Additionally, Mark S. Adams has expended approximately 85 hours on this case with a

2    lodestar total of $89,845.00, based on an hourly rate of $1,057.  (Adams Decl. ¶¶ 2, 3.)

3    Plaintiffs contend that the customary hourly rate in plaintiff's employment class action

4    cases ranges from $878 per hour (for partners with more than 10 years' experience litigating

5    plaintiffs' employment cases) to $1,075 per hour (for a senior partner with over 30 years of

6    experience) and have been approved by numerous federal and state courts, including courts

7    within the Eastern District of California, citing the recent matters of *Modica v. Iron Mountain*

8    *Information Management Services, Inc.*, United States District Court, Eastern District of

9    California Case No. 2:19-cv-00370-TLN-JDP and *Wise v. ULTA Salon Cosmetics & Fragrance,*

10   *Inc.*, United States District Court, Eastern District of California Case No. 1:17-cv-00853-DAD-

11   EPG.  (Baysinger Suppl. Decl. at ¶ 33.)

12   In the Fresno Division of the Eastern District of California, attorneys with twenty or more

13   years of experience are awarded $350.00 to $400.00 per hour. *See*, *e.g.*, *Leprino Foods Co. v.*

14   *JND Thomas Co., Inc.*, No. 1:16-CV-01181-LJO-SAB, 2017 WL 128502, at *13 (E.D. Cal. Jan.

15   12, 2017), *report and recommendation adopted in part*, No. 1:16-CV-01181-LJO-SAB, 2017 WL

16   432480 (E.D. Cal. Feb. 1, 2017) (finding $400.00 per hour a reasonable hourly rate for attorney

17   with more than thirty years of experience); *Sanchez v. Frito-Lay, Inc.*, No. 1:14-CV-00797-AWI-

18   MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), *report and recommendation adopted*,

19   No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable

20   rate for attorney with twenty years of experience was $350 per hour in a wage and hour class

21   action). Generally, "$300 is the upper range for competent attorneys with approximately a decade

22   of experience." *Barkett v. Sentosa Props. LLC*, No. 1:14-CV-01698-LJO, 2015 WL 5797828, at

23   *5 (E.D. Cal. Sept. 30, 2015) (O'Neill, J.) (citing *Silvester v. Harris*, No. 1:11-CV-2137 AWI

24   SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014).  For attorneys with "less than ten years

25   of experience ... the accepted range is between $175 and $300 per hour." *Silvester*, 2014 WL

26   7239371 at *4 (citing *Willis v. City of Fresno*, 1:09-cv-01766-BAM, 2014 WL 3563310 (E.D.

27   Cal. July 17, 2014).

28   Recent cases in this district have maintained the same hourly rates. *Accord Deerpoint*

1  *Grp., Inc. v. Agrigenix, LLC*, No. 1:18-cv-00536-AWI-BAM, 2022 WL 16551632, at *19 (E.D.

2  Cal. Oct. 31, 2022); *Langer v. Cooke City Raceway, Inc.*, No. 1:21-CV-01488-JLT-BAK, 2022

3  WL 2966172, at *16 (E.D. Cal. July 27, 2022), *report and recommendation adopted*, No. 1:21-

4  cv-01488-JLT-BAK, 2022 WL 3348015 (E.D. Cal. Aug. 12, 2022); *Webb v. Cty. of Stanislaus*,

5  No. 1:19-cv-01716-DAD-EPG, 2022 WL 446050, at *6 (E.D. Cal. Feb. 14, 2022) ("In the Fresno

6  Division of the Eastern District of California, generally, attorneys with twenty or more years of

7  experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of

8  experience are awarded $250.00 to $325.00, attorneys with five to ten years of experience are

9  awarded $225.00 to $250.00, and less than $200.00 for attorneys with less than five years of

10  experience.") Finally, "[t]he current reasonable hourly rate for paralegal work in the Fresno

11  Division ranges from $75 to $150, depending on experience." *Silvester,* 2014 WL 7239371, at *4

12  (citations omitted); *cf. Franco v. Ruiz Food Prods.*, Inc., No. 1:10-cv-02354-SKO, 2012 WL

13  5941801, at *20 (E.D. Cal. Nov. 27, 2012) (approving a rate of "$100 per hour" for "legal

14  assistants").

15       The rates Plaintiffs propose range from $878 per hour, at the low end, to $1,057 per hour,

16  at the high end.  Counsels' stated rates are high and above the upper limit of rates generally

17  accepted in this District.  Therefore, the rates will be adjusted for purposes of the lodestar

18  calculation with a rate of $325 for Jenny Baysinger and Robert Wasserman, a rate of $300 for

19  Vladimir Kozina, a rate of $400 for William Gorham and Mark Adams, and a rate of $150 for

20  paralegal Anita Gorham.

21       In addition, the Court must also consider the reasonable number of hours spent.  Mayall

22  Hurley expended 588.50 hours on the case.  (Baysinger Suppl. Decl. ¶ 34.)  Mark S. Adams

23  expended approximately 85 hours on the case.  (Adams Decl. ¶ 2.)  The total number of hours

24  worked is 673.50, which includes 15.40 hours of paralegal time.  A cursory review of the types of

25  tasks performed, at least by Mayall Hurley, substantiates that the hours expended are reasonable.

26  (*See* Ex. 8 to Baysinger Suppl. Decl.)

27       Therefore, a rough lodestar calculation using the hourly rates identified by the Court

28  yields $222,931.25 in fees ($325 x 550.65 hours = $178,961.25; $300 x. 13.20 = $3,960; $400 x

34

94.25 = $37,700; $150 x. 15.40 = $2,310).  Thus, using the rates accepted in this District, the Court concludes that the lodestar cross-check does not support the requested award amount of $1,000,000 in attorneys' fees.

Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, the court may enhance the lodestar with a multiplier. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also Vizcaino*, 290 F.3d at 1051–54 and n.6 (affirming a 28% fee recovery, explaining that the 3.65 multiplier "was within the range of multipliers applied in common fund cases" and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of 24 class action suits surveyed); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (citation omitted); *Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-JLT-BAK (EPG), 2022 WL 224025, at *3 (E.D. Cal. Jan. 25, 2022).  Based on the Court's lodestar crosscheck, a multiplier of approximately 4.48 is necessary to reach the $1,000,000 in fees Class Counsel is actually requesting in this action. This multiplier is above the range commonly approved.  If the Court were to award the standard 25% ($750,000), then the multiplier for that award would be approximately 3.36, which is on the high end, but nevertheless within the range of lodestar multipliers.  The Court therefore concludes that the lodestar crosscheck does not warrant an upward departure from the Ninth Circuit's 25% benchmark.  Class Counsel's requested 30% is not reasonable, and the Court preliminarily approves attorneys' fees at the benchmark rate of 25% ($750,000).

**F.     Costs**

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting the case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92

1   (1970)); *see also Staton*, 327 F.3d at 974.  The Ninth Circuit has held that an award to a

2   prevailing party "can include reimbursement for out-of-pocket expenses including ... travel,

3   courier and copying costs." *Grove v. Wells Fargo Fin. Cal., Inc*., 606 F.3d 577, 580 (9th Cir.

4   2010). Other recoverable expenses include expenses related to discovery and expenses related to

5   computerized research. *See Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994) (noting that

6   "expenses related to discovery" are recoverable); *Trs. Of Constr. Indus. & Laborers' Health &*

7   *Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253, 1258-59 (9th Cir. 2006) (holding that

8   "reasonable charges for computerized research may be recovered."); *Hartless v. Clorox Co.,* 273

9   F.R.D. 630, 646 (S.D. Cal. 2011) (holding that consulting fees as costs were reasonable because

10   the evidence was necessary to negotiate a settlement).

11        Plaintiffs seek up to $30,000 in costs.  (Doc. 49-1 at p. 26.)  As previously noted, Class

12   Counsel indicate that they have incurred $24,462.43 actual costs in prosecution of this action.  In

13   supplemental briefing, Class Counsel submitted documentation in support of their litigation costs

14   and expenses, identifying an amount less than the costs of up to $30,000 provided for in the

15   Settlement Agreement.  (Baysinger Suppl. Decl. ¶ 51 and Ex. 8.)  Plaintiffs expect that the costs

16   ultimately requested in conjunction with final approval will be less than $30,000; it is expected

17   that an additional amount of around $5,000.00 will be in the Net Class Settlement and distributed

18   to class members.  (*Id.*)  Having reviewed the documents submitted, and given the anticipated

19   distribution of additional amount for distribution to class members, the Court approves the

20   request for costs on a preliminary basis.

21   **I.      Notice Requirements**

22        Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is

23   practicable under the circumstances, including individual notice to all members who can be

24   identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule directs:  The notice

25   must clearly and concisely state in plain, easily understood language: (i) the nature of the action;

26   (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class

27   member may enter an appearance through an attorney if the member so desires; (v) that the court

28   will exclude from the class any member who requests exclusion; (vi) the time and manner for

1    requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule

2    23(c)(3).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient

3    detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

4    *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and internal

5    quotations omitted).

6        The proposed, amended Notice Packet here complies with Rule 23(c)(2).  (Doc. 57, Ex. 9

7    to Baysinger Suppl. Decl. ("Notice Packet").)  The Notice Packet includes the nature of the

8    action, the class definition, the class claims, the terms of the settlement, and information that the

9    class member may be represented by an attorney, the binding effect of the class judgment, how

10   and when to opt-out, and how to object to the settlement.  The Rule 23 notice also provides

11   information regarding the final approval hearing.

12       In addition, the parties agree the "best form of notice practicable" is to send the Notice

13   Packet via first-class U.S. Mail to the most current, known mailing addresses of class member as

14   indicated by Defendants' business records and a search of the United States Postal Service

15   National Change of Address. (SA  ¶¶ 53-55.)  Atticus will mail the Notice Packet to each class

16   member.  Atticus will use the National Change of Address database to verify the accuracy of all

17   addresses on the Class List before the initial mailing date. With respect to any returned envelopes,

18   Atticus will perform a skip-trace procedure to obtain a current address.  Atticus will provide all

19   counsel with a weekly report that certifies the number of Class Members who have submitted a

20   valid Request for Exclusion, Objection, and whether any Class Member submitted a challenge to

21   any information contained in the Notice Packet.

22       Under the Settlement Agreement, class members do not have to submit claims to receive

23   payment; instead, they are identified through Defendants' employment records, receive a notice

24   calculating each member's potential award based on how many workweeks worked during the

25   class period (as determined by the employment records), and are given an opportunity to dispute

26   the calculations.

27       The Court finds the notice and the method of delivery is appropriate and appears to be the

28   "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  The Court

also finds it significant that there is no opt-in procedure here, as Class Members do not have to confirm workweeks or take other action to have a check mailed to them, and there is no reversion to Defendants.

## CONCLUSION AND ORDER

For the reasons stated, the Court will grant in part Plaintiffs' motion for preliminary approval of the settlement. With the exception of requested attorneys' fees, the Court preliminarily concludes that the proposed settlement, on the current record, is "fair, reasonable, and adequate" within the meaning of Rule 23(e)(2).

Accordingly, IT IS HEREBY ORDERED that:

1. The motion for preliminary approval of the proposed settlement (Doc. 49), as supplemented, is GRANTED IN PART;

2. A hearing on the Final Approval of the settlement ("Final Approval Hearing") shall be held before the Honorable Barbara A. McAuliffe in Courtroom 8 of the United States District Court for the Eastern District of California located at 2500 Tulare Street, Sixth Floor, Fresno, California, 93721 on **September 10, 2024, at 9:00 a.m.** to determine: whether the proposed Settlement, on the terms and conditions provided for in the Settlement Agreement, is fair, reasonable, and adequate and whether said Settlement should be finally approved by the Court. The Court may adjourn or continue the Final Approval Hearing without further notice to the Class Members;

3. The following persons are conditionally certified as Class Members solely for the purpose of entering a settlement in this matter:

> All current and former non-exempt employees of Defendants in California between July 22, 2017 and November 7, 2023 who received a Signing Bonus and/or On Sign Bonus in the same workweek as he/she worked overtime, including double-time (the "Settlement Class").

4. The Court finds that, for settlement purposes only, the Settlement Class meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure in that: (1) the Class is ascertainable and so numerous that joinder of all members of the Class is impracticable; (2) there are common questions of law and fact, and the questions of law and fact

common to the Class predominate; (3) Plaintiffs' claims are typical of the claims of the members

of the Class; (4) Plaintiffs will fairly and adequately protect the interests of the members of the

Class; and (5) a class action is superior to other available methods for the efficient adjudication of

the controversy.

5. The Court finds that, on a preliminary basis, that the Settlement Agreement, entered

into among the parties and their counsel, is fair, adequate and reasonable. It further appears to the

Court that the parties conducted investigation and research, and that they were able to reasonably

evaluate their position and the strengths and weaknesses of the claims. The parties have provided

the Court with enough information about the nature and magnitude of the claims being settled, as

well as the impediments to recovery, to make an independent assessment of the reasonableness of

the terms to which the parties have agreed.  Settlement now will avoid additional and potentially

substantial litigation costs, as well as delay and risks if the parties were to continue to litigate this

case. It further appears that the Settlement has been reached as the result of intensive, serious, and

non-collusive arms-length negotiations, and was entered into in good faith.

6. The Court preliminarily finds that the Settlement, which provides for a Gross

Settlement Fund of $3,000,000 for approximately 3,232 Class Members, appears to be within

the range of reasonableness of a settlement that could ultimately be given final approval by this

Court. The Maximum Settlement Amount includes all attorneys' fees, litigation costs,

Settlement Administration Costs, and Plaintiffs' Enhancement Payments.

7. The Court hereby preliminarily approves, in part, Class Counsel's request for attorneys'

fees in the amount of $750,000.00 and costs in an amount up to $30,000.00 to be paid out of the

Maximum Settlement Amount.

8. The Court hereby preliminarily approves the Class Representative Enhancement

Payment in the total amount of $17,500.00 to be paid out of the Gross Settlement Fund.

9.  Atticus Class Action Administration is appointed to act as the Administrator, pursuant

to the terms set forth in the Settlement Agreement.

10. Plaintiffs Leilani Kryzhanovskiy and Patricia Salazar are appointed the Class

Representatives and the representatives of the Settlement Class for settlement purposes only;

11. Plaintiffs' Counsel, Mayall Hurley, P.C. and the Law Offices of Mark S. Adams, are appointed Class Counsel; Class Counsel are authorized to act on behalf of the Class Representatives and the Settlement Class with respect to all acts or consents required by or which may be given pursuant to the Settlement and such other acts reasonably necessary to consummate the Settlement; the authority of Class Counsel includes entering into any necessary modifications or amendments to the Settlement on behalf of the Class Representatives and the Settlement Class which they deem appropriate;

12. The settlement of Plaintiffs' California Labor Code Private Attorney General Act ("PAGA") claim is fair and reasonable, and the Court preliminarily approves the Settlement and release of that claim as well as the PAGA Allocation in the amount of $100,000, which includes payment to the LWDA and to the PAGA Settlement Class Members;

13. The Court hereby approves, as to form and content, the Notice Packet attached as Exhibit 9 to the Supplemental Declaration of Jenny Baysinger. (Doc. 57.) The rights of any potential objectors to the proposed Settlement are adequately protected in that they may exclude themselves from the Settlement and proceed with any alleged claims they may have against Defendants, or they may object to the Settlement and appear before this Court. However, to do so, they must follow the procedures outlined in the Settlement Agreement which are set out in the Notice Packet.

14. The Court finds that the mailing of the Notice Packet substantially in the manner and form as set forth in the Settlement Agreement and this Order meets the requirements of Federal Rules of Civil Procedure, Rule 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

15. The Court finds that the notice of settlement that Class Counsel provided to the LWDA satisfies the notice requirements of the California Private Attorneys General Act.

IT IS SO ORDERED.

Dated:   **March 22, 2024**               ____/s/ *Barbara A. McAuliffe*____
                                          UNITED STATES MAGISTRATE JUDGE

40