1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11
12
13
14
15
16
17
18

LEILANI KRYZHANOVSKIY,
PATRICIA SALAZAR, individually, on
behalf of all others similarly situated, and
as a proxy for the LWDA,

Plaintiffs,

v.

AMAZON.COM SERVICES, INC., et al.,

Defendants.

Case No.  2:21-cv-01292-BAM

**ORDER GRANTING PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

(Doc. 61)

**ORDER GRANTING PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES,
COSTS, AND CLASS REPRESENTATIVE
ENHANCEMENT AWARDS**

(Doc. 62)

19

Currently pending before the Court are the motions for final approval of class action

20

settlement and for attorneys' fees, costs, and class representative enhancement awards filed by

21

Plaintiffs Leilani Kryzhanovskiy and Patricia Salazar ("Plaintiffs") on August 6, 2024.  (Docs. 61,

22

62.)  Defendants Amazon.com Services, Inc. (now known as Amazon.com Services LLC) and

23

Amazon.com Services LLC (collectively "Defendants") did not file any opposition to the

24

motions, but confirmed at the hearing that Defendant did not object to final approval.  The

25

hearing on the motions was held via Zoom video conference on September 10, 2024, before the

26

Honorable Barbara A. McAuliffe.[1]  Counsel Jenny D. Baysinger appeared by Zoom video and

27

28

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case,
including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 30, 32, 33, 51, 52, 53.)

1

Counsel Mark Adams appeared by Zoom telephone on behalf of Plaintiffs.  Counsel Lauren Blas and Nasim Khansari appeared by Zoom video on behalf of Defendants.

At the hearing, the Court addressed the unsigned declaration filed by Counsel Baysinger in support of the instant motions.  (*See* Doc. 61-3 at 33.)  The Court discussed its tentative ruling, subject to the filing of Counsel Baysinger's signed declaration.  Counsel Baysinger filed her signed declaration the same day.  (*See* Doc. 63.)

Having considered the briefing, submitted declarations, and the record in this case, Plaintiffs' motion for final approval of the class action settlement will be granted.  Additionally, Plaintiffs' motion for attorneys' fees, costs, and class representative enhancement awards will be granted.  Attorneys' fees will be awarded in the amount of $1,000,000.00, litigation costs will be awarded in the amount of $24,642.43, and class representative enhancement payments will be awarded in the total amount of $17,500.00.

## BACKGROUND

### A.      Relevant Procedural History

On July 22, 2021, Plaintiff Kryzhanovskiy initiated this putative class and representative action for damages and civil penalties, asserting class claims for failure to pay overtime, furnish accurate wage statements, violation of the Equal Pay Act, unfair business practices and various individual claims.  (Doc. 1.)  Plaintiff Kryzhanovskiy filed a First Amended Complaint on August 20, 2021, adding a representative claim under the Private Attorneys General Act of 2004 ("PAGA").  (Doc. 9.)

The parties agreed to mediate this case with mediator Lisa Klerman on August 31, 2023.  (*See* Doc. 41.)  Thereafter, on September 21, 2023, the parties filed a notice of settlement in principle.  (Doc. 42.)

Consistent with the parties' settlement agreement, Plaintiff Kryzhanovskiy filed a Second Amended Complaint ("SAC") on November 29, 2023, in order to (1) add Plaintiff Salazar as a named party, (2) add a class-wide claim for waiting time penalties, and (3) remove the class-wide allegations for violation of the Equal Pay Act. (Doc. 46.)   The class and representative claims asserted in the SAC are as follows: (1) failure to pay overtime, (2) failure to furnish accurate

wage statements, (3) failure to timely pay all wages due upon separation, (4) unfair business practices, and (5) a claim to assess and collect civil penalties pursuant to the PAGA. (*Id.*)  The SAC also continues to allege Plaintiff Kryzhanovskiy's individual claims for (1) gender discrimination, (2) violation of the Equal Pay Act, (3) FEHA retaliation, (4) Labor Code retaliation, (5) failure to timely provide payroll records, and (6) failure to timely provide personnel records.  (*Id.*)

**B.     Events Leading to Settlement**

Following two years of active litigation, including motion practice and formal discovery, the parties participated in full-day mediation with Lisa Klerman on August 31, 2023.  (Doc. 61-1 at 1; Doc. 63, Declaration of Jenny D. Baysinger ("Baysinger Decl.") ¶ 29.)  After the parties reached an impasse on the class claims, Ms. Klerman made a mediator's proposal that expired on September 8, 2023.  (Baysinger Decl. ¶ 32.)  The parties ultimately accepted the mediator's proposal to resolve the class claims for payment of $3,000,000.00 on September 8, 2023. (Baysinger Decl. ¶ 33.)  On December 12, 2023, after months of further negotiations as to an appropriate long form settlement agreement, the parties executed the Class Action Settlement Agreement and Release ("Settlement Agreement" or "SA").  (Baysinger Decl. ¶ 35, Ex. 1.)

**1.   Settlement of Class Claims**

Plaintiffs negotiated the settlement on behalf of, and seek to represent, a specific and narrow group of individuals—all current and former non-exempt California employees who received a Signing Bonus and/or an On Sign Bonus (bonuses earned during the second year of employment) during a workweek when he/she also worked overtime hours during the Class Period. (Doc. 61-1 at 8; SA ¶ 36.)

**2.   Plaintiff Kryzhanovskiy's Individual Claims**

During the mediation, Plaintiff Kryzhanovskiy's individual claims were separately negotiated and resolved in exchange for a payment of $25,000.00 and an increase of $1.12 to her hourly wage.  (SA ¶ 33.)  The negotiated resolution of Plaintiff Kryzhanovskiy's individual claims is not contingent on approval of the settlement.  Payment for resolution of the individual claims has already been made.  (Baysinger Decl. ¶ 33.) The Class Notice informed Settlement

Class Members about the existence of Plaintiff Kryzhanovskiy's individual settlement. (Doc. 61-2, Declaration of Bryn Bridley ("Bridley Decl.") ¶ 7, Ex. B ("Class Notice").)

### 3. Other Related Cases

There are three other pending cases with class claims that potentially overlap, to some extent, with the claims implicated by the settlement in this case: *Juan Trevino v. Golden State FC, LLC*, Case No. 1:18-cv-00120-DAD-BAM (the "Trevino Consolidated Class Action"); *Christian Porter v. Amazon.com Services, LLC*, Central District of California Case No. 2:20-cv-09496- JVS-SHK (the "Porter Class Action"); and *Terrance Clayborn v. Amazon.com Services, LLC*, Central District of California Case No. 5:20-cv-02368-JVS-SHK (the "Clayborn Class Action"). The Class Notice informed Settlement Class Members about the existence of these other pending matters and the fact that some of the claims in those matters may overlap with claims being asserted in this action. The Class Notice also informed Settlement Class Members that to the extent claims in any of the other pending matters overlap with claims in this action, they will be resolved along with the class claims in this action upon final approval of the settlement. (Class Notice, Ex. B to Bridley Decl.)

## C. Summary of Settlement Terms

### 1. Monetary Relief Under the Settlement

Defendants have agreed to pay $3,000,000.00 ("Gross Settlement Fund") to resolve the claims of participating Settlement Class Members. (SA ¶¶ 14, 40.) The Gross Settlement Fund will be deposited into a Qualified Settlement Fund[2] to be established by the Settlement Administrator within 30 calendar days of the Effective Date and does not include the employer's share of applicable payroll tax payments, which will be separately paid by Defendants. (SA ¶¶ 13, 14, 40.) Plaintiffs and Class Counsel negotiated an escalator clause to protect Settlement Class Members such that if the number of Class Members or workweeks increases by more than 10%, the Gross Settlement Fund will increase by a proportional amount. (SA ¶ 60.)

---

[2] "Qualified Settlement Fund" means "a fund, account, or trust satisfying the requirements of 26 C.F.R. § 1.468B-1, established by the Settlement Administrator for the purpose of distributing the Gross Settlement Fund according to the terms of [the] Settlement Agreement." (SA ¶ 27.)

Under the Settlement Agreement, the following amounts are to be deducted from the Gross Settlement Fund:

(1) Class Representative Enhancement Payments of $17,500.00 (SA ¶ 43),

(2) Class Counsel Award of attorneys' fees of $1,000,000.00, and costs and expenses of $30,000.00 (SA ¶ 42),

(3) Settlement Administration Costs up to $25,000.00 (SA ¶¶ 34, 45), and

(4) PAGA Settlement Amount of $100,000.00 (SA ¶ 46).

(SA ¶ 18 ("'Net Settlement Amount' means the portion of the Gross Settlement Fund remaining after deducting the Class Representative Enhancement Payment, the Class Counsel Award, Settlement Administration Costs, and the PAGA Settlement Amount.").)

**2. Net Settlement Amount**

The Net Settlement Amount of $1,827,500.00[3] is expected to be available for distribution to participating Settlement Class Members. (SA ¶ 18; Baysinger Decl. ¶¶ 66, 90.) The entire Net Settlement Amount will be distributed to Participating Settlement Class Members. (SA ¶¶ 48.) All Settlement Class Members will be entitled to Individual Settlement Payments unless they opt out. (SA ¶¶ 48, 58.) Individual Settlement Payments will be based upon the number of workweeks worked by Settlement Class Members during the Class Period. (SA ¶ 48.) Settlement Class Members whose employment has ended will be credited with four (4) additional workweeks. (SA ¶ 48.)

For purposes of taxes and required withholdings, (1) 50% of each Individual Settlement Payment shall constitute penalties (for which an IRS Form 1099 shall be issued) and (2) 50% of each Individual Settlement Payment shall constitute wages. (SA ¶ 70.) The employer's share of applicable payroll tax payment ("Employer Payroll Tax Payments") will be paid separately by Defendants (in addition to the Gross Settlement Fund). (SA ¶¶ 14, 40.)

**3. Releases**

Class Members who do not timely submit a Request for Exclusion, i.e., Participating

---

[3] Plaintiffs indicate this number will be higher as Class Counsel costs are less than $25,000 (not $30,000) and the Settlement Administrator costs are $24,850 (not $25,000). (Doc. 61-1 at 12 n.3.)

1   Settlement Class Members, will release Defendants from the "Released Class Claims."  (SA ¶

2   62.a.)  "Released Class Claims" means:

3          all claims all claims, actions, demands, causes of action, suits, debts, obligations,
           demands, rights, liabilities, or legal theories of relief, that are based on the facts
4          and legal theories asserted in the operative complaint of the Action, or which
           relate to the primary rights asserted in the operative complaint, including without
5          limitation claims for (1) failure to pay overtime under California Labor Code §§
           510, 558, 1194, and 1198, (2) failure to furnish accurate wage statements under
6          California Labor Code § 226(a), (3) failure to pay sick leave in violation of Labor
           Code § 248.5, (4) waiting time penalties in violation of Labor Code §§ 201203,
7          and (5) unlawful business practices under Unfair Competition Law including
           Business and Professions Code sections 7200 et seq. The period of the Released
8          Class Claims shall extend to the limits of the Class Period.

9   (SA ¶ 28.)

10         Plaintiffs Kryzhanovskiy and Salazar have agreed to a full general release of their claims

11  against Defendants, which is broader than the release that applies to the Class Members.  (SA ¶

12  62.c. and d.)

13              **4.   Opt-outs (Exclusions) and Objections**

14         The Class Notice explained to class members that they did not have to do anything to

15  receive payment from this settlement.  (Class Notice, Bridley Decl.at Ex. B.)  However, any class

16  member could file objections to the terms of the settlement or request exclusion ("opt-out") from

17  the settlement class.  (*Id.*)  The Class Notice explained the procedures to object to the terms and

18  request exclusion, and informed individuals that any objections or requests for exclusion were to

19  be postmarked no later than June 17, 2024.  (*Id.*)

20              **5.   Service of the Class Notice and Responses Received**

21         On April 20, 2024, the Settlement Administrator received the class list from defense

22  counsel, which contained the name, address, telephone number, employee identification number,

23  social security number, dates of employment, workweeks for the class period, workweeks for the

24  PAGA period (August 20, 2020 through November 7, 2023), and the number of workweeks for

25  purposes of calculating the individual and PAGA settlement payments.  The final class list

26  included 3,331 class members, 2,366 of whom were also PAGA settlement members.  Class

27  members worked 157,947 workweeks during the class period.  PAGA settlement members

28  worked 89,890 pay periods during the PAGA period.  (Bridley Decl. ¶ 5.)

1    On May 3, 2024, after conducting a National Change of Address search, the Settlement

2    Administrator sent the Class Notice by first-class mail to all class members.  As of the date of the

3    motion, 67 notices had not been delivered, with 3,264 class notices successfully mailed.  (Bridley

4    Decl. ¶¶ 6-8.)

5    The Settlement Administrator also maintained a settlement website and toll-free telephone

6    number.  (Bridley Decl. ¶ 9.)

7    The response deadline for exclusions and objections was June 17, 2024.  The Settlement

8    Administrator received three (3) exclusion requests, two (2) of which were timely and valid.  The

9    third (3) request was untimely.  The two class members who submitted timely and valid exclusion

10   requests, Leonardo Jimenez and Jesus Ocegueda, Jr., will receive individual PAGA payments, but

11   not Individual Settlement Payments.  As of the date of the motion, the Settlement Administrator

12   had not received any objections to the settlement.  (Bridley Decl. ¶ 10.)  No objections have been

13   filed by any class member.  No objectors appeared at the hearing.

14   Individual class and PAGA payments will be distributed within 21 calendar days of the

15   funding date, which is 30 days after final approval.  Assuming 100% settlement class

16   participation, the highest estimated individual class payment is $1,561.77, and the estimated

17   average award amount is $548.96.  (Bridley Decl. ¶ 13.)  The highest estimated individual PAGA

18   payment is $26.90, and the estimated average award amount is $10.57.  (*Id.*, ¶ 14.)

19   **APPROVAL OF CLASS SETTLEMENT**

20   When parties settle the action prior to class certification, the Court has an obligation to

21   "peruse the proposed compromise to ratify both the propriety of the certification and the fairness

22   of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Approval of a class

23   settlement is generally a two-step process. First, the Court must assess whether a class exists. Id.

24   (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must

25   "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.*

26   (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve

27   or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

28

7

I.   **Certification of the Settlement Class**[4]

To certify a class, a party must demonstrate that all of the prerequisites of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b) has been met. *Wang v. Chinese Daily News, Inc*., 737 F.3d 538, 542 (9th Cir. 2013); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

### A.  Rule 23(a) Requirements

Under Rule 23(a), certification of a class is proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(1)–(4).  These factors are known as "numerosity," "commonality," "typicality," and "adequacy," respectively.  Assessing these requirements involves "rigorous analysis" of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, (2011).

#### 1.  Numerosity

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute number or cut-off for determining numerosity, and the specific facts of each case may be examined. *Schwarm v. Craighead*, 233 F.R.D. 655, 660 (E.D. Cal. 2006); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) ("Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1).").  "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007); *see also Cervantez*, 253 F.R.D. at 569 ("Courts have held that numerosity is satisfied when there are as few as 39 potential class members.").

The Settlement Administrator reports that there are 3,331 class members.  (Bridley Decl. ¶

---

[4] "Because the class was only conditionally certified upon preliminary approval of the Settlement, final certification of the Settlement Class is required." *Conti v. L'Oreal USA S/D, Inc*., No. 1:19-cv-0769 JLT SKO, 2023 WL 4600532, at *6 n.5 (E.D. Cal. July 18, 2023).

1   5.)  The Court finds that numerosity is satisfied as joinder of such members is impracticable.  *See*

2   *also Celano v. Marriott Int'l, Inc*., 242 F.R.D. 544, 549 (N.D. Cal. 2007) (noting "courts generally

3   find that the numerosity factor is satisfied if the class comprises 40 or more members and will

4   find that it has not been satisfied when the class comprises 21 or fewer."); *Cervantez*, 253 F.R.D.

5   at 569 ("Courts have held that numerosity is satisfied when there are as few as 39 potential class

6   members.")

7               **2.  Commonality**

8         Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P.

9   23(a)(2). Parties seeking class certification must prove their claims depend on a common

10  contention of such a nature it is capable of class-wide resolution, meaning the determination of its

11  truth or falsity will resolve an issue central to the validity of each claim at once. *Wal-Mart*, 564

12  U.S. at 350. Class-wide proceedings must generate common answers to common questions of law

13  or fact apt to drive resolution of the litigation. *Id.* The parties must demonstrate class members

14  have suffered the same injury. *Id.* at 349-350.

15        Plaintiffs contend that the claims of Plaintiffs and Class Members all flow from a common

16  core of salient facts because they are based on Defendants' alleged uniform failure to include

17  other remuneration—specifically Signing Bonuses and/or On Sign Bonuses—when calculating

18  overtime and redeemed sick pay, resultant failure to timely pay all wages due and owing at

19  separation, and derivative provision of uniform itemized wage statements missing critical

20  necessary information.  (Doc. 61-1 at 15-16.)  Plaintiffs also contend that the claims implicate

21  common questions, including whether the Signing Bonuses, On Sign Bonuses, or other

22  remuneration were required to be included in the regular rate, whether those items were properly

23  calculated when/if they were included, and whether Amazon is entitled to credits or setoffs for

24  overpayments of wages.  (*Id.* at 16.)  The Court finds that the commonality requirement is met

25  because Defendants engaged in uniform practices with respect to all class members.

26               **3.  Typicality**

27        Rule 23 also requires that "the claims or defenses of the representative parties are typical

28  of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under Rule 23's permissive

standard, claims "need not be substantially identical," but are typical if the representative's claims are "reasonably co-extensive with those of the absent class members." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020). Typicality is based on the "nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)). Typicality tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Hanon*, 976 F.2d at 508). The requirements of commonality and typicality occasionally merge, and "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (quoting *Wal-Mart*, 564 U.S. at 349 n.5).

As with the commonality requirement, the Court finds the typicality requirement is satisfied because Plaintiffs' claims arise from the same factual bases and are premised upon the same legal theories as those applicable to the class members. Plaintiffs, like every other class member, worked for Amazon during the class period, were subjected to the same employment policies, and received a Signing Bonus and/or On Sign Bonus that was not included in the regular rate for overtime and/or sick pay. Further, because Plaintiff Salazar's employment has ended, and Plaintiff Kryzhanovskiy's also has now ended, they possess the derivative waiting time penalty asserted. (Doc. 61-1 at 16; Baysinger Decl. ¶ 5 ("Kryzhanovskiy is no longer employed by Amazon; she resigned her position on April 26, 2024.").)

### 4.  Adequacy of Representation

The Court must ensure "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether the named plaintiffs will adequately represent the class, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco*

1   *Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

2   "Adequate representation depends on, among other factors, an absence of antagonism between

3   representatives and absentees, and a sharing of interest between representatives and absentees."

4   *Ellis*, 657 F.3d at 985 (citing *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003)). Class

5   representatives "must be part of the class and possess the same interest and suffer the same injury

6   as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (internal

7   quotations and citations omitted). This factor also tends to merge with the commonality and

8   typicality criteria of Rule 23. *Id.* at 626 n.20.

9        The Court appointed Plaintiffs Kryzhanovskiy and Salazar as Class Representatives at the

10  preliminary approval stage.  Plaintiffs and the class share common injuries and generally possess

11  the same interests.  Plaintiff Salazar does not have a conflict of interest with the purported class.

12  As noted at preliminary approval, Plaintiff Kryzhanovskiy possessed individual claims that she

13  settled, which suggested a potential conflict.  However, the Court found that her individual claims

14  arose out of circumstances unique to her and were negotiated separately from negotiations

15  regarding the class claims.  This did not render her fundamentally unfit to act as a class

16  representative.  (*See* Order, Doc. 58 at 17-18.)  The Class Notice informed class members of the

17  individual settlement and no one objected.  (Doc. 61-1 at 18; Bridley Decl. ¶ 10.)  The Court

18  therefore finds that Plaintiffs Kryzhanovskiy and Salazar fairly and adequately represented the

19  interests of the class.

20       The Court appointed Robert J. Wassermann and Jenny D. Baysinger of Mayall Hurley,

21  P.C., and Mark S. Adams of the Law Offices of Mark S. Adams as Class Counsel at the

22  preliminary approval stage.  As previously found by the Court, Class Counsel have extensive

23  experience pursuing similar wage and hour cases. (*See* Order, Doc. 58 at 19.)  There is no

24  evidence of any potential conflicts and there was no objection to their appointment.  The Court

25  finds Class Counsel have met the adequacy requirement.

26       For the foregoing reasons, the Court finds that the requirements of Rule 23(a) are

27  satisfied.

28  ///

**B. Rule 23(b)(3) Requirements**

A class may only be certified if it also is maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Wang*., 737 F.3d at 542 ("A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."). Plaintiffs seek class certification under Rule 23(b)(3). (Doc. 61-1 at 18.) A class is maintainable under Rule 23(b)(3) if (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These are referred to as the "predominance" and "superiority" requirements. *Wal-Mart*, 564 U.S. at 363 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

**1. Predominance**

"The first requirement of Rule 23(b)(3) is predominance of common questions over individual ones." *Valentino*, 97 F.3d at 1234. The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement," and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod.,* 521 U.S. at 594. If a common question will drive the resolution of the litigation, the class is sufficiently cohesive. *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020) (court must determine which questions are likely "to drive the resolution of the litigation.)

Plaintiffs contend that common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3). In particular, Plaintiffs assert that factually, the policies and practices alleged to underscore the Class Claims apply class-wide and Amazon's liability is determinable by facts and applicable law common to all Settlement Class Members. The Court finds that the challenged policies and practices apply class wide, and Defendants' liability can be determined by facts and law common to all settlement class members. The predominance requirement is therefore met.

///

1

### 2.   Superiority

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino*, 97 F.3d at 1234–35. Factors relevant to the superiority requirement under Rule 23(b)(3) include:

> (A) The class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) ("In determining superiority, courts must consider the four factors of Rule 23(b)(3).") "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190. However, where "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prod., Inc.*, 521 U.S. at 620.

> a.   Class members' interest in individual litigation

First, the Court considers "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). This factor is most relevant when class members "suffered sizeable damages or [have] an emotional stake in the litigation." *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 301 (C.D. Cal. 2011). "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190.

As reported by the Settlement Administrator, there were only two timely requests for

exclusion and no objections to the settlement.  (Bridley Decl. ¶ 10.)  There is no indication that the majority of Class Members seek to control this action or litigate a separate action.  The payments to Class Members are not sizable or large.  The average estimated award is $548.96, while the highest estimated award is $1,561.77.  (Bridley Decl. ¶ 13.)  It is unlikely that individuals would pursue these relatively small claims.  *See Conti*, 2023 WL 4600532, at *9 (concluding it was unlikely individuals would pursue small claims with an estimated average payment of $584.59, with a highest payment of $2,849.49).  This factor weighs in favor of class certification.

### b.      Other litigation

Second, the Court considers "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  Here, Plaintiffs indicate that there three (3) pending cases with class claims that potentially overlap, to some extent with the Released Claims and Released PAGA Claims:   *Trevino v. Golden State FC, LLC*, No. 1:18-cv-00120-KES-BAM; *Porter v. Amazon.com Services, LLC*, Central District of California Case No. 2:20-cv-09496-JVS-SHK (the "Porter Class Action"); and *Clayborn v. Amazon.com Services, LLC*, Central District of California Case No. 5:20-cv-02368-JVS-SHK (the "Clayborn Class Action").  (Doc. 61-1 at 9.)  The Class Notice informed Settlement Class Members about the existence of the other pending matters.  (Class Notice, Bridley Decl. at Ex. B.)  Class Counsel also separately reached out to each plaintiff's counsel in those matters to specifically advise each of the settlement. (Baysinger Dec. ¶¶ 101-03.) None of those counsel raised any objection to the settlement terms.  (*Id.*)  This factor does not weigh against class certification.

### c.      Concentration in one forum

Third, the Court considers "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C).

There is no suggestion the Eastern District is an undesirable forum for the matter, which raises wage and hour claims under California law on behalf of employees who worked Amazon. *See Conti,* 2023 WL 4600532, at *10 (concluding this factor weighed in favor of certification

where settlement raised wage and hour claims under California law on behalf of employees throughout the state). Further, "[w]ith the parties already having agreed on a proposed Settlement Agreement, the desirability of concentrating the litigation in one forum is obvious." *Wright v. Linkus Enters.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (internal quotation marks, citation omitted). This factor therefore weighs in favor of certification.

d.     Management of the action

Finally, the Court considers "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Because the parties reached an agreement for the class claims and identified the Settlement Class, it does not appear there are any problems with managing the action. *See Conti*, 2023 WL 4600532, at *10. Additionally, resolution of the claims of approximately 3,329 total class members in one class action settlement is superior to individual lawsuits because it promotes consistency and efficiency of adjudication. This factor weighs in favor of certification.

Taken together, the Court finds that class treatment is superior. The Court additionally concludes that the relevant factors generally weigh in favor of class certification and that Plaintiffs have sufficiently met the requirements of Rule 23(a) and (b).

## II.     **Evaluation of Settlement Terms**

Class actions require court approval prior to settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). A class action settlement may be approved if the Court, after class members have an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) directs the Court to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

15

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)

("Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in

determining whether a settlement is 'fair, reasonable, and adequate.'"); *see also Farrar v.*

*Workhorse Grp., Inc.*, No. CV 21-02072-CJC (PVCx), 2023 WL 5505981, at *4 (C.D. Cal. July

24, 2023) (applying Rule 23(e)(2) factors to evaluate fairness of class action settlement); *Lusk v.*

*Five Guys Enterprises LLC*, No. 1:17-cv-0762 JLT EPG, 2023 WL 4134656, at *12 (E.D. Cal.

June 22, 2023) (applying Rule 23(e)(2) factors to evaluate whether settlement of class action

"fair, reasonable, and adequate"); *Razo v. AT&T Mobility Servs., LLC*, No. 1:20-cv-0172 JLT

HBK, 2022 WL 4586229, at *8 (E.D. Cal. Sept. 29, 2022) (same).

District courts in the Ninth Circuit also consider the following non-exhaustive list of

factors ("*Churchill* factors"): (1) the strength of the plaintiffs' case; (2) the risk, expense,

complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed

and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hang v. Old*

*Dominion Freight Line, Inc.*, No. 5:21-cv-00287-JWH-DTBX, 2024 WL 2191930, at *3 (C.D.

Cal. May 14, 2024) (indicating that in Ninth Circuit courts also consider the eight *Churchill*

factors); *Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-00350-DAD-AC, 2023 WL 2918657,

at *4 (E.D. Cal. Apr. 12, 2023) (citing *Churchill*, 361 F.3d at 575). These settlement factors are

non-exclusive, and each need not be discussed if they are irrelevant to a particular case.  *Mostajo*,

2023 WL 2918657, at *4.

**A.     Representation of the Class**

The Court is required to consider whether "the class representatives and class counsel

have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  Because Plaintiffs carried

the burden to show the adequacy prerequisite was satisfied under Rule 23(a), the requirement

under Rule 23(e)(2) also is satisfied.  *See Conti*, 2023 WL 4600532, at *11 (determining Rule 23(e)(2) adequacy requirement satisfied where plaintiffs carried the burden to show the adequacy perquisite satisfied under Rule 23(a)).

### B.    Negotiation of the Settlement

The Court must consider whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit also "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement. *Rodriguez*, 563 F.3d at 965 ("Where a class action is settled prior to class certification, the Court must also consider whether there is evidence of collusion or other conflicts of interest before approving the settlement." *Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 389 (E.D. Cal. 2018) (citing *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011)). Examples of signs that a settlement is the product of collusion include "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds ...; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (quoting *In re Bluetooth*, 654 F.3d at 947).

Here, the settlement was presented to the Court only after the parties' participation in mediation, consideration of the mediator's proposal, and months of subsequent negotiations. (Doc. 61-1 at 20.)  Plaintiffs indicate that prior to engaging in settlement negotiations they conducted formal written discovery, informally received the time and payroll records for 315 Settlement Class Members, and engaged an expert to assist in analyzing the data and assessing damages/penalty exposure.  (*Id.* at 19.)

### 1.    Whether there is a disproportionate distribution to counsel

The Settlement Agreement provides that Class Counsel intend to seek attorneys' fees not to  exceed 1/3 of the Gross Settlement Fund or one million dollars.  (SA ¶¶ 2. 42.)  In the Ninth Circuit, 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the

risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).  As discussed below, the Court does not find that there is a disproportionate distribution to counsel, and the requested fees are reasonable.

### 2.  Existence of a "clear sailing" agreement

In general, a "clear sailing" provision is one in which the parties agree to the "payment of attorneys' fees separate and apart from class funds." *In re Bluetooth*, 654 F.3d at 947. A "clear sailing" arrangement also exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Id.*

Class Counsel is not seeking attorneys' fees separate and apart from the class funds. Rather, the amount requested is to be deducted from the Gross Settlement Fund.  (SA ¶¶ 2, 14.) There does not appear to be a clear sailing agreement.

### 3.  Whether there is a reversion to defendant

The parties did not agree or otherwise arrange for unawarded fees to revert to Defendants. Instead, the parties agreed that the Gross Settlement Fund is "non-reversionary."  (SA ¶ 14.) Additionally, the parties agreed that the Net Settlement Amount, which is the portion of the Gross Settlement Fund remaining after deducting enhancement payments, Class Counsel award, administration costs and the PAGA settlement amount, will be distributed to participating class members.  The Settlement Agreement expressly provides that "[t]here will be no reversion of the Net Settlement Amount to Defendants."  (SA ¶ 18; *see also* SA  ¶ 41 ("Defendants maintain no reversionary right to any portion of the Net Settlement Amount …".).  The parties acknowledged that there may be timely opt outs or reductions in the amount in fees and costs awarded, but that any unawarded fees or costs would be included in the Net Settlement Amount and distributed to participating Class Members.  (SA ¶ 41.)

Based on the foregoing, the Court finds that the settlement was negotiated at arm's length and that there is no evidence of collusion.

///

**C.      Relief Provided for the Class**

The third factor assesses whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C).

### 1.      Costs, risks, and delays of further litigation

"A[ ] central concern [when evaluating a proposed class action settlement] ... relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.

Plaintiffs contend that absent settlement, there would be significant additional litigation, including class member and Amazon-affiliated witness depositions, a contested motion for certification, a motion for summary judgment, likely appeals to rulings in favor of the Class, and a lengthy trial.   Plaintiffs indicate that continued litigation would require them to establish the bases for certification, classwide liability, and then to present evidence regarding damages and penalties which would likely be protracted and costly. (Doc. 61-1 at 23.)  Additional unforeseen costs, risks, and delays, including appellate proceedings might also materialize. (Baysinger Decl. ¶ 80.)  Plaintiffs posit that even if they overcame these obstacles and obtained a judgment for the Class, any recovery might be less than the Settlement and would not occur for years. (Doc. 61-1 at 23.)  This factor weighs in favor of final approval.

### 2.      Effectiveness of method of distributing relief

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Id.

Class Members are not required to submit a claim to receive their settlement share.  (SA ¶

24 ("'Participating Settlement Class Member' means all Settlement Class Members who do not submit timely and valid Requests for Exclusion.") and ¶ 58.)  Instead, Class Members only needed to take action if they wished to exclude themselves from the settlement, object to any of the settlement terms, or dispute the number of workweeks.  (*Id.*, ¶¶ 57-58, 65.)  Because submission of a claim form is not required, the proposed method of distribution is not "unduly demanding" upon Class Members and will facilitate payment for legitimate claims.  *See Hang*, 2024 WL 2191930, at *5 (finding method for distributing relief adequate as funds would be distributed to class members with no claim form requirement); *Conti*, 2023 WL 4600532, at *15 (finding proposed method of distribution not unduly demanding where class members not required to take any action to receive their settlement share).  This factor therefore weighs in favor of final approval.

### 3.   The terms of any proposed award of attorney's fees, including timing of payment

When evaluating the terms of a settlement, "courts must scrutinize 'the terms of any proposed award of attorney's fees.'" *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit explained, "the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Id.*, quoting *Briseño*, 998 F.3d at 1024.

As discussed below, the fees to which the parties agreed are reasonable.  The Court-approved payment shall be made out of the Gross Settlement Fund by the Settlement Administrator within twenty-one calendar days after the Funding Date.  (SA ¶ 67.a.)  In that same 21-day period, the Settlement Administrator will issue the other approved payments, including to Class Members. (*Id.*, ¶¶ 67.a and b.)  Thus, Class Counsel will receive their payment in the same period of time as Class Members. This factor weighs in favor of final approval.

### 4.   Agreement required to be identified

The Court must evaluate any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv). Specifically, "parties seeking approval must file a statement

identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

Class Counsel have not identified any agreements except for the Settlement Agreement.

### D.      Treatment of Class Members

Rule 23(e)(2) requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(D).

The Settlement Agreement provides:

> Individual Settlement Payments will be calculated and apportioned on a pro rata basis from the Net Settlement Amount to Settlement Class Members who do not opt out depending on the number of "weeks worked" or "workweeks" (defined as any calendar week during the Class Period) in which a Settlement Class Member performed at least one day of work for Defendants.  Participating Settlement Class Members whose employment has ended will be credited an additional four (4) weeks worked for purposes of calculating their pro rata share of the Net Settlement Amount.

(SA ¶ 48.)

The Settlement Agreement provides for pro rata distribution to Class Members based upon their number of workweeks, and adjusts for those whose employment has ended.  The agreement generally treats Class Members equitably, and supports final approval.  *See Conti*, 2023 WL 4600532, at *16 (finding pro rata distribution to class members based upon number of workweeks treated class members fairly and citing cases).

Having found that all four factors under Rule 23(e)(2) favor settlement, the Court now turns to the relevant "*Churchill* factors" to evaluate the fairness of the settlement.

### E.      Relevant *Churchill* Factors

#### 1.      Strength of Plaintiffs' Case

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010).

Class Counsel believes evidence exists from which the trier of fact could conclude Amazon engaged in a pattern and practice of failing to properly include "other remuneration", namely Signing and On Sign Bonuses, when calculating the regular rate of pay for overtime/doubletime and redeemed sick leave, and that such derelictions resulted in derivative

failures to pay wages on separation and provision of inaccurate wage statements.  However, Class

Counsel recognizes that pursuit of the claims was not without risk.  (Doc. 61-1 at 22.)  Per Class

Counsel, Defendants would have continued to assert numerous legal and factual grounds to

defend against the Class Claims and/or certification of such claims, including, but not limited to,

1) that the Signing and On Sign Bonuses were discretionary, 2) that the bonuses were properly

included in the regular rate of pay for overtime and sick leave, 3) that Defendants voluntarily

overpaid certain wages and were entitled to an offset of those overpayments against any

underpayments to the Class, 4) that any net failures to pay wages were not sufficiently willful to

justify imposition of waiting time penalties, 5) that the wage statements actually comply with the

Labor Code, and 6) that no one was injured by any technical omission on the wage statements.

(Baysinger Decl. ¶¶ 68-78.)  While Class Counsel is confident certification and success on the

merits could have been attained, continued litigation was guaranteed to be costly, time

consuming, and uncertain in outcome. (Doc. 61-1 at 22.)

### 2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor in assessing the fairness of the proposed settlement is the complexity,

expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement.

*See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625

(9th Cir. 1982).  This factor closely mirrors the requirement in Rule 23(e) concerning "the costs,

risks, and delay of trial and appeal."  The analysis is not repeated here.

### 3.  The Amount Offered in Settlement

Plaintiffs, utilizing the help of an expert, developed a damages model.  Under that

damages model, Defendants faced a maximum of $6,046,937.00 in underpaid overtime and sick

pay wages, $7,885,152 in statutory waiting time penalties, and $1,932,500 in Labor Code section

226(e) penalties. (Baysinger Decl. ¶¶ 48-54.)  In total, Defendants faced a maximum of

$15,864,589 in potential damages and statutory penalties.  (Baysinger Decl. ¶ 55.)

Additionally, Class Counsel determined a reasonable, realistic estimate for potential

recovery.  Under this measured approach, Class Counsel (1) applied a one-third discount to the

underpaid overtime/double time claim to account for the possibility that substantial offsets would

be applied based on overpayments of wages to Class Members in other contexts (including overpayments in connection with On Sign Bonuses because those bonuses were factored into overtime/double time whenever they were actually paid [every other period] and since the value of each payment was twice the workweek value of the proportional bonus share, it often resulted in substantial overpayments), leaving $3,403,048; (2) applied no discount to the sick pay claim, leaving $942,365; (3) applied a 50% discount to the waiting time penalty claim to account for the potential that some of the Class Members who are also former employees would be unable to demonstrate any compensable wages that were actually unpaid during employment, leaving $3,942,576, (4) applied a 25% discount to the wage statement claim to account for the potential that injury could not be demonstrated for derivative violations and due to the technical nature of the alleged deficiencies in the wage statements, leaving $1,449,375.  (Baysinger Decl. ¶ 61.)  This approach would result a realistic damages/statutory award of $9,737,364.00.  (Baysinger Decl. ¶ 62.)

The Settlement provides for the payment of $3,000,000 ($2,900,000 allocated to resolve Class Claims).  The Gross Settlement Fund allocated to resolve class claims represents approximately 18% of the maximum damages.  The proposed settlement amount is within the general range of percentage recoveries that California courts—including this one—have found to be reasonable.  *See Cavazos v. Salas Concrete Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 WL 506005, at *15 (E.D. Cal. Feb. 18, 2022) (examining cases approving settlements ranging from 12% to 35% of estimated maximum damages).

Plaintiffs also indicate that the portion of the Gross Settlement Fund allocated to resolve class claims represents 29.78% of Defendants' realistic exposure and settlement class members will be distributed more than 40% of their realistic wage loss.  (Baysinger Decl. ¶¶ 63-64, 66-67.)  Counsel indicates that this is an extremely positive result and district courts often find less favorable settlements fair and reasonable.  (Doc. 61-1 at 24, citing cases).

### 4.  The Extent of Discovery Completed, and the Stage of the Proceedings

The settlement was reached after Class Counsel conducted formal written discovery, informally received the time and payroll records for 315 Settlement Class Members, engaged an

expert to assist in analyzing the data and assessing damages/penalty exposure, and participated in mediation.  Class Counsel asserts that meaningful discovery was completed, and they had "sufficient information to fully evaluate the claims and make competent, informed decisions regarding the benefits and burdens of continued litigation versus settlement."  (Doc. 61-1 at 25.) *Rodriguez v. Danell Custom Harvesting*, LLC, 327 F.R.D. 375, 388 (E.D. Cal. 2018) ("The fact that the parties believe they engaged in sufficient discovery to weigh the merits of the action and engaged the services of a professional mediator in settling the action weighs in favor of approving the class action settlement.")

**5.  The Experience and Views of Counsel**

The Court is to accord great weight to the recommendation of counsel because they are aware of the facts of the litigation and in a better position than the court to produce a settlement that fairly reflects the parties' expected outcome in the litigation.  *Rodriguez*, 327 F.R.D. at 388–89.  Class Counsel is experienced in employment class actions and representative PAGA actions. Class Counsel "strongly believe the proposed Settlement properly balances the realistic monetary relief available to the settlement Class against the magnitude of the risks of continued litigation and thus is a fair adequate, and reasonable resolution."  (Doc. 61-1 at 26.)

**6.  The Reaction of the Class Members to the Proposed Settlement**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 532, 529 (C.D. Cal. 2004) (citing cases).

The response by the class generally has been positive. There were two timely and valid requests for exclusion and no objections.  The absence of any objections is compelling evidence that the settlement is fair, adequate, and reasonable.  *Rodriguez*, 327 F.R.D. at 389).

**7.  Arm's Length Negotiation and Absence of Collusion**

As addressed above, the parties engaged in arm's length negotiations and there is no evidence of collusion.

Having considered the relevant "*Churchill* factors," and for the reasons discussed, the

24

1  Court finds that the settlement is fair, adequate, and reasonable.

2  **APPROVAL OF PAGA SETTLEMENT**

3    Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

4  code violations on behalf of himself and other current or former employees. Cal. Lab. Code §

5  2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law

6  enforcement agencies." *Arias v. Superior Ct*., 95 Cal. Rptr. 3d 588, 600 (Cal. 2009). A PAGA

7  plaintiff thus has "the same legal right and interest as state labor law enforcement agencies" and

8  the action "functions as a substitute for an action brought by the government itself"; therefore, "a

9  judgment in that action binds all those, including nonparty aggrieved employees, who would be

10  bound by a judgment in an action brought by the government." *Id*. A plaintiff bringing a

11  representative PAGA action not only owes a duty to their "fellow aggrieved workers," but "also

12  owes responsibility to the public at large; they act, as the statute's name suggests, as a private

13  attorney general." *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal.

14  2016).

15    Under PAGA, civil penalties collected are distributed between the aggrieved employees

16  (25%) and the Labor and Workforce Development Agency ("LWDA") (75%). Cal. Lab. Code §

17  2699(i). Any settlement of PAGA claims must be approved by the court. Cal. Lab. Code §

18  2699(l)(2). The proposed settlement must also be sent to the agency at the same time that it is

19  submitted to the court. Cal. Lab. Code § 2699(l)(2).

20    While PAGA requires a trial court to approve a PAGA settlement, district courts have

21  noted there is no governing standard to review PAGA settlements. *Scott v. Blackstone Consulting,*

22  *Inc.*, No. 21-CV-1470-MMA-KSC, 2024 WL 271439, at *8 (S.D. Cal. Jan. 24, 2024) (collecting

23  cases). District courts have applied "a Rule 23-like standard" asking whether the settlement of

24  the PAGA claims is "fundamentally fair, reasonable, and adequate." *Id.*

25    First, in accordance with the statutory requirements, Plaintiffs submitted the Settlement

26  Agreement to the LWDA. (Baysinger Decl. ¶ 92.) Per Class Counsel, despite knowing about the

27  settlement for nearly eight months, the LWDA has not raised any concern or objections.

28  (Baysinger Decl. ¶ 92.) No objections have been received by the Court. This supports final

1  approval of the PAGA settlement.  *Conti*, 2023 WL 4600532, at *18 (E.D. Cal. July 18, 2023)

2  (concluding that final approval of the PAGA settlement supported where no comments from the

3  LWDA were reported by Class Counsel or received by the Court)

4  Second, the Settlement Agreement provides for a $100,000 PAGA payment.  This amount

5  represents more than 3% percent of the Gross Settlement Fund.  District courts have approved a

6  broad range of PAGA penalties.  *See Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058,

7  1101 (N.D. Cal. 2019) (collecting cases in which settlements providing for $10,000 in PAGA

8  penalties were preliminarily or finally approved despite total settlement amounts of $900,000 and

9  $6.9 million), *rev'd in part, vacated in part on other grounds*, 999 F.3d 668 (9th Cir. 2021); *see*

10  *also Alcala v. Meyer Logistics, Inc.*, No. CV 17-7211 PSG (AGRx), 2019 WL 4452961, at *9

11  (C.D. Cal. June 17, 2019) (collecting cases in which PAGA penalties within the zero to two

12  percent range were approved by courts); *Scott*, 2024 WL 271439, at *8 (approving 5 percent

13  PAGA settlement).  The PAGA payment of approximately 3% of the Gross Settlement Fund falls

14  within the range of penalties approved by courts.  Further, the Settlement Agreement provides

15  that 75% of the PAGA Penalty will be paid to the LWDA, and 25% will be paid to the PAGA

16  Settlement Members.  (SA ¶ 22.)  The Court finds final approval of the PAGA settlement

17  appropriate.

18  **APPROVAL OF SETTLEMENT ADMINISTRATION COSTS**

19  The Court previously appointed Atticus Class Action Administration to act as the

20  Settlement Administrator.  The parties agreed to allocate up to $25,000.00 to Settlement

21  Administration Costs, which will be paid from the Gross Settlement Fund. (SA ¶ 34.)  Atticus

22  agreed to administer the settlement for $24,850.  (Bridley Decl. ¶ 16; *see also* Doc. 57-1, Ex. 2

23  (Estimate).)  Based upon the information provided regarding the tasks performed by the

24  Settlement Administrator (*see generally* Bridley Decl.) and the remaining responsibilities of the

25  Settlement Administrator, including issuance and mailing of settlement payments, the Court finds

26  the requested Settlement Administration costs reasonable.  Therefore, a payment of $24,850.00

27  for the Settlement Administrator from the Gross Settlement Fund is APPROVED.

28  ///

**MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT PAYMENTS**

## I.      Attorneys' Fees

Class Counsel seek renewed approval of their request for attorneys' fees in the amount of $1,000,000.00 (1/3 of the Gross Settlement Fund), and litigation costs of no more than $24,642.43.  (Doc. 62-1 at 7.)

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The Settlement Agreement permits counsel to seek attorneys' fees of not more than one third (1/3) of the Gross Settlement fund, or One Million Dollars ($1,000,000.00) plus reasonable costs and expenses in an amount not to exceed Thirty Thousand Dollars ($30,000.00), which shall be paid from the Gross Settlement Fund.  (SA ¶ 2.)

The Court preliminarily approved attorneys' fees at the Ninth Circuit benchmark rate of 25%, which equates to $750,000.  (See Order, Doc. 58 at 35.)  Class Counsel acknowledge the Court's preliminary approval, but argue that an upward departure from the Ninth Circuit benchmark is warranted based on the significantly positive results achieved, the contingent nature of the representation and attendant risks undertaken by Class Counsel, the skill and experience exhibited by Class Counsel, the fee awards in comparable wage and hour class action litigation, and that not one of the 3,329 Participating Class Members objected to the advisement in the Class Notice that Class Counsel would seek up to $1,000,000 in fees.  (Doc.62-1 at 7.)

Class Counsel emphasize that in diversity cases, federal courts must apply California law in evaluating attorneys' fees. *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1578 (9th Cir. 1995) (concluding that in diversity actions, state law determines not only the right to attorneys' fees, but also the method of calculating fees).  The percentage-of-fund method of calculating attorneys' fees is appropriate under California law. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016). Thus, under California law a court "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created." *Id.* at 503.  The California Supreme Court has recognized the Ninth Circuit's 25% benchmark for percentage

awards in common fund cases, but did not adopt such a benchmark under California law. *Id.* at 495, 503–06 (affirming an attorneys' fee recovery for a wage-and-hour class action of one-third of a $19 million settlement fund and a lodestar cross-check that used a multiplier of between 2.03 and 2.13).  Class Counsel nonetheless acknowledge that the Ninth Circuit "promulgates a '25% benchmark' that is presumptively reasonable" and there is no benchmark recognized by California law.  (Doc. 62-1 at 12.)

In reviewing the reasonableness of the fee request, including whether the percentage may be adjusted upward or downward, courts consider (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *See Laffitte*, 1 Cal. 5th at 504 (noting courts may consider risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skill shown by counsel); *Lealao v. Beneficial Cal., Inc.*, 82 Cal.App.4th 19, 26 (2000); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Results Achieved

Courts have recognized that the result achieved for the class is a major factor to be considered in making a fee award. *Hensley v. Eckerhart* 461 U.S. 424, 436 (1983).

Plaintiffs contend that the settlement obtained objectively positive results.  They assert that the average gross recovery of $871.13/Settlement Class Member, represents the largest gross value per Class Member resolution of recent wage and hour resolutions with Amazon. (Baysinger Decl. ¶¶ 58, 83-86.)  They note that Participating Settlement Class Members will receive nearly $550 on average ($548.96). (*Id.* ¶ 66.)  The Court agrees that the result achieved is positive, which favors an upward adjustment of the fee award from the benchmark.

Risks of Litigation

Class Counsel assert that they undertook considerable risk in litigating this case, not just because it was done on a wholly contingency basis, but also because complex, representative wage-and-hour litigation is an ever-emerging area under the law.  The ever-changing landscape compounds the risk.  Additionally, Class Counsel acknowledge that Plaintiff Kryzhanovskiy

28

executed an arbitration agreement with a class waiver, which could seriously jeopardize the case. (Baysinger ¶ 124.)  Plaintiffs also note that Defendants asserted numerous defenses, reiterating Defendants' intended arguments.  Plaintiffs further argue that it was possible class-wide relief might be precluded entirely.  (Doc. 62-1 at 15.)  The Court finds that the risks presented here weigh in favor of an upward adjustment of the fee award.

Skill and Quality of the Work

Mayall Hurley have identified extensive class, collective, and representative action litigation experience.  (Baysinger Suppl. Decl. ¶¶ 114-18.)  The Court has no reason to doubt Class Counsel are experienced and skilled litigators.  This factor weighs in favor of an upward adjustment of the fee award.

Contingent Nature of the Fee and Burdens Carried

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994). Thus, whether counsel have taken the case on a contingency fee basis must be considered when deciding to vary from the 25% benchmark.  Here, Class Counsel took this case on a contingency fee basis.  (Baysinger ¶ 125)  Thus, this factor weighs in favor of an upward deviation from the benchmark.

Burdens Carried by Class Counsel

Class Counsel have provided information as to the costs in prosecuting this action, indicating that they have incurred $24,642.43 in actual out-of-pocket expenses.  (Baysinger Decl. ¶ 154, Ex. 4.)  To support the incurred costs, Class Counsel provided an Invoice, which generally reveals permitted litigation expenses (Doc. 61-3, Ex. 4.)  Class Counsel have demonstrated their burden as to incurred costs over the course of this litigation, which weighs in favor of an upward adjustment.

Awards Made in Similar Cases

To support their claim for 1/3 of the Gross Settlement Fund, Plaintiffs argue that common fund fee awards are routinely between 30 and 50 precent and departure from the benchmark is the

norm, citing *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1021-1022 (E.D. Cal. 2019) (collecting cases).  Plaintiffs also assert that in each of the five (5) recent class action wage and hour settlements against Amazon that Class Counsel is aware of, a percentage fee award at or above 33.33% was afforded. (Baysinger Dec. ¶¶ 142-149.)  Plaintiffs point the Court to its preliminary approval of a common fund fee award of 33.33% in the matter of *Boone v. Amazon*, 1:21-cv-00241-KES-BAM. (*Id.*, ¶ 147.)  This factor weighs slightly in favor of an upward adjustment.

### Lodestar Cross Check

The California Supreme Court and the Ninth Circuit have approved the use of a lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *See Laffitte*, 1 Cal. 5th at 504 (perceiving no abuse of discretion in court's decision "to double check reasonableness of the percentage fee through a lodestar calculation"); *Vizcaino*, 290 F.3d at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.").

The "lodestar" approach calculates attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Laffitte,* 1 Cal. 5th at 489; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Where, as here, the lodestar is employed to cross-check a percentage-of-fund determination, courts may do a rough calculation. *See In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014).  "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte*, 1 Cal. 5th at 489 (quotations and citation omitted).

Plaintiffs submitted information about the number of hours worked and the attorney hourly rates.  Mayall Hurley has devoted at total of 651.60 hours with a lodestar of $563,919.95

based on varying hourly rates.  (Baysinger ¶ 132.)  The following chart provides a summary of the current lodestar calculated by counsel:

| Timekeeper | Experience | Rate/Hour | Hours | Total |
|---|---|---|---|---|
| Jenny D. Baysinger(Shareholder) | 2007 | $878 | 351.55 | $308.660.90 |
| Robert Wasserman (Shareholder) | 2008 | $878 | 261.90 | $229,948.20 |
| Vladimir J. Kozina (Shareholder) | 2012 | $878 | 13.50 | $11,853.00 |
| William J. Gorham (Shareholder/Managing Partner) | 1990 | $1,057 | 9.25 | $9,777.25 |
| Anita Gorham (Paralegal) | | $239.00 | 15.40 | $3,680.60 |
| | | **Total:** | 588.50 | $563,919.95 |

Additionally, Mark S. Adams has expended approximately 66.4 hours on this case with a lodestar total of $70,184.80, based on an hourly rate of $1,057.  (Baysinger Del. ¶ 133; Doc. 62-2, Declaration of Mark S. Adams  ("Adams Decl.") ¶¶ 2, 3.)

As to an appropriate reasonable hourly rate, Class Counsel understands this issue is the subject of some division and debate within the Eastern District, noting there are judges within the district who accept the Laffey Matrix, and judges who accept only significantly lower rates (of varying natures) as "reasonable." Depending on the hourly rates utilized, Class Counsel calculates the lodestar between $634,104.75 and $235,991.25. (Baysinger Decl.  ¶¶ 134-140.)

The rates Plaintiffs propose range from $878 per hour, at the low end, to $1,057 per hour, at the high end.  Counsels' stated rates are high, and at the preliminary approval stage, the Court significantly reduced the rates for purposes of the lodestar calculation.  (*See* Order, Doc. 58 at 34.)  Having occasion to revisit the attorneys' fees request on final approval, the Court finds it appropriate to adjust the rates originally applied at preliminary approval.  The Court finds compelling the declaration of Counsel Baysinger, which indicates that in hourly billed non-contingent matters, she charges hourly rates between $350 and $450 for her services ($500 for the services of Mr. Gorham and others with over 30 years of experience).  These clients are generally located within San Joaquin and Stanislaus counties, within the jurisdiction of this District.

31

(Baysinger Decl. ¶ 138.)  Using the middle hourly rate Counsel Baysinger actually charges for her services for non-contingent clients ($400 for her, Mr. Wassermann and Mr. Kozina) and the $500 rate actually charged for Mr. Gorham (also applied to Mr. Adams), Class Counsel asserts that the combined lodestar figure would equal $290,915 and an acceptable multiplier of 3.44 would cause it to exceed the $1,000,000 in fees requested.  (*Id.*)

Based on rates charged to clients in this district for non-contingent matters, the Court therefore adjusts the rates for purposes of the lodestar calculation as follows:  a rate of $400 for Jenny Baysinger and Robert Wasserman, a rate of $300 for Vladimir Kozina, a rate of $500 for William Gorham and Mark Adams, and a rate of $150 for paralegal Anita Gorham.

In addition, the Court must also consider the reasonable number of hours spent.  Mayall Hurley expended 651.60 hours on the case.  (Baysinger Decl. ¶ 132.)  Mark S. Adams expended approximately 66.4 hours on the case.  (Adams Decl. ¶ 2.)  The total number of hours worked is 718, which includes 15.40 hours of paralegal time.  A cursory review of the types of tasks performed substantiates that the hours expended are reasonable.  (*See* Ex. 4 to Baysinger Decl. and Exhibit to Adams Decl. )

Therefore, a rough lodestar calculation using the hourly rates identified by the Court yields $289,565.00 in fees ($400 x 613.45 hours = $245,380; $300 x 13.50 = $4,050; $500 x 75.65 = $37,825; $150 x 15.40 = $2,310).

Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, the Court may enhance the lodestar with a multiplier. Plaintiffs indicate that in wage and hour actions, California and Ninth Circuit courts routinely approve multipliers ranging from 2 to 4 times higher.  (Doc. 62-1 at 21.)  Indeed, "[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); see also *Vizcaino*, 290 F.3d at 1051–54 and n.6 (affirming a 28% fee recovery, explaining that the 3.65 multiplier "was within the range of multipliers applied in common fund cases" and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of 24 class action suits surveyed); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341

1   (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund

2   cases when the lodestar method is applied.") (citation omitted); *Ferrell v. Buckingham Prop.*

3   *Mgmt.*, No. 1:19-cv-00332-JLT-BAK (EPG), 2022 WL 224025, at *3 (E.D. Cal. Jan. 25, 2022).

4         Based on the Court's lodestar crosscheck, a multiplier of approximately 3.45 is necessary

5   to reach the $1,000,000 in fees Class Counsel is requesting in this action.  This multiplier is

6   within the range commonly approved, and because consideration of the relevant factors discussed

7   above favor an upward adjustment, it will be applied.  The Court therefore finds the requested

8   fees reasonable, and the request for attorneys' fees is GRANTED in the amount of $1,000,000.00.

9         **II.**    **Litigation Costs**

10         Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

11   attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.

12   R. Civ. P. 23(h).  Expense awards "should be limited to typical out-of-pocket expenses that are

13   charged to a fee paying client and should be reasonable and necessary." *In re Immune Response*

14   *Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for:

15   "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing

16   fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8)

17   experts, consultants, and investigators; and (9) mediation fees." *Id.*; *see also Perez v. CVS Health*

18   *Corp.*, No. 1:19-cv-00449-DAD-BAM, 2021 WL 2402950, at *12 (E.D. Cal. June 11, 2021).

19         The Settlement Agreement provides that Class Counsel may seek "reasonable costs and

20   expenses in an amount not to exceed Thirty Thousand Dollars ($30,000.00)."  (SA ¶¶ 2, 42.)

21   Class Counsel incurred $24,642.43 in actual out-of-pocket expenses.  (Baysinger Decl. ¶ 154, Ex.

22   4.) Class Counsel represent that the costs incurred are "routinely reimbursed litigation costs

23   typically charged to fee-paying clients, including filing fees, process server fees, court reporter

24   fees, postage, computerized legal research charges, travel expenses, expert fees, mediation

25   expenses, etc."  (Baysinger Decl. ¶ 154.)  Class Counsel has provided an Invoice, which generally

26   reveals permitted litigation expenses.  (Doc. 61-3, Ex. 4.)  The Court finds the request reasonable.

27   The request for litigation expenses and costs is GRANTED in the amount of $24,642.43.

28   ///

1    **III.    Enhancement Awards to Plaintiffs**

2    Plaintiffs request that the Court grant final approval of the Enhancement Payments to

3    Plaintiffs in the total amount of $17,500.00, allocated as follows:  $10,000.00 to Plaintiff

4    Kryzhanovskiy and $7,500.00 to Plaintiff Salazar.  (SA ¶ 43.)

5    A service award of $5,000 is presumptively reasonable.  *See Harris v. Vector Marketing*

6    *Corp.*, No. C-08-5198 MEC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).

7    Incentive payments are to be evaluated individually, and the court should look to factors such as

8    "the actions the plaintiff has taken to protect the interests of the class, the degree to which the

9    class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in

10   pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at

11   977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Conti*, 2023 WL

12   4600532, at *28 (indicating court must consider "'the actions the plaintiff has taken to protect the

13   interests of the class, the degree to which the class has benefitted from those actions, the amount

14   of time and effort the plaintiff expended in pursuing the litigation,' and any financial or

15   reputational risks the plaintiff faced." (citation omitted)).  Further, payments may recognize a

16   plaintiff's "willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

17   According to Plaintiff Kryzhanovskiy's declaration, she has spent a considerable amount

18   of time working with her attorneys over the past three years.  She has helped with preparation of

19   the complaint and amendments, gathered documents, and responded to formal written discovery

20   requests.  (Doc. 61-4, Declaration of Leilani Kryzhanovskiy ("Kryzhanovskiy Decl.") ¶ 13.)  She

21   also helped her attorneys prepare for mediation and made herself available "on call" during the

22   entire day.  (*Id.*)  Plaintiff Kryzhanovskiy estimates that, in total, she has spent around 80 hours

23   working her attorneys on this case since 2021.  (Kryzhanovskiy Decl. ¶ 14.)  Further, she reports

24   that for the entire time of the lawsuit, until she recently resigned from Amazon, she was "worried

25   and afraid" for her job and scared of retaliation. (Kryzhanovskiy Decl. ¶ 11.) As a named

26   plaintiff, Plaintiff Kryzhanovskiy declares that she has exposed herself "to the negative

27   reputational consequences" of her name being tied to a class action lawsuit against her former

28   employer.  (Kryzhanovskiy Decl. ¶ 18.)  She continued to work for Amazon for the majority of

1    the lawsuit and declares she was "uniquely exposed to the risk of retaliation by Amazon moving

2    forward because of [her] participation in this lawsuit and securing monetary recovery on behalf of

3    other employees." (*Id.*)

4         According to Plaintiff Salazar's declaration, submitted in connection with preliminary

5    approval, she has spent a significant amount of time working with her attorneys on the case over

6    the past year.  She collected documents, answered questions, and helped her attorneys get ready

7    for the mediation session and made herself available "on-call" during that entire day.  After the

8    mediation, she worked with her attorneys to evaluate the mediator's proposal and actively

9    participated in decision whether or not to accept it.  (Doc. 57-4, Declaration of Patricia Salazar

10   ("Salazar Decl.") ¶ 9.)  Plaintiff Salazar estimates that, in total, she has spent at least 25 hours

11   working with her attorneys on this case.  (Salazar Decl. ¶ 10.)

12        In addition to working with counsel, Plaintiffs have agreed to a full general release of their

13   claims against Defendants, which is broader than the release that applies to the Class Members.

14   (Settlement Agreement ¶ 62.c. and d.)

15        The service award of $10,000.00 contemplated here is less than 1% of the Gross

16   Settlement Fund, as is the contemplated service award of $7,500.  This percentage is less than

17   other service payments approved in this district. *Conti*, 2023 WL 4600532, at *31 (explaining

18   service award of approximately 1.2% of the gross settlement fund comparable to other service

19   payments).

20        Considering the relevant factors, particularly the time expended and benefits to the Class,

21   the Court finds the Class Representative Enhancement Payments reasonable.  The request for

22   Class Representative Enhancement Payments in the total amount of $17,500 is GRANTED,

23   allocated as follows:  $10,000 to Plaintiff Kryzhanovskiy and $7,500.00 to Plaintiff Salazar.

24                          **CONCLUSION AND ORDER**

25        Based on the foregoing, the Court finds the class settlement is fair, adequate, and

26   reasonable.  The factors set forth under Rule 23 weigh in favor of final approval of the Settlement

27   Agreement. Accordingly, IT IS HEREBY ORDERED as follows:

28        1.      Plaintiffs' motion for final approval of the class action settlement (Doc. 61) is

1    GRANTED.

2        2.    The Court finally approves the settlement of this class action in accordance with

3    the terms of the Settlement Agreement and finds that the Settlement Agreement, the Settlement

4    described therein, and the Gross Settlement Fund of $3,000,000.00 are fair, reasonable, and

5    adequate in all respects pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

6        3.    The Court finds that, for settlement purposes only, the Settlement Class meets the

7    requirements for certification under Rule 23 of the Federal Rules of Civil Procedure in that: (1)

8    the Class is ascertainable and so numerous that joinder of all members of the Class is

9    impracticable; (2) there are common questions of law and fact, and the questions of law and fact

10   common to the Class predominate; (3) Plaintiffs' claims are typical of the claims of the members

11   of the Class; (4) Plaintiffs will fairly and adequately protect the interests of the members of the

12   Class; and (5) a class action is superior to other available methods for the efficient adjudication of

13   the controversy.

14       4.    Certification of the Settlement Class is GRANTED, and the Court hereby certifies

15   the following Settlement Class for settlement purposes only:   All current and former non-exempt

16   employees of Defendants in California between July 22, 2017 and November 7, 2023 who

17   received a Signing Bonus and/or On Sign Bonus in the same workweek as he/she worked

18   overtime, including double-time.

19       5.    The Court finds that mailing of the Class Notice in the manner provided in the

20   Settlement Agreement and in the Preliminary Approval Order fully and accurately informed all

21   Settlement Class members of the material elements of the settlement, constitutes the best notice

22   practicable under the circumstances, constitutes valid, due, and sufficient notice to all Settlement

23   Class members and complies fully with the requirements of Federal law and United States

24   Constitution.

25       6.    The Court further finds that the response of the Settlement Class to the Settlement

26   supports settlement approval.  Of the 3,331 Class Members, only two elected to be excluded from

27   the Settlement, and there were no objections.

28       7.    Pursuant to timely submitted Requests for Exclusion, the following Class

Members are excluded from the non-PAGA settlement:

        a.   Leonardo Jiminez

        b.   Jesus Ocegueda, Jr.

    8.      The Court finds that the notice of settlement that Class Counsel provided to the LWDA satisfied the notice requirements of the California Private Attorneys General Act.

    9.      The Court finds and determines that notice of settlement to relevant state and federal officials was timely, adequate, and compliant with the statutory requirements of the Class Action Fairness Act.

    10.     The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and the Settlement Administrator, Atticus Administration, LLC, to calculate and pay the claims of the Participating Class Members in accordance with the terms set forth in the Settlement Agreement.  The Settlement Administrator shall establish a Qualified Settlement Account and send the instructions to counsel for Defendants.

    11.     The PAGA award of $100,000.00 from the Gross Settlement Fund, which includes payment of $75,000.00 to California's Labor and Workforce Development Agency and the remainder distributed to aggrieved employees, is APPROVED. The Settlement Administrator shall issue the Labor & Workforce Development Agency Payment directly to the California Labor & Workforce Development Agency within twenty-one (21) calendar days of the Funding Date.[5]

    12.     Settlement Administration costs in the amount of $24,850.00 to be paid from the Gross Settlement Fund to Atticus Administration, LLC are APPROVED.

    13.     Plaintiffs' motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payments (Doc. 62) is GRANTED.

    14.     Class Counsel's request for approval of attorneys' fees in the amount of $1,000,000.00 or 33.33% of the Gross Settlement Fund is GRANTED.  The Settlement

---

[5] "Funding Date" means thirty (30) calendar days after the Effective Date.  (SA ¶ 13.)  As no timely objections to the settlement have been filed, "Effective Date" means "the date upon which the Court enters an order granting Final Approval of the Settlement Agreement."  (SA ¶ 10.)

1  Administrator shall issue payment to Class Counsel within twenty-one (21) calendar days of the

2  Funding Date.

3       15.    Class Counsel's request for approval of litigation costs in the amount of

4  $24,642.43 is GRANTED.  The Settlement Administrator shall issue payment to Class Counsel

5  within twenty-one (21) calendar days of the Funding Date.

6       16.    The request for Class Representative Enhancement Payments in the total amount

7  of $17,500.00 is GRANTED, allocated as follows:  $10,000.00 to Plaintiff Leilani Kryzhanovskiy

8  and $7,500.00 to Plaintiff Patricia Salazar.  The Settlement Administrator shall issue payment to

9  within twenty-one (21) calendar days of the Funding Date.

10       17.    Upon completion of the administration of the Settlement, the Settlement

11  Administrator shall provide a written declaration under oath to certify such completion to the

12  Court and counsel for all parties.  Class Counsel shall file such declaration with the Court.

13       18.    The Court retains jurisdiction for a period of nine (9) months from the date of this

14  Order for purposes of resolving issues relating to the interpretation, administration,

15  implementation, effectuation, and enforcement of the Settlement.

16       19.    Judgment shall be entered consistent with this Order on Final Approval.

17

18  IT IS SO ORDERED.

19  Dated:   **September 12, 2024**          /s/ *Barbara A. McAuliffe*

20                                    UNITED STATES MAGISTRATE JUDGE